**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| Walter Coleman, Marco DiLeonardo, Matthew Fox, and Madelyn Salzman on behalf of themselves and all others similarly situated,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　　vs.<br><br>Burger King Corporation,<br><br>　　　　　　　　　　Defendant. | Case No.:<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs Walter Coleman, Marco DiLeonardo, Matthew Fox, and Madelyn Salzman, by and through their undersigned counsel, upon personal knowledge as to themselves and upon information and belief as to all other matters, allege as follows:

1.　　　　Plaintiffs bring this action against defendant Burger King Corporation (referred to herein as "Burger King" or "Defendant"), on behalf of themselves and all other similarly situated individuals who purchased a Burger King menu item based on false and misleading advertising concerning the size and/or the amount of ingredients contained in said menu item.

1

**FACTUAL ALLEGATIONS**

2.     This is a class action against Burger King for unfair and deceptive trade practices concerning the sale of certain falsely advertised menu items.

3.     Burger King advertises its burgers as large burgers compared to competitors and containing oversized meat patties and ingredients that overflow over the bun to make it appear that the burgers are approximately 35% larger in size, and contain more than double the meat, than the actual burger.

4.     For example, Burger King currently represents that Burger King's Whopper looks as follows on its website and store menu ordering boards:



*See* https://www.bk.com/menu/picker-picker_5520.

5.      However, Burger King's Whopper burger actually looks as follows:



*See* https://www.insider.com/best-and-worst-burgers-at-burger-king-ranked#double-cheeseburger-199-4.

6.      Burger King began to materially overstate the size of its burgers in its advertisements in September 2017.

7.      Prior to Burger King's introduction of overstated burger photos, Burger King more fairly advertised the size of the Whopper on its website and store menus as follows:



8.      A side-by-side comparison of Burger King's former Whopper advertisement to the current Whopper advertisement shows that the burger increased in size by approximately 35% and the amount of beef increased by more than 100%.

**FORMER ADVERTISEMENT**                 **CURRENT ADVERTISEMENT**

    

9.      Although the size of the Whopper increased materially in Burger King's advertisements, the recipe or the amount of beef or ingredients contained in Burger King's Whopper has never changed.

10.     A side-by-side comparison of the Whopper that customers actually receive and Burger King's current Whopper advertisement is as follows:

**ACTUAL WHOPPER**                    **CURRENT ADVERTISEMENT**

      

11.     Burger King materially overstates the size of nearly every menu item in its current advertisements, including the Impossible Whopper, Big King, Single Quarter Pound King, Bacon King, Double Whopper, Triple Whopper With Cheese, Whopper Jr., Bacon Double Cheeseburger, Double Cheeseburger, Bacon Cheeseburger, Cheeseburger, Hamburger, Whopper Melt, Bacon Whopper Melt, Spicy Whopper Melt, Breakfast Bacon King, Fully Loaded Croisann'Wich, Double Sausage, and the Egg, & Cheese Croissan'Wich (each of these items are referred to at times herein as an "Overstated Menu Item").

12.     For example, the current advertisement for Burger King's Big King burger and the Big King burger actually received by customers is as follows:

**ACTUAL BIG KING**                    **CURRENT ADVERTISEMENT**

                    

13.     Expert fast-food critic, John Jurasek, an American YouTube personality, food critic and radio host, that has been featured by several media outlets, including CNN Money, New York Magazine, and Forbes, has recently criticized Burger King for overstating the size of its burgers.

14.     Specifically, Mr. Jurasek stated in a review of Burger King's Big King burger, that "the picture [in Burger King's advertisements] makes you think that this thing is like, you know, two pounds or something, that it's going to be this massive, massive, sandwich…[but]…it's not that big. For six bucks, you know, the size is a little disappointing…." *See* https://www.youtube.com/watch?v=HqMWcMei1bg&t=248s.

15.     Mr. Jurasek also stated, in a review of Burger King's Whopper Melt sandwich, that "I feel like this is kind of a recurring trend….I always feel like the picture [in Burger King's

advertisements] always makes it seem way bigger than what it really is.  I look at this and, I don't know, it's just the picture makes it seem bigger…." *See* https://youtu.be/-1Rnk8BC4oo?t=167.

16.     Another food reviewer, with a channel named SomethingNew, on YouTube, compared the Big King to Burger King's advertisement and stated "this Big King is like the big jester, this ain't the Big King Burger King…."  *See* https://youtu.be/IpHGmoWJs7s?t=146.

17.     A food reviewer, with a channel named Let Jay Try It, on Youtube, stated "I'm still disappointed on how small it [the Big King] is….To me, it's not worth the price."  *See* https://youtu.be/uxqnIYTOmZk?t=265.

18.     RDR Food Reviews, another food reviewer on YouTube, stated, in a review of Burger King's Whopper Melt, "it's kind of another one of them deals where when you see the promotion, you're just like, oh my god, that looks sexy good, but when you get it, you get fairly, kind of disappointed."  *See* https://youtu.be/DuqwuP9NFkE?t=317.

19.     Another food reviewer on YouTube, RobbieP2 Vlogs, in a review of the Big King burger, stated "come on BK, in reality, this is just, nothing but, a plain little double cheeseburger dressed with a few toppings….thought you were the King but right now you are nothing but a prince, heck, you're probably not even court jester, with this tiny thing."  *See* https://youtu.be/a0MDmGsQc6U?t=117.

20.     A recent article published on March 14, 2022, by Eat This, Not That!, titled "Burger King's Newest Sandwiches Are Making Customers Feel Cheated", cited numerous complaints by Burger King customers who felt cheated by the size of Burger King's Whopper Melts.  *See* https://www.eatthis.com/news-burger-kings-newest-sandwiches-are-making-customers-feel-cheated/.

21.     Several consumers posted complaints on Twitter.   Some examples include the following:



Think Outside Your Tribe 🌺🎇
@DenifLewesa                                            ...

Do not order the Whopper Melt. Somehow
**@burgerking** managed to trick customers into ordering
a smaller "Whopper" for $5 on literal pieces of bread.

So disappointing. The bread wasn't even toasted and
it's tiny AF. Their pictures advertising it are highly
misleading.

3:13 AM · Mar 14, 2022 · Twitter for Android

3 Likes



skaterjoe
@skaterjo3                                              ...

Never been so disappointed upon receiving and
unwrapping my whopper melt. So those are my pics but
**@BurgerKing** WHAT IS THIS ?!?!?



1:00 PM · Mar 12, 2022 · Twitter for iPhone

5 Likes



**Colin J. McMahon**
@cj_mcmahon                                              ...

Replying to @skaterjo3 and @BurgerKing

So disappointing.



Colin J. McMahon @cj_mcmahon · Mar 14
Am I a joke to you, @BurgerKing?

Spicy Whopper Melt
593 Cal

1:04 AM · Mar 15, 2022 · Twitter for iPhone



**Space Monkey**
@beezeedesigner                                          ...

Hey @BurgerKing. I order a "Big" King, and get this?
Now I'm reading articles about how your new Whopper
Melts are tiny too. Wtf is going on? I'll come back when
you stop scamming us. I used to be a 2 time a weeker!



5:37 PM · Mar 17, 2022 · Twitter Web App



22. This is not the first time that Burger King has materially overstated the size of its burgers in advertisements.

23. Approximately 12 years ago, Burger King was ordered to stop advertising overstated burgers by the Advertising Standards Authority ("ASA"), the United Kingdom's regulator of advertising.

24. "The Advertising Standards Authority said it bought three burgers and found their thickness and the overall height was 'considerably less' than in the ad….The Advertising

Standards Authority (ASA) said: 'We also examined the size of the burgers in the hands of an average-sized man and considered that they did not fill the hands to the same extent as the burger featured in the advert'….'We concluded that the visuals in the advert were likely to mislead viewers as to the size and composition of the product.'" *See* https://www.bbc.com/news/uk-10699456.

25.     Burger King's advertisements for its burger and menu items are unfair and financially damaging consumers as they are receiving food that is much lower in value than what was promised.

26.     Burger King's actions are especially concerning now that inflation, food, and meat prices are very high and many consumers, especially lower income consumers, are struggling financially.

27.     Burger King's promise to consumers of a large portion of food with their purchase are also causing consumers to come to, or order from, Burger King and make purchases that they would not have otherwise made.

28.     Burger King is also unfairly competing with burger chains that more fairly advertise the size of their burger and menu items.

29.     Burger King promises large portions of food to steer consumers to Burger King for their meals and away from competitors that more fairly advertise the size of their burgers and menu items, unfairly diverting millions of dollars in sales that would have gone to competitors.

30.     For example, the following consumer posted on Twitter that he was disappointed with the size of the Big King and should have went to Wendys.



Leo McIllaney
@LMcillaney
...

@BurgerKing so this is the BIG king? Looks very small, the McDouble I had from @McDonalds yesterday was bigger. Should have went to @Wendys



2:46 AM · Mar 6, 2022 · Twitter for iPhone

1 Retweet   1 Like

31.     Plaintiffs, on behalf of themselves and all others similarly-situated, seek to end Burger King's unfair and materially misleading advertising and request the following: 1) monetary damages fully compensating all individuals who were deceived by Defendant as a result of purchasing Defendant's Overstated Menu Items; 2) injunctive relief requiring Defendant to provide corrected advertising and/or to discontinue the Overstated Menu Items; and 3) such other relief as the Court deems necessary and appropriate.

## THE PARTIES

32.     Plaintiff Walter Coleman is a resident of the state of Florida.  During the Class Period (defined below), Mr. Coleman purchased a Whopper and a Big King at a Burger King store located in the state of Florida.  Mr. Coleman expected the burgers that he purchased to be similar in size to the pictures of the burgers in Burger King's advertisements and on Burger King's store menu ordering board.  However, the size of the burgers that Mr. Coleman received were much smaller than advertised and he was financially damaged as a result.  If Mr. Coleman knew that said burgers were much smaller than advertised, he would not have purchased the burgers.

33.     Plaintiff Marco DiLeonardo is a resident of the state of New York.  During the Class Period (defined below), Mr. DiLeonardo purchased a Whopper, a Big King, and a Whopper Melt at a Burger King store located in the state of New York.  Mr. DeLeonardo expected the burgers that he purchased to be similar in size to the pictures of the burgers in Burger King's advertisements and on Burger King's store menu ordering board.  However, the size of the burgers that Mr. DiLeonardo received were much smaller than advertised and he was financially damaged as a result.  If Mr. DiLeonardo knew that said burgers were much smaller than advertised, he would not have purchased the burgers.

34.     Plaintiff Matthew Fox is a resident of the state of New York.  During the Class Period (defined below), Mr. Fox purchased a Whopper and a Big King at a Burger King store located in the state of New York.  Mr. Fox expected the burgers that he purchased to be similar in size to the pictures of the burgers in Burger King's advertisements and on Burger King's store menu ordering board.  However, the size of the burgers that Mr. Fox received was much smaller than advertised and he was financially damaged as a result.  If Mr. Fox knew that said burgers were much smaller than advertised, he would not have purchased the burgers.

13

35.     Plaintiff Madelyn Salzman is a resident of the state of New York and a part-year resident of Florida.  During the Class Period (defined below), Ms. Salzman purchased a Big King at a Burger King store located in the state of Florida. Ms. Salzman expected the burger that she purchased to be similar in size to the pictures of the burger in Burger King's advertisements and on Burger King's store menu ordering board.  However, the size of the burger that Ms. Salzman received was much smaller than advertised and she was financially damaged as a result.  If Ms. Salzman knew that said burger were much smaller than advertised, she would not have purchased the burger.

36.     Defendant Burger King is a Florida corporation with its headquarters and principal place of business located in Miami, Florida.

## JURISDICTION AND VENUE

37.     This Court has original diversity jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA").  Certain Plaintiffs are citizens of the State of New York, and Defendant is a citizen of the State of Florida and is headquartered with its principal place of business in the state of Florida.  The matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and this is a class action in which the number of members of the proposed class is not less than 100.

38.     In addition, this Court has diversity jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1332(a).  The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and certain members of the proposed class are citizens of states different from the state in which Defendant is a citizen.

39.     Venue is proper pursuant to 28 U.S.C. § 1391.  A substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district. Further, Defendant

resides in this judicial district for purposes of § 1391. Also, Defendant has used the laws within, and has done substantial business in, this judicial district in that it has promoted, marketed, distributed, and sold the products at issue in this judicial district. Finally, there is personal jurisdiction over Defendant in this judicial district.

## CLASS ACTION ALLEGATIONS

40.     Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) and (b)(3) on behalf of the following class:

> All persons or entities in the United States who purchased an Overstated Menu Item from Burger King between September 1, 2017 (the "Class Period"), and the date of the final disposition of this action, and/or such class or subclass as the Court may deem appropriate (the "Class").

41.     Plaintiffs reserve the right to amend the definition of the Class if discovery and further investigation reveals that the Class should be expanded or otherwise modified.

42.     Plaintiffs reserve the right to establish sub-classes as appropriate.

43.     This action is brought and properly may be maintained as a class action under the provisions of Federal Rules of Civil Procedure 23(a)(l)-(4) and 23(b)(2) and (b)(3), and satisfies the requirements thereof.

44.     There is a well-defined community of interest among members of the Class, and the disposition of the claims of these members of the Class in a single action will provide substantial benefits to all parties and to the Court.

45.     The members of the Class are so numerous that joinder of all members of the Class is impracticable. At this time, Plaintiffs believe that the Class includes thousands of members. Therefore, the Class is sufficiently numerous that joinder of all members of the Class in a single action is impracticable under Federal Rule of Civil Procedure Rule 23(a)(l), and the

resolution of their claims through the procedure of a class action will be of benefit to the parties and the Court.

46.     Plaintiffs' claims are typical of the claims of the members of the Class whom they seek to represent because Plaintiffs and each member of the Class has been subjected to the same deceptive and improper practices by Defendant and have been damaged in the same manner.

47.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiffs have no interests that are adverse to those of the members of the Class that they seek to represent.  Plaintiffs are committed to the vigorous prosecution of this action and, to that end, Plaintiffs have retained counsel that is competent and experienced in handling complex class action litigation on behalf of consumers.

48.     A class action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this Complaint under Federal Rule of Civil Procedure 23(b)(3) because:

    a.   The expense and burden of individual litigation would not be economically feasible for members of the Class to seek to redress their claims other than through the procedure of a class action.

    b.   If separate actions were brought by individual members of the Class, the resulting multiplicity of lawsuits would cause members to seek to redress their claims other than through the procedure of a class action; and

    c.   Absent a class action, Defendant likely would retain the benefits of their wrongdoing, and there would be a failure of justice.

49.     Common questions of law and fact exist as to the members of the Class, as required by Federal Rule of Civil Procedure 23(a)(2), and predominate over any questions that affect individual members of the Class within the meaning of Federal Rule of Civil Procedure 23(b)(3).

50.     The common questions of fact include, but are not limited to, the following:

    a.   Whether the nationwide practice by Defendant of selling falsely advertised menu items violates the applicable consumer protection statutes;

    b.   Whether Defendant engaged in unlawful, unfair, misleading, or deceptive business acts or practices;

    c.   Whether Defendant engaged in consumer fraud, deceptive trade practices, or other unlawful acts;

    d.   Whether Defendant made any negligent misrepresentations;

    e.   Whether Defendant was unjustly enriched; and

    f.   Whether Plaintiffs and members of the Class are entitled to an award of reasonable attorneys' fees, pre-judgment interest, and costs of this suit.

51.     In the alternative, this action is certifiable under the provisions of Federal Rule of Civil Procedure 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole and necessitating that any such relief be extended to members of the Class on a mandatory, class-wide basis.

52.     Plaintiffs are not aware of any difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

## COUNT I
### Violation of State Consumer Protection Laws

53.     Plaintiffs incorporate by reference the allegations in every paragraph of this complaint.

54.     Plaintiffs bring this claim on their own behalf and on behalf of all other persons or entities who purchased an Overstated Menu Item based on false representations as alleged herein of said product.

55.     Plaintiffs and each member of the Class is a consumer, purchaser or other person entitled to the protection of the consumer protection laws of the state in which he/she purchased an Overstated Menu Item.

56.     The consumer protection laws of the state in which Plaintiffs and each member of the Class who purchased an Overstated Menu Item declare that unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful.

57.     Each of the fifty states and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising. These statutes are:

a.   Alabama Deceptive Trade Practices Act, Ala. Statues Ann. §§ 8-19-1, *et seq*.;

b.   Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq*.;

c.   Arizona Consumer Fraud Act, Arizona Revised Statutes, §§ 44-1521, *et seq*.;

d.   Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq*.;

e.   California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*., and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq*.;

f.   Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq*.;

18

g.  Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq*.;

h.  Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq*.;

i.  District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq*.;

j.  Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq*.;

k.  Georgia Fair Business Practices Act, § 10-1-390 *et seq*.;

l.  Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, *et seq*., and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-l, *et seq*.;

m.  Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq*.;

n.  Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq*.;

o.  Indiana Deceptive Consumer Sales Act, Indiana Code Ann. §§ 24-5-0.5-0.1, *et seq*.;

p.  Iowa Consumer Fraud Act, Iowa Code §§ 714.16, *et seq*.;

q.  Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq*.;

r.  Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq*., and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq*.;

s.  Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et seq*.;

t.  Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq*., and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq*.;

u.  Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq*.;

v.  Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

w.  Michigan Consumer Protection Act, §§ 445.901, *et seq*.;

x.  Minnesota Prevention of Consumer Fraud Act, Minn. Stat. §§ 325F.68, *et seq*.; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq*.;

y.  Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq*.;

z.  Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq*.;

aa. Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq*.;

bb. Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq*., and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq*.;

cc. Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq*.;

dd. New Hampshire Consumer Protection Act, N.H. Rev. Stat.§ 358-A:l, *et seq*.;

ee. New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et seq*.;

ff. New Mexico Unfair Practices Act, N.M. Stat. Ann.§§ 57 12 1, *et seq*.;

gg. New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law§§ 349, *et seq*.;

hh. North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq*.;

ii.  North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §§ 75-1, *et seq*.;

jj.  Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. §§ 4165.01. *et seq*.;

kk.  Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq*.;

ll.  Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq*.;

mm.   Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. §§ 201-1, *et seq*.;

nn.  Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq*.;

oo.  South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq*.;

pp.  South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et seq*.;

qq.  Tennessee Trade Practices Act, Tennessee Code Annotated §§ 47-25-101, *et seq*.;

rr.  Texas Stat. Ann. §§ 17.41, *et seq*., Texas Deceptive Trade Practices Act;

ss.  Utah Unfair Practices Act, Utah Code Ann. §§ 13-5-1, *et seq*.;

tt.  Vermont Consumer Fraud Act, Vt. Stat. Ann. tit. 9, § 2451, *et seq*.;

uu.  Virginia Consumer Protection Act, Virginia Code Ann. §§ 59.1-196, *et seq*.;

vv.  Washington Consumer Fraud Act, Wash. Rev. Code § 19.86.010, *et seq*.;

ww.   West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq*.;

xx.  Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et seq*.;

yy.  Wyoming Consumer Protection Act, Wyoming Stat. Ann. §§ 40-12-101, *et seq*.

58.     The Overstated Menu Items marketed and sold by Defendant constitute products to which these consumer protection laws apply.

59.     Defendant violated the above stated consumer protection laws by its deceptive practices and Plaintiffs and Class members were damaged as a result, the exact amount to be determined at trial.

## COUNT II
### Breach of Contract

60.     Plaintiffs incorporate by reference the allegations in every paragraph of this complaint.

61.     Defendant, through its advertising in store and online, offered Overstated Menu Items based on the materially false and misleading advertisements described above.

62.     Plaintiffs and numerous other customers purchased said Overstated Menu Items based on Defendant's representations.

63.     Defendant breached its sales contracts with Plaintiffs and similarly situated customers who purchased an Overstated Menu Item.

64.     Defendant failed to disclose that the Overstated Menu Items were smaller than advertised.

65.     As a result of Defendant's breach of contract, Plaintiffs and similar purchasers of an Overstated Menu Item suffered damages, the exact amount to be determined at trial.

## COUNT III
### Negligent Misrepresentation

66.     Plaintiffs incorporate by reference the allegations in every paragraph of this complaint.

67.     Defendant, directly or through its agents and employees, made false representations, concealments, and nondisclosures to Plaintiffs and members of the Class.

68.     Defendant, through its advertising in store and online, offered Overstated Menu Items based on the materially false and misleading advertisements described above.

69.     Defendant made and intended the misrepresentations to induce the reliance of Plaintiffs and members of the Class to purchase an Overstated Menu Item.

70.     Plaintiffs and numerous other customers purchased an Overstated Menu Item based on Defendant's representations.

71.      Defendant failed to disclose that the Overstated Menu Items were smaller than advertised.

72.     In making the representations of fact to Plaintiffs and members of the Class described herein, Defendant has failed to fulfill its duty to disclose the material facts set forth above.  The direct and proximate cause of this failure to disclose was Defendant's negligence and carelessness.

73.     Defendant, in making the misrepresentations and omissions, and in doing the acts alleged above, knew or reasonably should have known that the representations were not true.

74.     Plaintiffs and members of the Class reasonably relied upon these false representations and nondisclosures by Defendant when purchasing an Overstated Menu Item, which reliance was justified and reasonably foreseeable.

75.     As a result of Defendant's wrongful conduct, Plaintiffs and members of the Class have suffered damages, the exact amount to be determined at trial.

## COUNT IV
## Unjust Enrichment

76.     Plaintiffs incorporate by reference the allegations in every paragraph of this complaint.

77.     By its wrongful acts and omissions, Defendant has been unjustly enriched at the expense of Plaintiffs and members of the Class, and thus Plaintiffs and members of the Class were unjustly deprived of time and value of money provided to Defendant.

78.     It would be inequitable and unconscionable for Defendant to retain the profit, benefit, and other compensation they obtained from the deceptive, misleading, unfair and unlawful conduct alleged herein.

79.     Plaintiffs and members of the Class seek restitution from Defendant, and seek an order of this Court disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct.

## RELIEF REQUESTED

80.     Accordingly, Plaintiffs, on behalf of themselves and the members of the Class, seek judgment as follows:

1.     Certifying the Class as requested herein, certifying Plaintiffs as the representatives of the Class, and appointing Plaintiffs' co-counsel as co-counsel for the Class;

2.     Ordering that Defendant is financially responsible for notifying all members of the Class of the alleged misrepresentations and omissions set forth herein;

3.     Awarding Plaintiffs and the members of the Class compensatory damages in an amount according to proof at trial;

4.     Awarding restitution and disgorgement of Defendant's revenues to Plaintiffs and members of the Class;

5.       Awarding declaratory and injunctive relief, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of their conduct and pay them restitution and disgorgement of all monies acquired by Defendant by means of any act or practice declared by this Court to be wrongful or unlawful;

6.       Awarding to Plaintiffs and the Class punitive damages;

7.       Ordering Defendant to stop selling Overstated Menu Items or to correct the deceptive behavior;

8.       Awarding interest on the monies wrongfully obtained from the date of collection through the date of entry of judgment in this action;

9.       Awarding attorneys' fees, expenses, and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action; and

10.       Directing such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs and the Class demand a trial by jury as to all matters so triable.

Dated: March 28, 2022

/s/ Anthony J. Russo, Jr.
_____
Anthony J. Russo, Jr., P.A.
d/b/a The Russo Firm
301 West Atlantic Avenue, Suite 0-2
Delray Beach, FL 33444
T: 844-847-8300
E: anthony@therussofirm.com

James C. Kelly (*pro hac vice* forthcoming)
The Law Office of James C. Kelly
244 5th Avenue, Suite K-278

New York, New York 10001
T: 212-920-5042
E: jkelly@jckellylaw.com

*Co-counsel for plaintiffs*
*and the proposed class*