UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:22-cv-20925-RKA

WALTER COLEMAN, *et al.,* on behalf of
themselves and all others similarly situated,

    Plaintiffs,

v.

BURGER KING CORPORATION,

    Defendant.

---

**DEFENDANT BURGER KING CORPORATION'S MOTION
TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT
PURSUANT TO FED. R. CIV. P. 12(B)(6)**

Defendant Burger King Corporation ("BKC") respectfully moves this Court, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the First Amended Complaint ("FAC," Dkt. No. 18) filed by Plaintiffs Walter Coleman, Marco DiLeonardo, Matthew Fox, Madelyn Salzman, Richard Moore, William Malfese, Andrew Lingoes, Chris Sours, Victor Castillo, Dana Dillon, Michael Mrofchak, John Passarella, Jared Drucker, Jesus Mendez, Angela Runner, Anthony Scott, Carl Anello, Sha Badgett, Sybil Peachlum, and Summer Adamski (collectively, "Plaintiffs"), because the FAC fails to state a claim upon which relief may be granted.

**I.      INTRODUCTION**

Food in advertisements is and always has been styled to make it look as appetizing as possible. That is hardly news; reasonable consumers viewing food advertising know it innately. This lawsuit unreasonably pretends otherwise. The Court should reject Plaintiffs' FAC pursuant to the *objective* reasonable consumer standard that allows for dismissal at the pleading stage.

Plaintiffs allege that prior to ordering certain burgers from Burger King® restaurants, they saw advertising photographs of BKC's best-selling Whopper® (FAC ¶ 4), and of a limited-time offering, the Big King™ (FAC ¶ 12), which were shot head-on, with part of the patty (or, in the

1

case of the Big King, patt<u>ies</u>) protruding from the front of the bun.  Although Plaintiffs do not allege in the FAC that they saw or relied on the same photos they included in the FAC, they claim that solely by looking at those or unspecified other advertising photos, and without consulting any other readily available information, they formed an expectation that the patties of a Whopper or Big King would be larger than they were, or at least larger than their buns.

There is much more beef in the burgers Plaintiffs ordered than can be found in their FAC.

BKC makes very clear how much beef the Whopper contains.  "Our Whopper Sandwich is a ¼ lb[*] of savory flame-grilled beef topped with juicy tomatoes, fresh lettuce, creamy mayonnaise, ketchup, crunchy pickles, and sliced white onions on a soft sesame seed bun," with the asterisk after the burger's weight referring to the "[w]eight based on a pre-cooked patty."  *See* https://www.bk.com/ menu/picker-picker_5520 (last visited May 22, 2022).



*See also* FAC ¶ 4 (displaying same image, with the calorie count of the Whopper, but cropped to exclude the written description).  These product descriptions are readily available online and the calorie count of every item is displayed on restaurant menu boards or available upon request in accordance with applicable laws requiring it.

2

Because every sandwich is hand-made at the restaurant, the "look" of each sandwich necessarily will differ. But Plaintiffs do not and cannot contend that BKC delivered them less than a quarter pound of beef with any Whopper or Big King. They argue, instead, that they "expected" more beef, ostensibly because of the protruding patties in the pictures they included in the FAC. All of Plaintiffs' claims, however, fail to meet the objective requirement of reasonableness that is subject to judicial scrutiny at the pleading stage. Plaintiffs' claims are *not* those of reasonable consumers, as confirmed by no less an authority than the Federal Trade Commission ("FTC").

In 2014, when Consumer Reports compared quick service restaurant offerings to pictures on the restaurants' menus, Consumer Reports asked the FTC for comment. A spokesperson said it "isn't surprising" the FTC has never pursued cases regarding pictures of quick service restaurant menu items because "[t]he commission is unlikely to take law-enforcement actions in cases where consumers can easily evaluate the product, it's inexpensive, and it's frequently purchased." *Consumer Reports*, "Fast food fare isn't picture perfect" (February 2014), *available at* https://www.consumerreports.org/cro/magazine/2014/02/fast-food-not-as-pictured/index.htm (last visited May 8, 2022) (hereafter the "Consumer Reports Article"). It is hard to imagine a food item that matches the FTC's "easily evaluated, frequently purchased" description better than Burger King's Whopper, enjoyed by guests around the world many billions of times.

The subject of quick service restaurant food pictures vs. the items as delivered is a hardy media perennial, with the Consumer Reports Article being just one example. *Insider* magazine published similar articles in 2013 and 2018.[1] An FTC spokesperson commented for a second article, too, confirming that "the FTC has not pursued any cases alleging that food ads are deceptive based only on the photos." Katie Little, "Why restaurant meals don't look like the ads," *CNBC* (May 19, 2014), *available at* https://www.cnbc.com/2014/05/19/why-restaurant-meals-don't-

---

[1] *See* Sarah Schmalbruch and Talia Lakritz, "Reality versus fiction: 20 disappointing real-life photos of fast food versus their promotional pictures," *Insider* (Aug. 31, 2018), *available at* https://www.insider.com/fast-food-reality-versus-photos-promos-2017-3 (last visited May 9, 2022); Ashley Lutz, "See How Real Fast Food Looks Shockingly Different From How It Looks In Ads," *Insider* (Dec. 16, 2013), *available at* https://www.businessinsider.com/fast-food-advertisements-vs-reality-2013-12.

3

look-like-the-ads.html (comparing the promotional and in-restaurant appearance of BKC's Big Fish sandwich, among many other comparisons of quick service food offerings to advertisements).

Of course, a photo on a restaurant menu should accurately convey an item's ingredients, and BKC's photos do that. Absent a guest's customization requests, BKC always serves the Whopper with the full set of ingredients every photo depicts. Reasonable Burger King restaurant guests, however, expect consistent quick-service quality at affordable prices, not that every hand-made sandwich will come out looking exactly like the photo in varied advertisements. If it really were true that the patty size or burger-to-bun ratio was so important to Plaintiffs that they "would not have purchased the burgers" had they seen an as-delivered burger before ordering it (FAC ¶¶ 32-51), Plaintiffs could have sought out online reviews of the Whopper and other Burger King restaurant items—some of which Plaintiffs themselves display or cite in their FAC (at ¶¶ 10-21)—or even just looked around the restaurants they visited to see the burgers they were about to enjoy.

Recently, when other plaintiffs tried to sue BKC based on an equally unreasonable interpretation of an advertisement about BKC's Impossible™ Whopper sandwich, a judge of this Court dismissed those plaintiffs' consumer fraud, breach of contract, and unjust enrichment claims at the pleading stage. *See Williams v. Burger King Corp.*, No. 19-24755-SINGHAL, 2020 WL 5083550 (S.D. Fla. July 20, 2020), *app. dismissed*, No. 20-13128-G, 2020 WL 8620165 (11th Cir. Sept. 15, 2020). Those plaintiffs, like Plaintiffs here, failed to show "'probable, not possible, deception' that is 'likely to cause injury to a reasonable relying consumer.'" *Id.* at *5, *quoting Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007). Citing the Ninth Circuit's seminal decision in *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016), Judge Singhal noted that consumer fraud plaintiffs must, but the *Williams* plaintiffs did not, plead more than "a mere possibility that BKC's advertisement 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Williams*, 2020 WL 5083550, at *5.

This case, like *Williams*, is not worthy of the Court's time. It fails to state a claim upon which the Court may grant relief. It should be dismissed.

## II.     STATEMENT OF FACTS

The Burger King® system, long known as the "Home of the Whopper®," is the world's second-largest chain of quick-service hamburger restaurants. Plaintiffs claim collectively to have

4

purchased the Whopper, three variations of the Whopper (the Whopper Jr., Double Whopper, and Whopper Melt), and the Big King.  Eight Plaintiffs claim to have purchased multiple burgers, but they do not say whether they ordered these burgers in the same visit or multiple visits: Walter Coleman (Whopper and Big King); Marco DiLeonardo (Whopper, Big King, and Whopper Melt); Matthew Fox (Whopper and Big King); Richard Moore (Double Whopper and Whopper Melt); Victor Castillo (Whopper, Whopper Jr., and Big King); Michael Mrofchak (Whopper and Whopper Jr.); Carl Anello (Whopper and Whopper Jr.); and Sha Badgett ("several Whopper Melts").  *See* FAC ¶¶ 32-34, 36, 40, 42, 48-49.  The others bought one sandwich each: Madelyn Salzman (Big King), William Malfese (Whopper), Andrew Lingoes (Whopper Melt), Chris Sours (Whopper), Dana Dillon (Whopper); John Passarella (Whopper); Jared Drucker (Whopper), Jesus Mendez (Whopper); Angela Runner (Whopper); Anthony Scott (Whopper Melt); Sybil Peachlum (Whopper); and Summer Adamski (Whopper).  *See id.* ¶¶ 35, 37-39, 41, 43-47, 50-51.

None of the twenty Plaintiffs allege when they purchased these burgers during the five-year span noted in the FAC (*see* FAC ¶ 56, alleging class period from September 2017 to the present).  None say whether the purchases they allege were their first-ever visits to Burger King restaurants or their first experiences with the burgers they ordered.  None say what knowledge they had of the sandwiches at the time they placed their orders.  None claim that the Burger King restaurants they visited displayed the referenced photos of the burgers they ordered.  None say they visited the Burger King website or saw photos of the burgers on that website before they ordered them.  Indeed, although all the Plaintiffs reference "advertisements" and claim that the burgers they received were "much smaller than advertised" (*id.* ¶¶ 32-51), none of them allege what advertisements they saw prior to their purchases that allegedly set their expectations about the burgers' sizes or patty-to-bun ratios.  But all of them allege that had they "kn[own] that said burgers w[ere] much smaller than advertised, [they] would not have purchased the burgers.  *Id.*

Plaintiffs' FAC does not include photos of the burgers Plaintiffs themselves received.  The photos they pasted into the FAC came from third-party sources.  For example, the photo of a Whopper that Plaintiffs included in the FAC (at ¶¶ 5, 10) came from an February 2020 *Insider* article by Savanna Swain-Wilson titled "I tried every single burger at Burger King and ranked them from worst to best," *available at* https://www.insider.com/best-and-worst-burgers-at-burger-

5

king-ranked (last visited May 22, 2022).[2] Several of the "real life" pictures in that same *Insider* article Plaintiffs cited, copied below, showed burger patties protruding from the bun, including the pictures of the reviewer's as-received Double Cheeseburger (upper right), Bacon Double Cheeseburger (upper left), Double Whopper (lower right), and Double Quarter Pounder King (lower left). Plaintiffs' FAC included only the author's image of the Whopper, which the author stated to be her favorite BKC sandwich. "It had a decent amount of meat with the quarter-pound patty, but it wasn't overly beefy." *Id.* The author did not contend that BKC deceived her or other consumers about the amount of beef in any of the sandwiches she reviewed.



Plaintiffs did not provide a source for the picture of an "Actual Big King" included in the FAC at ¶ 12. Plaintiffs cited an online video review of the Big King by "[e]xpert fast-food critic,

---

[2] On a motion to dismiss, the Court may consider the full contents of documents referenced in a complaint. *See, e.g., Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Plaintiffs cannot survive a motion by "pull[ing] snippets from the documents out of context." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1279 (11th Cir. 1999).

6

John Jurasek." *Id.* ¶ 13, *citing* https://www.youtube.com/watch?v=HqMWcMeibg&t=248s. The picture may have been a screen grab from that video. Mr. Jurasek poked fun at the name "Big," suggesting it conveyed the idea of "two pounds" of beef (*id.*), but he stated on the video that he knew the calorie count of the Big King was 490, less than that of other burgers on Burger King's menu. (BKC indisputably makes clear in the item's ingredients that the Big King contains a quarter pound of beef.) Mr. Jurasek also said (at the 8:15 mark of the video) that "there actually is a better amount of beef therein than I initially thought." Nowhere in the 15-minute video did Mr. Jurasek accuse BKC of misstating the amount of beef in the sandwich.

Plaintiffs also cited three other video reviews of the Big King. The first also poked fun at the "Big King" name because he did not consider it "big." *See* FAC ¶ 16, *citing* https://youtu.be/IpHGmoWJs7s?t=146. He, too, at the 3:05 mark, held up the sandwich, showing the patties to be protruding from the bun. His main complaint (3:22 mark) was about the "sloppy" presentation of the burger he received, not the amount of beef. The second reviewer (FAC ¶ 17, *citing* https://youtu.be/uxqnIYTOmZk?t=265), said his local Burger King restaurant did not have the Big King or Bacon King on its regular menu but offered to make the sandwiches for him specially. At the 1:55 mark, he held up side-by-side the two burgers he received, which were not the same size, but they were not supposed to be: The Bacon King is a half-pound burger; the Big King a quarter pound. Nearly the entire review focused on his surprise about this easily explained size difference. The third reviewer (FAC ¶ 19, *citing* https://youtu.be/a0MDmGsQc6U?t=117), wrongly claimed at the 1:45 mark that Burger King advertised the Big King as using two Whopper-size patties, which is not true. The Big King (two smaller patties) and the Whopper (one patty) both contain the same quarter pound of beef. This reviewer's specific complaint, too, therefore, was not well founded, and he otherwise said he liked the Big King's ingredients and taste.

Plaintiffs also cited a different review by Mr. Jurasek of the Whopper Melt. *See* FAC ¶ 15, *citing* https://youtu.be/-1Rnk8BC4oo?t=167. He said at the 1:40 mark that Burger King advertised the Whopper Melt accurately as containing a quarter pound of flame grilled beef. At the 2:56-3:18 mark, he held up the sandwich, with both patties protruding from the bun. He complained that the sandwich seemed smaller than its picture, but not because of the burger-to-bread ratio. At the 7:30 mark, he called the beef patties "pretty thick" and "what you expect from Burger King." Plaintiffs

7

also cited a Whopper Melt video review by "RDR Food Reviews," who claimed (at the 1:50 mark) that it "looked smaller than the picture," but also noted (at the 2:40 mark) that it probably looked bigger on his video, too.  FAC ¶ 18, *citing* https://youtu.be/DuqeuP9NFkE?t=317.

As noted in another article that Plaintiffs cited, Burger King "doesn't skimp on the meat [in Whopper Melt burgers], stacking them with two Whopper Jr. patties which amount to about the amount of meat as a regular Whopper."  Mura Dominko, "Burger King's Newest Sandwiches Are Making Customers Feel Cheated," *Eat This, Not That!* (March 14, 2022), *available at* https://www.eatthis.com/news-burger-kings-newest-sandwiches-are-making-customers-feel-cheated/ (last visited May 22, 2022), *cited in* FAC ¶ 20.  The article said BKC "advertised the melts as 'one-handed' sandwiches," and did not promise more meat than it delivered.  *Id.*

It bears repeating that Plaintiffs do not allege having seen any specific advertised photos of the burgers before they ordered them.  They do not claim that they saw any of the reviews they cited in their FAC, or any third-party sources at all.  They cite no examples to support for their bare contention that "Burger King advertises its burgers as large burgers compared to competitors" (FAC ¶ 3), and none exist.  Based on their unspecified contentions that the burgers they received were smaller than their purported expectations, Plaintiffs assert claims for "violation of state consumer protection laws" (FAC ¶¶ 69-75); breach of contract (*id.* ¶¶ 76-81); negligent misrepresentation (*id.* ¶¶ 82-91); and unjust enrichment (*id.* ¶¶ 92-95).

Plaintiffs seek to represent a class comprising "[a]ll persons or entities in the United States who purchased an Overstated Menu Item from Burger King [since] September 1, 2017."  FAC ¶ 56.  Although Plaintiffs collectively purchased only the Big King and four variations of the Whopper, and although the FAC includes photos allegedly advertised by Burger King only of the Whopper (*id.* ¶ 4), Big King (*id.* ¶ 12), and Spicy Whopper Melt (*id.* ¶ 21), Plaintiffs define the term "Overstated Menu Item" to mean "nearly every menu item in [BKC's] advertisements, including the Impossible Whopper, Big King, Single Quarter Pounder King, Bacon King, Double Whopper, Triple Whopper With Cheese, Whopper Jr., Bacon Double Cheeseburger, Double Cheeseburger, Bacon Cheeseburger, Cheeseburger, Hamburger, Whopper Melt, Bacon Whopper Melt, Spicy Whopper Melt, Breakfast Bacon King, Fully Loaded Croissan'Wich, Double Sausage, and the Egg & Cheese Croissan'Wich."  *Id.* ¶ 11.

8

To support their claims, Plaintiffs reference a different picture of the Whopper that they allege BKC used in advertisements prior to 2017 (*see* FAC ¶¶ 7-8), but none of the Plaintiffs claim to have seen that earlier picture or to have based their purchasing decisions on it. Plaintiffs also reference the *2010* findings of the *United Kingdom's* advertising authority with respect to a long-ago discontinued product, the Tendercrisp® chicken sandwich, and a depiction of the sandwich *as held by a patron in his hands* in a United Kingdom advertisement, shown below, which the regulator found misleading relative to the product's actual size. *See* FAC ¶¶ 23-24, citing https://www.bbc.com/news/uk-10699456 (last visited May 22, 2022).



Stripped of these non-sequiturs, Plaintiffs' complaint is no more or less than that the most important factor in their personal ordering decisions at Burger King restaurants was the size of the burger patty relative to the bun, that it was reasonable for them to form expectations about the patty-to-bun ratio from advertising photos, that they "would not have purchased" burgers from Burger King restaurants had they known every handcrafted burger would not look exactly like those pictures, and that every member of the purported class had the same expectations they did.

### III.  ARGUMENT

Photos of restaurant offerings are almost as old as the camera, and numerous media have reported on divergence between items as depicted and as delivered. There has been no shortage of food-related class actions in recent years, many dismissed as unreasonable. And yet, before this case, no one seems even to have attempted a lawsuit based on a mismatch between a quick-service restaurant item and its picture. There was a reason for that, and it was not a lack of imagination within the food class action plaintiffs' bar. It is because the claim lacks merit.

9

### A. *Plaintiffs Have No Valid Consumer Fraud Claim Because They Fail The Reasonable Consumer Test Applicable In The States Where They Reside.*

Even though the law is well settled that courts may not certify classes seeking to apply the laws of fifty states and the District of Columbia,[3] Plaintiffs' FAC cites the consumer protection laws of every state and purports to plead nationwide claims. Plaintiffs' claims lack merit in any jurisdiction, but the Court should not have to address the laws of every state before dismissing Plaintiffs' statutory claims. As a threshold matter, the Court should: (i) dismiss as a matter of law Plaintiffs' claims under the laws of states in which they do not reside; (ii) dismiss Ms. Badgett's claims under the laws of Mississippi because she failed to satisfy a statutory prerequisite; and (iii) dismiss Mr. Mrofchak's claims under the law of Ohio for the same reason. Plaintiffs' claims under the laws of the remaining states all are subject to the objective "reasonable consumer" analysis that the facts and theories Plaintiffs plead do not remotely satisfy, requiring their dismissal, too.

i. The court should dismiss Plaintiffs' claims asserted under the laws of states in which they do not reside.

Plaintiffs allege that they are residents of, and/or made relevant purchases in, the states of Arizona (FAC ¶ 51); California (*id.* ¶¶ 40, 45); Connecticut (*id.* ¶ 41); Florida (*id.* ¶¶ 32, 35-36, 44, 48), Illinois (*id.* ¶¶ 37, 47); Kentucky (*id.* ¶ 46); Massachusetts (*id.* ¶ 38); Michigan (*id.* ¶ 39); Mississippi (*id.* ¶ 49); New Jersey (*id.* ¶ 43); New York (*id.* ¶¶ 33-35); Ohio (*id.* ¶ 42); and Pennsylvania (*id.* ¶ 50). They concede that "[t]he consumer protection laws of the state in which" each purchase occurred govern. FAC ¶ 72. *See also Townhouse Restaurant of Oveido, Inc. v. NuCO2, LLC*, No. 2:19-CV-14085-ROSENBERG, 2020 WL 5440581, at *6-*7 (S.D. Fla. Sept. 9, 2020) (Florida choice of law rules require applying the consumer protection law of the place of purchase). Plaintiffs, however, lack standing to assert claims "under any state's law but their own because they did not suffer any injuries in fact traceable to alleged violations of laws in other states." *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp.3d 1183, 1205-06 (S.D. Fla. Mar. 30, 2021). The Court therefore need not consider the laws of the thirty-seven states (plus the District of Columbia) in which none of the Plaintiffs reside, and should dismiss those claims.

---

[3] Where "claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002). *See also, e.g., Townhouse Restaurant*, 2020 WL 5440581, at *6 ("[T]his Court has repeatedly held that variations in the unfair and deceptive trade practice laws across the nation can pose an insurmountable hurdle to nationwide class certification) (citing cases); *Teggerdine v. Speedway, LLC*, No. 8:16-cv-3280-T-27TGW, 2018 WL 2451248, at *8 (M.D. Fla. May 31, 2018) (declining to certify a 21-state class for the same reason).

  ii. <u>The Court should dismiss Ms. Badgett's Mississippi statutory claims.</u>

Plaintiff Badgett, a resident of Mississippi, purports to sue under the Mississippi Consumer Protection Act ("MCPA"), Miss. Code Ann. § 75-24-1, *et seq.*  However, "[i]n any private action brought under [that law], the plaintiff must have first made a reasonable attempt to resolve any claim through an informal dispute settlement program approved by the Attorney General." *Id.* § 75-24-15.  Ms. Badgett did not do this and does not plead that she did.  This is fatal to her MCPA claim and requires its dismissal.  *See Daniel v. Tootsie Roll Indus., LLC*, No. 17 Civ. 7541 (NRB), 2018 WL 3650015 (S.D.N.Y. Aug. 1, 2018) (applying Mississippi law), *citing Lockey v. CMRE Fin. Servs., Inc.*, No. 1:11CV70 LG-RHW, 2011 WL 2971085, at *2 (S.D. Miss. July 20, 2011) (dismissing claims for failure to satisfy this statutory prerequisite).

  iii. <u>The Court should dismiss Mr. Mrofchak's Ohio statutory claims.</u>

Plaintiff Mrofchak, a resident of Ohio, purports to sue under the Ohio Deceptive Trade Practices Act, Ohio Rev. Code Ann. § 4165.01, *et seq.*  "But not every consumer who has been deceived may bring a class action [under that statute]; first, he must prove . . . that the Ohio Attorney General had already declared the seller's practice to be deceptive or unconscionable or that an Ohio court had already determined the practice violates the [statute] before the seller engaged in it." *Gerboc v. ContextLogic, Inc.*, 867 F.3d 675, 680 (6th Cir. 2017) (brackets omitted), *quoting* Ohio Rev. Code Ann. § 1345.09(B).  Mr. Mrofchak has not alleged and cannot allege satisfaction of either prerequisite.  This is the first case in which anyone has tried to claim consumer fraud based on quick-service food not looking like ad advertising photo.  The absence of Ohio precedent requires dismissal of Mr. Mrofchak's deceptive trade practice claims.  *See id.*

  iv. <u>The Court should dismiss Plaintiffs' remaining statutory claims because those claims fail the objective "reasonable consumer" analysis applicable to them.</u>

Plaintiffs' claims fail, too, under the laws of the remaining eleven states in which they reside— Arizona, California, Connecticut, Florida, Illinois, Kentucky, Massachusetts, Michigan, New Jersey, New York, and Pennsylvania.  These states all apply the objective reasonable consumer test.  Because this test is intentionally objective, it allows dismissal of unreasonable claims at the pleading stage.  *See, e.g., Molina v. Aurora Loan Servs., LLC*, 635 F. App'x 618, 627 (11th Cir. 2017); *Pfeil v. Sprint Nextel Corp.*, 284 F. App'x 640, 643 (11th Cir. 2008); *Simmons v. Ford Motor Co.*, No. 18-CV-81558-RAR, 2022 WL 845127, at *18 (S.D. Fla. Mar. 21, 2022); *Williams*, 2020 WL 5083550, at *6; *Yu v. Dreyer's Grand Ice Cream, Inc.*, No. 20 Civ. 8512 (ER),

2022 WL 799563 (S.D.N.Y. Mar. 16, 2022); *Broward Motorsports of Palm Beach, LLC v. Polaris Sales, Inc.*, No. 17-CV-81100, 2018 WL 1072211, at *7 (S.D. Fla. Feb. 27, 2018).

At best, Plaintiffs' assertion here is that they looked at photos of burgers—photos that had no scale—and developed an expectation that the burgers, or at least the patties, would be bigger than they were. That claim would not be reasonable at *any* restaurant. It certainly is not reasonable at an international chain of quick-service restaurants where portion sizes are uniform, nutritional information is displayed, and examples of the actual items abound and can be readily seen before purchase. The core purpose of the reasonable consumer test is to allow the Court to "[i]nject[] some common sense into the matter." *Harris v. Kellogg Sales Co.*, No. 21-CV-1040-SPM, 2022 WL 1641439, at *1 (S.D. Ill. May 24, 2022). This case cries out for the same.

As the Ninth Circuit held in *Ebner*, and as courts around the country have repeated, "the reasonable consumer standard requires a probability that a significant portion of the general consuming public, acting reasonably in the circumstances, could be misled." *Chiappetta v. Kellogg Sales Co.*, No. 21-CV-3545, 2022 WL 602505, at *3 (N.D. Ill. Mar. 1, 2022), *quoting Ebner*, 838 F.3d at 965. *See also Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225 (9th Cir. 2019) (reasonable consumers understand that "diet soda" has a lower calorie count than regular soda but is not a weight loss aid). "What matters most is how real consumers understand and react to the advertising," and if "plaintiffs base deceptive advertising on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Bell*, 982 F.3d at 476-77. An ordinary consumer's "day-to-day marketplace expectations" are highly relevant to the reasonable consumer analysis. *Wynn v. Topco Assocs., LLC*, No. 19-cv-11104 (RA), 2021 WL 168541 (S.D.N.Y. Jan. 19, 2021). "Courts considering deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used." *Id.* at *4 (internal quotation omitted), *quoting Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 477 (7th Cir. 2020).

Because the reasonable consumer standard is objective, well-defined, and clearly applicable to Plaintiffs' claims, one would have expected Plaintiffs to address the test in their thirty-one-page FAC and explain how they purportedly meet it. Yet, the word "reasonable" appears in the FAC only in connection with the attorneys' fee award they hope to claim. FAC

12

¶ 66(f).  Their seven-paragraph count for "Violation of State Consumer Protection Laws" asserts that Plaintiffs are "consumers" (*id.* ¶ 71), cites the laws of every state (*id.* ¶ 73), and alleges in bare terms that BKC "violated the above-stated consumer protection laws by its deceptive practices (*id.* ¶ 75).  Plaintiffs mostly leave to the imagination what they think BKC did wrong and whether and why they believe their claims satisfy the reasonable consumer test.  Because Plaintiffs' claims under FDUTPA and other states' consumer fraud laws sound in fraud, they must not only be reasonable, but also satisfy the heightened pleading standards of Rule 9(b).  *See Carter v. Ford Motor Co.*, No. 19-62646-CIV-ALTMAN, 2021 WL 1165248, at *16 (S.D. Fla. Mar. 26, 2021).  Plaintiffs have not pleaded fraud with particularity and that is a separate reason for dismissal of their fraud-based claims.  To be clear, however, Plaintiffs' failure to satisfy the reasonable consumer standard requires dismissal regardless of whether Rule 9(b) applies.

Plaintiffs cited numerous online reviews of the same sandwiches they ordered, yet none of the reviewers contended that BKC misled them about the amount of beef in the sandwiches.  Indeed, the most prominent of the online reviewers Plaintiffs cited, John Jurasek, said at the 7:30 mark of the video cited by Plaintiffs (FAC ¶ 15) that the beef patties he received were "pretty thick" and "what you expect from Burger King."  Plaintiffs also used misleading photographic comparisons of BKC advertisements to other images (*see* FAC ¶¶ 8, 10, 12), but as even naked-eye inspection readily reveals, the side-by-side photos were not the same size or scale.  Further, none of the Plaintiffs allege that they saw any of the photos in the FAC, including the "Former Advertisement" depicted in FAC ¶ 8, or that the "Former Advertisement" (which they allege BKC had not used since 2017) factored into their decisions to order a Whopper.  Plaintiffs elsewhere claim that "Burger King promises large portions of food."  *Id.* ¶ 28.  But the nutritional information about every restaurant item, including the amount of beef in and the calorie count of every burger, is widely available, as Mr. Jurasek's review of the Big King noted.  Plaintiffs do not allege that BKC ever misstated an item's ingredients, portion size, or calorie count.

Although Plaintiffs' claims in this case are so unreasonable as to be unprecedented, three recent food-related cases—*Williams* (the Impossible Whopper case), *In re: Subway Footlong Sandwich Mktg. and Sales Prac. Litig.*, 869 F.3d 551 (7th Cir. 2017) (alleging that Subway's "Footlong" sandwiches sometimes were less than twelve inches long), and *Forouzesh v. Starbucks*

13

*Corp.*, 714 F. App'x 776 (9th Cir. 2018) (involving Starbuck's "iced" drinks)—provide the closest comparators and demonstrate why Plaintiffs' claims should be dismissed here and now.

In *Williams*, a group of plaintiffs sued BKC under the consumer fraud laws of five states claiming they understood the advertising slogan "100% Whopper®, 0% beef" for Burger King's Impossible Whopper to be a promise by Burger King to grill the vegan Impossible patties on a separate cooking surface from beef and chicken. Citing *Ebner* and its guidance that "a mere possibility that Burger King's advertisement 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner,'" Judge Singhal dismissed those claims at the pleading stage. *Williams*, 2020 WL 5083550, at *5, *quoting Ebner*, 838 F.3d at 965. "Burger King promised a non-meat patty and delivered with the 'Impossible Burger.'" *Id.* at *6.

The allegation in *In re: Subway* was that "Footlong" sandwiches handmade in Subway restaurants sometimes baked to only eleven inches. As with BKC's hand-made sandwiches, however, the "meat and cheese ingredients" in Subway's items "[w]ere standardized." 869 F.3d at 553. "[N]o customer [wa]s shorted any food," so the plaintiffs' asserted consumer fraud claims addressed only to the as-baked length of the sandwich rolls had no merit. In *Forouzesh*, the Ninth Circuit held that "no reasonable consumer would think . . . that a 12-ounce 'iced' drink, such as iced coffee or iced tea, contains 12 ounces of coffee or tea and no ice." 714 F. App'x at 777.

Any number of other cases dismissing consumer fraud claims at the pleading stage further demonstrate why this Court should do the same to Plaintiffs' claims. The allegation the court rejected in *Chiappetta* was that Kellogg's Strawberry Pop-Tarts gave the plaintiff the false impression that the bright red strawberry filling shown on the box was made entirely from strawberries and no other ingredients. *Chiappetta*, 2022 WL 602505, at *2. It would have been just as unreasonable for the plaintiff to argue that her Pop-Tart did not look quite as beautifully red as the picture when she opened it. In *Stewart v. Riviana Foods Inc.*, No. 16-CV-6157 (NSR), 2017 WL 4045952, at *10 (S.D.N.Y. Sept. 11, 2017), the court dismissed as unreasonable a plaintiff's claim that she expected every box of Ronzoni pasta to contain sixteen ounces, "solely because she ha[d] purchased different Ronzoni pasta products in similarly-sized boxes," where Ronzoni correctly and prominently labeled the weight of each box. In *Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021), the defendant advertised honey as containing "100% New Zealand Manuka

Honey" and listed "Manuka Honey" as the sole ingredient, but the plaintiffs claimed only around 60% of the honey "derived from Manuka flower nectar." *Id.* at 876. The defendant conceded that bees do not limit themselves to specific flower species, but the Ninth Circuit agreed with the defendant that "other available information about Trader Joe's Manuka Honey," especially its "low price," would "quickly dissuade a reasonable consumer from the belief that [it] was derived from 100% Manuka flower nectar," even if the label implied this. *Id.* at 882-83. Billions of transactions at quick-service restaurants provide the same kind of "other information" to reasonable consumers not to expect every hand-made burger to look exactly like an advertising photo.

Florida courts have dismissed other recent consumer fraud cases for similar reasons. In *Piescik v. CVS Pharmacy, Inc.*, No. 21-81298-CV-MIDDLEBROOKS, 2021 WL 5996977 (S.D. Fla. Dec. 15, 2021), the defendant advertised its hand sanitizer's ability to "kill 99.99% of germs." The plaintiff alleged this term was misleading because the sanitizer did not "kill 99.99% of *all* germs, including the bacterium enterococcus faecium, norovirus, bacterial spores, and protozoan cysts." *Id.* at *1. Judge Middlebrooks dismissed those claims at the pleading stage, holding that "no reasonable consumer would read the label . . . and assume that it means the hand sanitizer will kill 99.99% of all germs in existence as opposed to those germs commonly found on the hands." *Id.* In *Kurimski v. Shell Oil Co.*, __ F. Supp.3d __, 2021 WL 6340979 (S.D. Fla. Nov. 8, 2021), Judge Middlebrooks dismissed as unreasonable claims that gas station customers reasonably expected to pay the "cash" price when using debit cards. If being charged the cash price when using a debit card was as important a consideration to the plaintiff as she claimed, she should have asked the question. *See id.* at *10. In *Jackson v. Anheuser-Busch InBev SA/NV, LLC*, No. 20-cv-23392-BLOOM, 2021 WL 3666312, at *1 (S.D. Fla. Aug. 18, 2021), Judge Bloom dismissed claims that consumers of the defendant's "Veza Sur" beer thought it to be made by a "locally owned craft brewery, rather than by a subsidiary of the world's largest brewer." Among the many reasons the claims fell short was that the corporate ownership of Veza Sur "has been widely publicized since the brewery's inception." *Id.* at *10.

Plaintiffs' claims under the laws of all eleven relevant states are subject to dismissal for the same lack of reasonableness. As correctly held by the *Williams* court, the consumer fraud laws of Florida, California, and New York all require plaintiffs to satisfy the reasonable consumer test.

15

*See Williams*, 2020 WL 5083550, at *4.  As the court stated in *In re: 100% Grated Cheese Parmesan Mktg. and Sales Prac. Litig.*, 275 F. Supp.3d 910, 919-20 (N.D. Ill. 2017), the consumer fraud laws of Connecticut, Illinois, Michigan, and New Jersey, all follow the reasonable consumer test, too.  So do Kentucky, Massachusetts, and Pennsylvania.  *See Corder v. Ford Motor Co.*, 285 F. App'x 226, 228 (6th Cir. 2008) (Kentucky Consumer Protection Act claims require satisfaction of reasonable consumer test); *Naiser v. Unilever U.S., Inc.*, 975 F. Supp.2d 727, 737 (W.D. Ky. 2013) (same); *Bush v. WellPet, LLC*, 534 F. Supp.3d 179 (D. Mass. 2021) (applying reasonable consumer test to Massachusetts consumer protection law); *Lima v. Post Consumer Brands, LLC*, No. 1:18-cv-12100-ADB, 2019 WL 3802885, at *4 (D. Mass. Aug. 13, 2019) (same).  *Vliet v. Liberty Mutual Personal Ins. Co.*, Civ. No. 21-3766, 2022 WL 768156 (E.D. Pa. Mar. 14, 2022) (applying test under Pennsylvania law).

Arizona courts have been slightly less clear about the applicable test.  In one case, *Larkey v. Health Net Life Ins. Co.*, No. 1 CA-CV 11-0523, 2012 WL 2154185, at *3-*4 (Ariz. Ct. App. June 14, 2012), the court seemingly used "reasonable consumer" and "least sophisticated consumer" interchangeably.  Even if Arizona follows a "least sophisticated consumer" standard, courts construing the Fair Debt Collection Practices Act, which applies that test, have been clear that "even the least sophisticated consumer is not a dolt." *Muldowney v. Merit Recovery Sys., Inc.*, No. 5:18-cv-1057, 2019 WL 2024760 (N.D.N.Y. May 8, 2019).  Further, as held by another Arizona court in a consumer case, even where a "least sophisticated" analysis applies, this "do[es] not mean . . . that a person who was not misled . . . because she was sophisticated enough to know the truth can nonetheless assert a claim . . . because a less sophisticated consumer would have been misled." *Schellenbach v. GoDaddy.com LLC*, No. CV-16-746-PHX-DGC, 2017 WL 3719883, at *2 (D. Ariz. Aug. 29, 2017).  Plaintiff Summer Adamski, the Arizona resident who claims she purchased a Whopper on one occasion at a Burger King in Arizona, pleads no facts about her sophistication or lack thereof, and like her fellow plaintiffs, she pleads nothing about what advertisements or other information she did or did not see before her purchase.

Plaintiffs' FAC did not allege facts sufficient to demonstrate that reasonable consumers—or consumers of any level of sophistication—expect every hand-made sandwich they receive to look exactly like advertised photos.  On multiple occasions, spokespersons for the FTC have stated

16

publicly that the FTC has never acted against a restaurant based on food as delivered not looking exactly like advertisements. Plaintiffs' claims in this case are even less reasonable than the Impossible Whopper claims dismissed in *Williams*. This Court should follow *Williams* in holding that Plaintiffs have failed to allege plausible consumer deception.

C.   ***Plaintiffs Have No Claim for Breach of Contract***

Plaintiffs' "breach of contract" claims fare no better. Paragraph 79 of Plaintiffs' FAC introduces the term "sales contracts" without defining it. They seem to argue that advertising photos amounted to a contractual "offer" to sell a burger looking exactly like the photo. FAC ¶ 77. The supposed "breach" occurred by delivery of sandwiches that "were smaller than advertised." *Id.* ¶ 80. But, Plaintiffs identify no advertisements in which BKC promised a burger "size" (*i.e.*, patty weight) and failed to deliver it. The FAC is purely about aesthetics.

To prevail, Plaintiffs would have to prove that the advertising photo of a burger constituted a contractual offer by BKC that included as an "essential term" delivery of a handcrafted sandwich looking exactly like the picture. *Rubenstein v. Primedica Healthcare, Inc.*, 755 So. 2d 746, 748 (Fla. Dist. Ct. App. 2000); *see also, e.g., De La Flor v. The Ritz-Carlton Hotel Co., L.L.C.*, No. 12-23689-CIV, 2013 WL 1874618, at *4 (S.D. Fla. May 1, 2013) (dismissing breach claim because advertisements did not include alleged essential terms); *Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 857 F. Supp. 2d 1294, 1301 (S.D. Fla. 2012) (same). "Under Florida law, '[t]he test of the true interpretation of an offer or acceptance is not that the party making it thought it meant or intended it to mean, but **what a reasonable person in the position of the parties would have thought it meant.**" *Schultz v. American Airlines, Inc.*, No. 18-80633-CIV, 2019 WL 3000448, at *3 (S.D. Fla. July 10, 2019) (emphasis added), *quoting* 1 *Williston on Contracts* ¶ 94. To meet that standard, Plaintiffs would have to show a meeting of the minds between BKC and its guests that BKC would deliver every sandwich looking exactly like the picture in a particular ad. Reasonable guests, however, arrived with no such expectations.

This is essentially the same flaw that caused the *Williams* court to dismiss breach of contract claims. The *Williams* court accepted for purposes of argument that restaurant sales are matters of contract, but the "essential terms" of the contract assumed to exist in *Williams* were that "Burger King made an offer (the ad for the 'Impossible Burger'), which Plaintiffs accepted (by ordering the 'Impossible Burger"), [and] consideration was exchanged (Plaintiffs' money for the 'Impossible Burger')." *Williams*, 2020 WL 5083550, at *3. The *Williams* plaintiffs tried to argue

17

that the offer to sell the sandwich created "a presumption the 'Impossible' patties would be cooked on a different grill," but the court correctly held this to be "not an essential term of the contract." *Id.* Neither was preparing a sandwich that exactly resembled its advertising photo.

Plaintiffs' FAC does not specify whether they are attempting to apply Florida law to their contract claims or the law of the state where they purchased burgers. Florida mandates a *lex loci contractus* rule to contract claims. *See, e.g., Ritter v. Metropolitan Casualty Ins. Co.*, No. 4:19-cv-10105-MM, 2019 WL 8014511, at *5 (S.D. Fla. Dec. 3, 2019). Florida law, if applicable, imposes the high burden shown above on breach claims based on advertising. The laws of the other states where Plaintiffs reside appear to be similar to Florida's on these threshold points.[4] Plaintiffs' breach of contract claims therefore fail regardless of which states' laws apply to them.

### C. *Plaintiffs Have No Claim for Negligent Misrepresentation or Unjust Enrichment*

Plaintiffs' final legal theories are two tort claims, "negligent misrepresentation" and unjust enrichment." The same unreasonableness that dooms Plaintiffs' statutory and contract claims causes their tort theories to fail, too. Where facts pleaded by plaintiffs do not support consumer fraud claims, they do not support negligent misrepresentation claims, either. *See, e.g., Bynum v. Family Dollar Stores, Inc.*, No. 1:20-cv-6878 (MKV), 2022 WL 837089, at *5 (S.D.N.Y. Mar. 21, 2022); *Kurimski*, 2021 WL 6340979, at *14; *Jackson*, 2021 WL 3666312, at *16-17; *Baird v. Samsung Electronics Am., Inc.*, 522 F. Supp.3d 679, 686 (N.D. Cal. 2021). Unjust enrichment, an equitable claim, requires plaintiffs to demonstrate unjustness of the price they paid for what they received. Where "[n]o reasonable consumer would" reach the plaintiff's asserted conclusion, requiring dismissal of consumer fraud claims, "Plaintiffs' unjust enrichment claims fail, too." *Parmesan Cheese*, 275 F. Supp. 3d at 927, *citing Bober v. Glaxo Wellcome PLC*, 246 F.3d 934 (7th Cir. 2001) ("in the absence of any deception, … the requisite violation of 'fundamental

---

[4] California law precludes contract claims without "a meeting of the minds on all material points." *Muhareb v. Lowe's HIW, Inc.*, No. EDCV 12012-90-VAP-OPX, 2012 WL 12892156, at *5 (C.D. Cal. Oct. 25, 2012). New York law similarly precludes breach of contract claims where the plaintiff cannot allege how a nontraditional contract included the plaintiff's preferred terms. *See Yellow Pages, Inc. v. Idearc Media Corp.*, No. 07 Civ. 6221 (SCR), 2009 WL 10740073, at *3 (S.D.N.Y. Feb. 19, 2009). *See also, e.g., Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (Pennsylvania law, same); *Velthuysen v. Mark Sullivan & Assocs.*, No. 2:10-CV-36, 2012 WL 5397183 (W.D. Mich. Nov. 5, 2012) (Michigan law, same); *Saucier v. Coldwell Banker JME Realty*, 644 F. Supp. 2d 769, 783 (S.D. Miss. 2007) (Mississippi law; same).

principles of justice, equity, and good conscience' [necessary for unjust enrichment] is not present"); *see also Forouzesh*, 2016 WL 4443203, at *5 (same).[5]

Each of these claims then separately fails for other reasons that the Court need not reach.

Plaintiffs' negligent misrepresentation claim fails, separate from its unreasonableness, because no "special relationship" exists between BKC and plaintiffs imposing an extraordinary duty of care on BKC. The "special relationship" element of a negligent misrepresentation claim requires a "special position of confidence and trust with the injured party," beyond that of ordinary "seller of goods or provider of services." *Kimmell v. Schaeffer*, 89 N.Y.2d 257, 263 (1996). *See also, e.g., Thompson v. Procter & Gamble Co.*, No. 18-cv-60107-GAYLES, 2018 WL 5113052, at *3 (S.D. Fla. Oct. 19, 2018). Such a duty may attach, for example, to the words of "lawyers and engineers" and other persons in whom clients place reliance because of these professionals' "training and expertise." *Id. See also Michael v. Honest Co.*, No. LA CV15-7059 JAK (AGRx), 2016 WL 8902574, at *24 (C.D. Cal. Dec. 6, 2016) (same). By definition, an advertisement directed to the general public gives rise to no such relationship, precluding Plaintiffs' tort claim. *See Aetna v. Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 584 (2d Cir. 2005).

Plaintiffs' claims for unjust enrichment fail, too, beyond their unreasonableness, because some of the states where they reside do not recognize unjust enrichment as an independent cause of action. *See, e.g., Mashallah, Inc. v. West Bend Mut. Ins. Co.*, 20 F.4th 311, 324 (7th Cir. 2021) (under Illinois law, "[t]o the extent that the unjust enrichment claim is premised on [alleged consumer fraud], the unjust enrichment claim cannot survive the proper dismissal of those matters"); *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) ("There is not a standalone cause of action for 'unjust enrichment'" in California); *Corsello v. Verizon New York, Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012) ("[U]njust enrichment is not a catchall cause of action to

---

[5] "Unjust enrichment is an equitable doctrine." *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1356 (S.D. Fla. 2012). "The doctrine applies only where (1) the plaintiff conferred a benefit on the defendant, who had knowledge of the benefit; (2) the defendant voluntarily accepted and retained the benefit; and (3) under the circumstances, it would be inequitable for the defendant to retain the benefit without paying for it." *Id.* The claim "fails," however, "[w]hen a defendant has given adequate consideration to someone for the benefit conferred." *Asencio v. Wells Fargo Bank, N.A.*, 905 F. Supp. 2d 1279, 1280–81 (M.D. Fla. 2012) (internal citation and quotation marks omitted), *aff'd*, 520 F. App'x 798 (11th Cir. 2013); *see also Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1236 (S.D. Fla. 2007).

be used when others fail."). Further, were the Court to analyze sandwich sales as matters of contract, as the *Williams* court did—but contracts lacking the "make it look exactly like the advertisement" term the Plaintiffs wish to incorporate—the existence of a contract precludes any claim for unjust enrichment. *See Williams*, 2020 WL 5083550, at *6; *Mashallah*, 20 F.4th at 325; *Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp.3d 1231, 1249 (D. Colo. 2018) (dismissing unjust enrichment claim because "Plaintiffs paid for burritos; Plaintiffs received burritos").

Plaintiffs' attempts to plead common law tort theories, therefore, fail across the board.

## IV. CONCLUSION

For the reasons stated above, the Court should dismiss all of Plaintiffs' claims pursuant to Rule 12(b)(6).


Respectfully submitted,

Dated: May 27, 2022

By: /s/ *Jeffrey S. Jacobson*
Jeffrey S. Jacobson (*pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
1177 Avenue of the Americas
New York, NY 10036
Tel: (212) 248-3191
NY State Bar No. 2925097
jeffrey.jacobson@dbr.com

By: /s/ *Michael D. Joblove*
Michael D. Joblove
GENOVESE JOBLOVE & BATTISTA
100 SE 2nd Street, Suite 4400
Miami, Florida 33131
Tel: (305) 349-2300
mjoblove@gjb-law.com