**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

Walter Coleman, *et al.*,

               Plaintiffs,

      vs.

Burger King Corporation,

               Defendant.

Case No.: 22-CIV-20925-ALTMAN

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND**
**INCORPORATED MEMORANDUM OF LAW**

Anthony J. Russo, Jr.
Anthony J. Russo, Jr., P.A.
d/b/a The Russo Firm
301 West Atlantic Avenue, Suite 0-2
Delray Beach, Florida 33444

Mark Anthony Panzavecchia
Panzavecchia & Associates, PLLC
1000 Franklin Ave., Suite 204
Garden City, New York 11530

James C. Kelly (admitted *pro hac vice*)
The Law Office of James C. Kelly
244 5th Avenue, Suite K-278
New York, New York 10001

*Co-counsel for Plaintiffs*
*and the proposed class*

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION…………………………………………………...………...1

II.  THE PROPOSED CLASS……………………………………..…….....…2

III.  FACTUAL SUMMARY……………………………………………….…3

IV.  ARGUMENT…………………………………………………...…….....…2

    A.  Plaintiffs have satisfied all the requirements of Rule 23(a)………………………5

        1.  The class is so numerous that joinder would be impracticable…………….5

        2.  Questions of law and fact are common to the class………………………..5

        3.  The class representatives' claims are typical of the class's claims………..…6

        4.  The class representatives will adequately represent the class………..……7

    B.  The class satisfies the Rule 23(b)(3) predominance and
       superiority requirements……………………………………………………...7

        1.  Nationwide application of Florida law is appropriate…………………….8

           a.  Burger King's physical presence in Florida and the fact that the
             advertisements at issue were created in Florida make application
             of Florida law constitutional……………………………………………8

           b.  Florida's "most significant relationship" test dictates that Florida
             law applies………………………………………………………………9

        2.  In the alternate, Plaintiffs request certification under the laws of thirteen
          States…………………………………………………………………10

        3.  A nationwide breach of contract class should be certified……………………10

        4.  A nationwide unjust enrichment class should be certified……………………11

        5.  Plaintiffs will use common evidence to support their claims……………..…12

           a.  Evidence common to the class will demonstrate BKC's
             Advertisements for the Menu Items are materially misleading…………..…12

b.   Plaintiffs propose a classwide damages methodology that relies on common evidence………………………………………………..13

6.   A class action is superior to other forms of adjudication……………………..14

C.   The class is ascertainable………………………………………………………15

D.   Proposed class counsel will fairly and adequately represent the class……………17

V.   CONCLUSION……………………………………………………….......…..…18

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Allapattah Serv., Inc. v. Exxon Corp.*,
    333 F.3d 1248, 1260-61 (11th Cir. 2003)…………………………..…………10, 12

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)……………………………………………………...….…4, 12

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013)……………………………………………………………4

*Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*,
    135 F.3d 750 (11th Cir. 1998)……………………………………..…………………9

*Brown v. SCI Funeral Servs. of Florida, Inc.*,
    212 F.R.D. 602 (S.D. Fla. 2003)……………………………..……………5, 6

*Carriuolo v. Gen. Motors Co.*,
    823 F.3d 977 (11th Cir. 2016)……………………………….……………12, 13

*In re Checking Account Overdraft Litig.*,
    275 F.R.D. 666 (S.D. Fla. 2011)………………………………...………………8

*In re Checking Account Overdraft Litig.*,
    286 F.R.D. 645 (S.D. Fla. 2012)…………………………….…………………8, 15

*In re Checking Account Overdraft Litig.*,
    307 F.R.D. 656 (S.D. Fla. 2015)…………………………..…………………10, 11

*Cheney v. Cyberguard Corp.*,
    213 F.R.D. 484 (S.D. Fla. 2003)……………………………..………………………5

*Cherry v. Dometic Corp.*,
    986 F.3d 1296 (11th Cir. 2021)……………………………..………………15

*Cohen v. Implant Innovations, Inc.*,
    259 F.R.D. 617 (S.D. Fla. 2008)………………………………….…...………9

*Collins v. DaimlerChrysler Corp.*,
    894 So.2d 988 (Fla. Dist. Ct. App. 2004)……………………………….……13

*CV Reit, Inc. v. Levy*,
    144 F.R.D. 690 (S.D. Fla. 1992)……………………………...…………5

*Duhaime v. John Hancock Mut. Life Ins. Co.,*
    177 F.R.D. 54 (D. Mass. 1997)……………………………………………………5

*Ebin v. Kangadis Food Inc.,*
    297 F.R.D. 561 (S.D.N.Y. 2014)……………………………………………16, 17

*Ferron v. Heinz Foods Company*,
    No. 20-CV-62136-RAR (S.D. Fla. July 13, 2021)……………………...…………17

*Fitzpatrick v. Gen. Mills, Inc.,*
    635 F.3d 1279 (11th Cir. 2011)……………………………………….…………12
.
*Holmes v. Cont'l Can Co.,*
    706 F.2d 1144 (11th Cir. 1983)……………………………..………………4

*Klay v. Humana, Inc.,*
    382 F.3d 1241 (11th Cir. 2004)………………………………………………4, 8

*Kleiner v. First Nat'l Bank ef Atl.,*
    97 F.RD. 683 (N.D. Ga. 1983)……………………………………………10, 11

*In re Managed Care Litig.,*
    209 F.R.D. 678 (S.D. Fla. 2002)………………………..………………5

*Miles v. Am. Online, Inc.,*
    202 F.R.D. 297 (M.D. Fla. 2001)……………………………………………5

*Nelson v. Mead Johnson*,
    270 F.R.D. 689 (S.D. Fla. 2010)………………………………...………………15

*Pottinger v. Miami,*
    720 F. Supp. 955 (S.D. Fla. 1989)……………………………….………………6

*Pettway v. Am. Cast Iron Pipe Co.,*
    576 F.2d 1157 (5th Cir. 1978)……………………………..…………………4

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)………………………………………………………4, 8

*Rensel v. Centra Tech, Inc.,*
    2 F.4th 1359 (11th Cir. 2021)……………………………...………………15

*Rikos v. Procter & Gamble Co.,*
    799 F. 3d 497 (6th Cir. 2015)……………………………………………16

*Rollins, Inc. v. Heller,*
    454 So.2d 580 (Fla. Dist. Ct. App.1984)……………………….……………………13

*Roper v. Consurve, Inc.,*
    578 F.2d 1106 (5th Cir. 1978)……………………………………...…………………12

*In re Scotts EZ Seed Litig.,*
    304 F.R.D. 397 (S.D.N.Y. 2015)…………………………………...…………………17

*Sosna v. Iowa,*
    419 U.S. 393 (1975)……………………………………………….…………………7

*In re Takata Airbag Prods. Liab. Litig.,*
    2016 WL 6072406 (S.D. Fla. Oct. 14, 2016)…………………………..……………9

*In re Terazosin Hydrochloride Antitrust Litig.,*
    220 F.R.D. 672 (S.D. Fla. 2004)……………………………………….………*passim*

*TemPay, Inc. v. Biltres Staffing of Tampa Bay, LLC,*
    945 F. Supp. 2d 1331 (M.D. Fla. 2013)………………….……………………12

*Travelers Prop. Cas. Co. of Am. v. Moore,*
    763 F.3d 1265 (11th Cir. 2014)………………………………...………………8

*Valley Drug Co. v. Geneva Pharms., Inc.,*
    350 F.3d 1181 (11th Cir. 2003)……………………………………………7

*Verbal v. Tiva Healthcare, Inc.,*
    No. 20-60695-CIV-ALTMAN (S.D. Fla. Aug. 18, 2021)……………………………11

**Statutes**

Federal Rule of Civil Procedure 23(a) .................................................................2, 5

Federal Rule of Civil Procedure 23(a)(2) ...........................................................5, 6

Federal Rule of Civil Procedure 23(a)(4) ..............................................................7

Federal Rule of Civil Procedure 23(b)(3) ....................................................... *passim*

Federal Rule of Civil Procedure 23(g)……………………………………….2, 17, 18

Fla. Stat.§ 501.201 et seq.…………………………………………………..……………3

## I.      INTRODUCTION

Few actions are as appropriate for class treatment as the one at bar. Plaintiffs Walter Coleman, Marco DiLeonardo, Matthew Fox, Madelyn Salzman, Richard Moore, William Malfese, Andrew Lingoes, Chris Sours, Victor Castillo, Dana Dillon, Michael Mrofchak, John Passarella, Jared Drucker, Jesus Mendez, Angela Runner, Carl Anello, Sha Badgett, Sybil Peachlum, and Summer Adamski ("Plaintiffs") assert claims on behalf of millions of consumers nationwide who purchased a menu item from Defendant Burger King Corporation ("BKC") based on nationwide uniform advertisements materially overstating the size of BKC's menu items.

On behalf of themselves and their fellow class members, Plaintiffs seek to certify a class under Rule 23 of purchasers of a Whopper®, Whopper® Jr., Double Whopper®, Whopper® Melt, or Big King™ (the "Menu Items").  As detailed below, Plaintiffs satisfy all applicable Rule 23 requirements:

***Numerosity.***  Millions of Menu Items have been sold and are continuing to be sold, making individual adjudication impractical and satisfying the numerosity requirement.

***Commonality and predominance.***  There are common questions of law and fact that predominate, including whether BKC's advertisements materially mislead consumers about the size of its beef patties and the amount of ingredients contained in the Menu Items, whether the average customer was likely to be misled by BKC's advertisements for the Menu Items, and the profits it unjustly obtained by selling the Menu Items based on materially misleading

advertisements.

   ***Typicality.***   Each of the named Plaintiffs' claims is typical of the class, and the Plaintiffs are highly motivated to serve the class.

   ***Superiority.***   Classwide adjudication of Plaintiffs' claims is the superior method to resolve the case, particularly compared to the difficulties in litigating millions of separate claims by purchasers of the Menu Items.

   ***Ascertainability.***   The class is ascertainable as it is adequately defined such that membership is capable of determination.

   ***Adequate representation.***   Proposed co-counsel for the class will adequately represent the class and is prepared to continue to vigorously prosecute these claims on behalf of the class.

   While fact discovery is ongoing, the evidence uncovered to date shows that Plaintiffs' and Class members' claims all arise from Defendant's uniform course of conduct, and that all factual issues necessary to resolve Plaintiffs' and Class members' claims against BKC are common and can be proven on a class-wide basis.

   As further detailed below, this predominantly common evidence shows that Plaintiffs meet all the requirements of Rule 23(a) and 23(b)(3). Therefore, Plaintiffs respectfully request that this Court certify the proposed class, appoint Plaintiffs as class representatives, and appoint Plaintiffs' co-counsel as co-counsel for the class pursuant to Fed. R. Civ. P. 23(g)(l).

## II.     THE PROPOSED CLASS

   Plaintiffs propose the following nationwide class for certification based on BKC's misleading advertisements for the Menu Items under Florida Deceptive and Unfair Trade

Practices Act ("FDUTPA"), Fla. Stat.§ 501.201 *et seq.,* breach of contract, and unjust enrichment.  The proposed class (the "Nationwide Class") is as follows:

> All individuals in the United States who purchased a Whopper®, Whopper® Jr., Double Whopper®, Whopper® Melt, or Big King™ at any time between April 1, 2018, and the date of the final disposition of this action.

If the Court declines to certify a nationwide class, Plaintiffs propose the following state classes under the laws for the respective states:

> All individuals who purchased a Whopper®, Whopper® Jr., Double Whopper®, Whopper® Melt, or Big King™ at any time between April 1, 2018, and the date of the final disposition of this action, in the jurisdictions of Florida, New York, Illinois, New Jersey, California, Connecticut, Massachusetts, Michigan, Kentucky, Mississippi, Ohio, Pennsylvania, or Arizona.

### III.    FACTUAL SUMMARY

This class action challenges Burger King's deceptive marketing practices for certain Burger King menu items, including the Whopper®, Whopper® Jr., Double Whopper®, Whopper® Melt, or Big King™.  *See* First Amended Class Action Complaint at ¶ 11 [ECF No. 18]. Specifically, Plaintiffs allege that Burger King materially overstates the size and/or amount of the beef patties and toppings in nearly every menu item in its current advertisements and store menu ordering boards.  *Id*. at ¶¶ 1-12.

Plaintiffs allege that they expected the Menu Items that they purchased to be similar in size to the pictures of the items in Burger King's advertisements and on Burger King's store menu ordering board. *Id*. at ¶¶ 32-51.

Unbeknownst to Plaintiffs, the Menu Items were much smaller than advertised. *Id*. Plaintiffs allege that they would not have purchased the Menu Items if they had known that they

were much smaller than advertised. *Id*. at ¶ 37. As a result, Plaintiffs, and other consumers, have been deceived and have suffered economic injury. *Id*. at ¶¶ 74, 81, 91.

Common evidence in this lawsuit will be the photographs of the Menu Items in the advertisements at issue and photographs of the actual Menu Items as served to customers.

Common evidence will also include the approximate prices BKC charges for the Menu Items and the prices that it charges for an additional beef patty and extra toppings.

## IV.   ARGUMENT

The purpose of class action cases is to provide plaintiffs an opportunity to vindicate their interests who would otherwise not realistically be able to seek judicial relief.[1] *See Holmes v. Cont'l Can Co.,* 706 F.2d 1144, 1154 (11th Cir. 1983) (describing "the policies of Rule 23" and observing "the individual might be unable to obtain counsel to prosecute his action when the amount of individual damages is relatively small") (quoting *Pettway v. Am. Cast Iron Pipe Co.,* 576 F.2d 1157, 1220-21 n.80 (5th Cir. 1978)).

Although the Court must undertake a rigorous analysis of the Rule 23 prerequisites, the Court has broad discretion to certify. *Klay v. Humana, Inc.,* 382 F.3d 1241, 1251 (11th Cir. 2004). And "Rule 23 grants courts no license to engage in free ranging merits inquiries at the certification stage. Merits questions may be considered to the extent-but only to the extent-that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,* 568 U.S. 455,466 (2013). As detailed below, Plaintiffs have met all Rule 23 requirements here.

---

[1] In crafting Rule 23, "the Advisory Committee had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'" *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617 (1997) (citation omitted); *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809 (1985).

**A.     Plaintiffs have satisfied all the requirements of Rule 23(a).**

**1.     The class is so numerous that joinder would be impracticable.**

There can be no serious dispute that the numerosity requirement is satisfied here. 11 million consumers visit Burger King restaurants around the world everyday. *See* Exhibit 1 to the Declaration of James C. Kelly in Support of Plaintiffs' Motion For Class Certification (the "*JCK Decl.*"), attached hereto as Exhibit A. Burger King has also stated that "BKC has made clear it will not contest the numerosity of a putative class that includes millions of Whopper® purchasers." *See* Defendant Burger King Corporation's Opposition To Plaintiffs' Motion To Extend Deadlines [ECF No. 37]. Accordingly, there are likely millions of class members nationwide, easily surpassing the standard numerosity benchmarks in this District.[2]

**2.     Questions of law and fact are common to the class.**

The "commonality" requirement of Rule 23(a)(2) "is a 'low hurdle' easily surmounted." *Duhaime v. John Hancock Mut. Life Ins. Co.,* 177 F.R.D. 54, 63 (D. Mass. 1997) (citation omitted); *see also Cheney v. Cyberguard Corp.,* 213 F.R.D. 484,490 (S.D. Fla. 2003) (commonality threshold is "not high"). It only requires "a *single* common issue of law or fact." *In re Managed Care Litig.,* 209 F.R.D. 678,682 (S.D. Fla. 2002), *overruled in part on other grounds* by *Klay, supra* (emphasis in original) (citation omitted). Where the defendant is alleged to have "engaged in a standardized course of conduct that affects all class members," commonality is satisfied. *In re Terazosin Hydrochloride Antitrust Litig.,* 220 F.R.D. 672, 685-86 (S.D. Fla. 2004). Moreover, "Plaintiffs' legal claims need not be completely identical and

---

[2] Courts in the Southern District and the Middle District have found numerosity where the class numbered 500, 4,700 and 9,000. *See Brown v. SCI Funeral Servs. of Florida, Inc*., 212 F.R.D. 602, 604 (S.D. Fla. 2003) (9,000); *Miles v. Am. Online, Inc*., 202 F.R.D. 297 (M.D. Fla. 2001) (4,700); *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 696 (S.D. Fla. 1992) (500).

factual differences concerning treatment or damages will not defeat a finding of commonality."

*Brown,* 212 F.R.D. at 604 (citations omitted).

Commonality is met here by common questions of law and fact, including:

- Whether BKC's advertisements for the Menu Items are materially misleading;

- Whether the beef patties that BKC uses in its advertisements are materially larger than the beef patties that are actually served to customers;

- Whether BKC's advertisements display a materially greater amount of ingredients than are actually served to customers;

- Whether the average customer was likely to be misled by Burger King's advertisements for the Menu Items;

- Whether Burger King was unjustly enriched by the advertisements for the Menu Items; and

- Whether Plaintiffs and the class have sustained damages and/or are entitled to restitution as a result of Burger King's advertisements for the Menu Items.

These common questions satisfy Rule 23(a)(2).

### 3.    The class representatives' claims are typical of the class's claims.

The "typicality" requirement is met when the claims of the representative plaintiffs arise from the same course of conduct that gives rise to the claims of the other class members, and where the claims are based upon similar legal theories and are not antagonistic to those of the class. *Pottinger v. Miami,* 720 F. Supp. 955, 959 (S.D. Fla. 1989). Typicality and commonality are related, with commonality referring to the group characteristics of the class as a whole, and typicality focusing on the named plaintiffs' claims in relation to the class. *In re Terazosin Hydrochloride Antitrust Litig.,* 220 F.R.D. at 686 n.23.

Plaintiffs and members of the class have all experienced the same pattern of behavior

from Burger King in this case.  Burger King represents to Plaintiffs, and members of the class, photographs of what a purchaser would expect to receive if they purchased one of the Menu Items. Each of the Plaintiffs purchased a Menu Item based on Burger King's advertisements.  Each Plaintiff has alleged that the Menu Item that they received was much smaller than expected. Plaintiffs easily meet the typicality requirement here.

> **4.      The class representatives will adequately represent the class.**

Rule 23(a)(4) requires that the representative parties will "fairly and adequately protect the interests of the class."  This requirement is satisfied when (i) the class representatives have no interests conflicting with the class; and (ii) the representatives and their attorneys will properly prosecute the case.  *Sosna v. Iowa,* 419 U.S. 393,403 (1975); *Valley Drug Co. v. Geneva Pharms., Inc.,* 350 F.3d 1181, 1189 (11th Cir. 2003).  Both prongs are satisfied here.

The class representatives are not only adequate to serve the class, but they have also demonstrated their eagerness and commitment to do so.  Each class representative has agreed to be a named plaintiff in this public lawsuit and has retained attorneys experienced in class action and complex litigation. Each class representative has thus far engaged in extensive discovery, including searching and producing any relevant documents and providing verified answers to interrogatories. Each class representative has provided an updated answer to interrogatories after a discovery dispute arose. Further, the class representatives have no "interests conflicting with the class." Accordingly, the representative parties have demonstrated that they will "fairly and adequately protect the interests of the class."

**B.      The class satisfies the Rule 23(b)(3) predominance and superiority requirements.**

Rule 23(b)(3) allows a class action when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual

members." These common issues predominate if they "'have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief.'" *Klay,* 382 F.3d at 1255 (citation omitted). It is not necessary that all questions of law or fact be common; only some questions must be common, and they must predominate over individual questions.[3]  Unjust enrichment claims are particularly ripe for class certification. *See In re Checking Account Overdraft Litig.,* 275 F.R.D. 666,680 (S.D. Fla. 2011) *("Overdraft I")* ("[C]ourts often certify unjust enrichment claims because 'common questions predominate' and are 'all easily resolved class wide.'") (citation omitted).

### 1.    Nationwide application of Florida law is appropriate.

The application of Florida law nationwide is a predominating question of law and fact.

Federal courts apply the forum states' choice-of-law rules to state law issues. *See Travelers Prop. Cas. Co. of Am. v. Moore,* 763 F.3d 1265, 1271 (11th Cir. 2014). Here, Burger King's significant contacts to the state of Florida make application of Florida law constitutional, and Florida's "most significant relationship" test warrants the application of Florida law.

### a.    Burger King's physical presence in Florida and the fact that the advertisements at issue were created in Florida make application of Florida law constitutional.

As required by *Phillips Petroleum Co.*, 472 U.S. at 821, BKC has a "significant contact or significant aggregation of contacts" with Florida such that Florida has "state interests" sufficient to ensure that the choice of its law is "not arbitrary or unfair." (citation omitted). BKC is incorporated in Florida and its principal place of business is located in Miami, Florida.

---

[3] *Klay,* 382 F.3d at 1254; *see also In re Checking Account Overdraft Litig.,* 286 F.R.D. 645, 655 (S.D. Fla. 2012) *("Overdraft II")* ("[T]he rule 'calls only for predominance, not exclusivity, of common questions.'") (quoting *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 140 (2d Cir. 2001)).

*See* Exhibit 2 to the *JCK Decl*. (attaching a detailed printout for BKC from The Division of Corporations). In addition, BKC has disclosed in its Initial Disclosure Statement that a third-party, a studio named 500 Degrees, LLC, that is located in Miami, Florida, "created" the advertisements at issue in this lawsuit and "produced the photographs at issue in this lawsuit." *See* Exhibit 3 to the *JCK Decl.*. Accordingly, BKC would have reasonably assumed that it is subject to the laws of Florida, and application of Florida law is entirely consistent with Due Process.

> **b.     Florida's "most significant relationship" test dictates that Florida law applies.**

Florida follows the "most significant relationship" test from the Restatement in resolving choice of law conflicts. *See In re Takata Airbag Prods. Liab. Litig.,* 2016 WL 6072406, at *4 (S.D. Fla. Oct. 14, 2016). The four relevant factors under this test are "(1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered." *Id.* (citation omitted).

A court should evaluate these contacts "'according to their relative importance with respect to the particular issue.'" *Id.* (citation omitted). In a misrepresentation case, however, the place of injury is "less significant" than in other cases. *Cohen v. Implant Innovations, Inc.,* 259 F.R.D. 617, 635 (S.D. Fla. 2008) (citations omitted).

To the extent the Court finds that there is a conflict between any state laws, the Court should apply the "balancing of interests" analysis articulated in *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.,* 135 F.3d 750 (11th Cir. 1998). In *Boardman,* the Eleventh Circuit determined that when the laws of two different states are in conflict in consolidated cases and

only one state's laws can apply, the court should determine which state has the greater interest in applying its respective laws. *See id.* at 753.

The State of Florida has a stronger interest than that of any other state in applying its laws to this case. BKC is incorporated Florida and has its principal place of business located in Florida. In addition, 500 Degrees, LLC, the company that allegedly "created" the advertisements at issue in this lawsuit and "produced the photographs at issue in this lawsuit" is located in Florida. Accordingly, Florida has a much stronger interest in enforcing its laws here than any other state in the nation.

### 2. In the alternate, Plaintiffs request certification under the laws of thirteen States.

If the Court declines to certify a nationwide class under Florida law, Plaintiffs request certification under Florida, New York, Illinois, New Jersey, California, Connecticut, Massachusetts, Michigan, Kentucky, Mississippi, Ohio, Pennsylvania, and Arizona law. A trial on these common laws will be easily managed and a jury can easily be instructed on the variances in any law. *See In re Checking Account Overdraft Litig.,* 307 F.R.D. 656, 681 (S.D. Fla. 2015) *("Overdraft III")* (certification of multi-state subclasses appropriate even if state laws differ when court can simply provide jury with limited instructions on different claims).

### 3. A nationwide breach of contract class should be certified.

Courts typically certify breach of contract claims under Rule 23 where contracts at issue are similar and class members treated equally. *See Allapattah Serv., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1260-61 (11th Cir. 2003) (affirming class certification for breach of contract claim where the contracts were materially similar and defendant had acted the same with respect to the entire class); and *Kleiner v. First Nat'l Bank ef Atl.*, 97 F.RD. 683, 692 (N.D. Ga. 1983) (collecting cases

where "claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such"). Such a result is logical because the breach of contract claims are virtually identical for class members, and all of the claims would prevail or fail together. *See Verbal v. Tiva Healthcare, Inc.*, No. 20-60695-CIV-ALTMAN (S.D. Fla. Aug. 18, 2021) (certifying nationwide breach of contract claim).[4] This is especially true for situations like the one at bar, where a company advertises the same photographs or advertisements to consumers and class members suffered the same economic injury.

### 4. A nationwide unjust enrichment class should be certified.

The Court should certify a nationwide class for Plaintiffs' unjust enrichment claims. Nationwide unjust enrichment classes are easily suitable for certification because "[t]here is general agreement among courts that the 'minor variations in the elements of unjust enrichment under the laws of the various states...are not material and do not create an actual conflict.'" *Overdraft III,* 307 F.R.D. at 675 (citation omitted); *see also In re Terazosin Hydrochloride Antitrust Litig.,* 220 F.R.D. at 697 n.40 (certifying a seventeen-state unjust enrichment subclass when the law is "virtually identical" from state to state).

In *Overdraft III,* the district court certified a nationwide unjust enrichment class when Wachovia Bank "deceived its customers through uniform misrepresentations and concealment of important information about its overdraft policy." *Overdraft III,* 307 F.R.D. at 675. Here, Burger King deceived consumers nationwide through uniform advertisements. Certification of a nationwide unjust enrichment class is entirely consistent with the practice

---

[4] A copy of the Court's decision in *Verbal* is attached as Exhibit 4 to the *Kelly Decl.*

in this District, and is warranted when Burger King has unjustly profited from its decision to falsely advertise the size of its burgers to consumers throughout the country.

**5.      Plaintiffs will use common evidence to support their claims.**

**a.      Evidence common to the class will demonstrate BKC's advertisements for the Menu Items are materially misleading**

At trial, Plaintiffs will present common evidence to demonstrate that BKC violated state consumer protection laws, breached its contracts with customers, and was unjustly enriched as a result. Whether BKC's advertisements are misleading, and whether this was material to average consumers, are common questions subject to common proof.

The concept of "unfair and deceptive conduct is extremely broad" under FDUTPA. *See TemPay, Inc. v. Biltres Staffing of Tampa Bay, LLC,* 945 F. Supp. 2d 1331, 1344 (M.D. Fla. 2013) (internal quotation marks and citations omitted). It includes conduct that would deceive "an objective reasonable consumer." *Fitzpatrick v. Gen. Mills, Inc.,* 635 F.3d 1279, 1283 (11th Cir. 2011) (citation omitted). Plaintiffs need not prove reliance on any specific false statement or omission by BKC, but only that "an objective reasonable person would have been deceived." *Fitzpatrick,* 635 F.3d at 1283. "The mental state of each class member is irrelevant." *Carriuolo v. Gen. Motors Co.,* 823 F.3d 977, 985 (11th Cir. 2016). Consumer class actions are particularly appropriate where, as here, the defendant exhibits a common course of conduct.[5]

---

[5] *See, e.g., Amchem Prods. Inc.,* 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer ... fraud[.]"); *Allapattah Servs., Inc. v. Exxon Corp.,* 333 F.3d 1248 (11th Cir. 2003); *Roper v. Consurve, Inc.,* 578 F.2d 1106 (5th Cir. 1978).

### b.      Plaintiffs propose a classwide damages methodology that relies on common evidence.

At the outset, because the existence of FDUTPA injury is an objective inquiry, it can be easily calculated on a classwide basis.[6] Plaintiffs' damages model relies on benefit of the bargain calculations, or the difference between the market value as delivered and the market value as advertised.[7] This common-sense approach[8] does not rely on any individual subjective valuation of market value.[9] The simple calculation of benefit of the bargain damages is the approximate price paid by consumers for the Menu Items, which is the value, less the percentage of the value by which the jury finds that the Menu Items were overstated. For example, if the jury finds that BKC materially overstated a Menu Item in its advertisements by 35%, damages for said Menu Item can be fairly measured at 35% of the approximate price that class members paid for the Menu Item. The price that BKC charges for the Menu Items are publicly available on its website or mobile ordering application. *See* Exhibit 5 to the *JCK Decl*. Historical pricing information from

---

[6] *See Carriuolo*, 823 F.3d at 986 ("[B]ecause the injury is not determined by the plaintiffs' subjective reliance on the alleged inaccuracy, causation and damages may also be amenable to class-wide resolution.").

[7] *Id.* ("FDUTPA damages are measured according to 'the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.'") (quoting *Rollins, Inc. v. Heller,* 454 So.2d 580, 585 (Fla. Dist. Ct. App.1984)).

[8] *See id.* at 987 ("This case turns on a relatively simple question, at least as to damages-Is a car with defective seatbelt buckles worth less than a car with operational seatbelt buckles? Common sense indicates that it is.") (quoting *Collins v. DaimlerChrysler Corp.,* 894 So.2d 988, 991 (Fla. Dist. Ct. App. 2004)).

[9] *Id.* ("As the district court recognized here, a manufacturer's misrepresentation may allow it to command a price premium and to overcharge customers systematically. Even if an individual class member subjectively valued the vehicle equally with or without the accurate Monroney sticker, she could have suffered a loss in negotiating leverage if a vehicle with perfect safety ratings is worth more on the open market.").

BKC's website is available through the Internet Archive, located at https://archive.org/.

In addition, damages can alternatively be calculated classwide based on a percentage of the approximate price that BKC charges consumers for an additional beef patty. For example, if the jury finds that the advertisement for the particular Menu Item overstated the beef patty by 50%, then the damages would be 50% of the cost to the consumer of adding another beef patty to the Menu Item. The approximate price that BKC charges for an additional patty can be calculated by subtracting the approximate price that BKC charges for a single patty Menu Item from the approximate price BKC charges for a double patty of the same Menu Item.

Similarly, if the jury finds that BKC materially overstated the toppings in a Menu Item, then the approximate price that BKC charges for adding extra toppings to the Menu Item will be the common evidence used by Plaintiffs to establish damages. The prices that Burger King charges for extra tomatoes and lettuce are also publicly available online and on BKC's website and mobile ordering application.  *See* Exhibit 6 to the to the *JCK Decl*.

### 6.    A class action is superior to other forms of adjudication.

A class action is the superior method for resolving this case.  The factors for determining superiority are provided in Rule 23(b)(3): (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Class members do not have a sufficiently strong interest in controlling the case due to its size and complexity-

particularly when the damages exceed the costs of pursuing individual claims. Nor is there any other significant litigation concerning the advertisements at issue. The undersigned is not aware of any other pending case involving the advertisements at issue.

Finally, there are no significant or unusual difficulties in managing this case. BKC's liability can be proven by its uniform advertisements and photographs of the actual Menu Items served to customers, which are common to the entire class. And damages are easily calculable on a classwide basis. Any difficulties encountered in this case would pale in comparison to the problems that millions of individual actions would bring.

**C.     The class is ascertainable.**

The Eleventh Circuit has held that Rule 23 implicitly requires that a proposed class be "adequately defined such that its membership is capable of determination." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021).

Here, the class definitions are precise and class membership can be determined by entirely objective means: if an individual purchased a Menu Item in the United States during the class period, they are a member of the class. *See, e.g., Overdraft II*, 286 F.R.D. at 650; *Nelson v. Mead Johnson*, 270 F.R.D. 689, 691 (S.D. Fla. 2010) (certifying class of "[a]ll Florida consumers who purchased [product] within the applicable statute of limitations").

The 11th Circuit has held that the ascertainability requirement does not require a party to establish that a class is administratively feasible. *See Rensel v. Centra Tech, Inc.*, 2 F.4th 1359, 1368 (11th Cir. 2021) (holding that "our recent decision in Cherry clarified that to meet this ascertainability requirement, the party seeking certification need not establish its ability to identify class members in a convenient or administratively feasible manner.").

Even though a showing is not required, this case can be administered in a convenient and

administratively feasible manner. Class members can be identified using a combination of Defendant's online sales records, third-party food delivery service data, and potential class members' affidavits. *See Rikos v. Procter & Gamble Co.*, 799 F. 3d 497, 527-29 (6th Cir. 2015) (finding ascertainability requirement satisfied where (1) there was "evidence that a single purchaser [in proposed class] . . . could be identified using records of customer membership cards or records of online sales"; (2) defendant sold a significant amount of products to consumers online; and (3) "[s]tore receipts and affidavits can supplement these methods") (emphasis added). Applying these standards, the defined Classes are clearly ascertainable.

BKC possesses information useful for identifying class members. BKC has sold and continues to sell the Menu Items online and through the BKC mobile application, both of which necessarily require a customer's email address to place an order.

In addition, class members regularly purchase Burger King Menu Items through third-party food delivery services such as Grubhub, Doordash, Seamless, Uber Eats, and Postmates. Said delivery services also possess customer emails that could be used to identify class members who purchased any of the Menu Items and which can also be used to cross-reference and substantiate self-identifying affidavits to confirm class membership. BKC likely has the same information in its own records from said third party delivery services that could be used to identify class members as it has partnership agreements with many of these services. *See* Exhibit 7 to the *JCK Decl.* (attaching press releases announcing Burger King's partnership with Uber Eats, Door Dash, and Postmates).

Finally, self-identification of class members will be a manageable process because the Menu Items were sold based on the same uniform advertisements. *See, e.g., Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 567 (S.D.N.Y. 2014) (finding class ascertainable and self-identification of

class members a manageable process). Receipts are not required for low value purchases in class actions. *See, e.g., In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 407 (S.D.N.Y. 2015) ("The Court agrees with Judge Rakoff's reasoning in *Ebin*. Declining to certify classes when consumers are likely to lack proof of purchase would render class actions against producers almost impossible to bring." (internal quotations omitted)). Recently, the Court in *Ferron v. Heinz Foods Company*, No. 20-CV-62136-RAR (S.D. Fla. July 13, 2021), certified a settlement class of consumer purchasers of Maxwell House and Yuban branded coffee products, and found that the "…the Settlement Class is ascertainable because the criteria for class membership is objectively defined, making self-identification by Class Members possible and membership in the class is capable of determination by others as well." *See* Exhibit 8 to the *JCK Decl.* (attaching a copy of Judge Ruiz's decision); *see* also Exhibit 9 to the *JCK Decl.* (attaching a list of 44 cases—28 of which were contested—where certification was granted although customer receipts may be unavailable).

Here, some Class members will be able to self-identify through proof of purchase (such as receipts or credit card statements) or through affidavit, and this can be crossreferenced with the other data collected and subjected to fraud-prevention checks.

Based on the foregoing, the Classes are ascertainable and class members can be identified through an administratively feasible method.

**D.     Proposed class counsel will fairly and adequately represent the class.**

Rule 23(g) requires that the Court appoint counsel who will "fairly and adequately represent the interests of the class." *See In re Terazosin Hydrochloride Antitrust Litig.,* 220 F.R.D. at 701. The court evaluates counsel based on (1) their work in identifying and investigating plaintiffs' claims; (2) their experience handling similar cases; (3) their knowledge of applicable law; and (4) the resources to commit to prosecuting this action.

Fed. R. Civ. P. 23(g)(l)(A).

Each of these considerations weighs in favor of appointing Anthony J. Russo, from Anthony J. Russo, Jr., P.A., Mark A. Panzavecchia, from Panzavecchia & Associates, PLLC, and James C. Kelly, from The Law Office of James C. Kelly, as co-counsel for the class. Plaintiffs have retained highly capable counsel with extensive experience in successfully prosecuting consumer class actions, mass torts, and complex litigation matters throughout the United States.[10] They have vigorously and effectively prosecuted this case on behalf of the proposed class, including conducting an extensive pre-filing investigation, filing a class action complaint, screening and evaluating potential plaintiffs and class representatives, responding to BKC's motion to dismiss, serving and responding to numerous discovery demands involving twenty plaintiffs, addressing numerous discovery disputes, reviewing thousands of pages of documents, drafting third-party subpoenas, reviewing experts, analyzing potential evidence, retaining a mediator that has substantial experience in mediating class actions, and preparing and filing this motion for class certification.

Plaintiffs' counsel have litigated this action since its inception and have already committed significant resources to this litigation. Proposed co-counsel for the class satisfy the Rule 23(g) factors.

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that the proposed classes meet all of the Rule 23 requirements, and request that this Court certify the nationwide class,

---

[10] *See* the Joint Declaration dated December 21, 2022, attached hereto as Exhibit B.

appoint plaintiffs as class representatives, and appoint Anthony J. Russo, Jr., Mark A. Panzavecchia, and James C. Kelly as co-counsel for the class.

Date: December 21, 2022

Respectfully submitted,

*/s/ Anthony J. Russo*
Anthony J. Russo, Jr., P.A.
d/b/a The Russo Firm
301 West Atlantic Avenue, Suite 0-2
Delray Beach, FL 33444
T: 844-847-8300
E: anthony@therussofirm.com

Mark Anthony Panzavecchia
Panzavecchia & Associates, PLLC
1000 Franklin Ave., Suite 204
Garden City, NY 11530
T: 516-965-2854
E: mark@panzavecchialaw.com

James C. Kelly (admitted *pro hac vice*)
The Law Office of James C. Kelly
244 5th Avenue, Suite K-278
New York, New York 10001
T: 212-920-5042
E: jkelly@jckellylaw.com

*Co-counsel for Plaintiffs*
*and the proposed class*