## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Walter Coleman, *et al.*,

                    Plaintiffs,

     vs.

Burger King Corporation,

                    Defendant.

Case No.: 22-CIV-20925-ALTMAN

**PLAINTIFFS' REPLY TO DEFENDANT BURGER KING
CORPORATION'S MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Anthony J. Russo, Jr.
Anthony J. Russo, Jr., P.A.
d/b/a The Russo Firm
301 West Atlantic Avenue, Suite 0-2
Delray Beach, Florida 33444

Mark Anthony Panzavecchia
Panzavecchia & Associates, PLLC
1000 Franklin Ave., Suite 204
Garden City, New York 11530

James C. Kelly (admitted *pro hac vice*)
The Law Office of James C. Kelly
244 5th Avenue, Suite K-278
New York, New York 10001

*Co-counsel for Plaintiffs
and the proposed class*

**TABLE OF CONTENTS**

I.    The Arbitration and Class Action Waiver Provisions of BKC's "Royal Perks"
      Program Does Not Preclude Plaintiffs From Satisfying Commonality
      And Predominance.………………………………………………………...……..1

II.   Plaintiffs Satisfy the Commonality or Typicality Requirements………………........…..4

III.  Common Questions of Fact Predominate…………………….……………….….…7

IV.   Plaintiffs Can Apply FDUTPA to the Claims of a Nationwide Class……....…..…...…9

V.    The Court Should Certify a Multi-State Breach of Contract and Unjust
      Enrichment Class…………………………………………................................……..…9

VI.   Plaintiffs' Claims Do Not Fail Rule 23(b)(3)'s Superiority Test………………………10

CONCLUSION……………………………………………………………….……………10

Plaintiffs respectfully submit this reply to Defendant Burger King Corporation's Memorandum of Law in Opposition to Plaintiffs' Motion For Class Certification.  For the reasons discussed below, Defendant has not shown why Plaintiffs' Motion for Class Certification should be denied.

I.      **The Arbitration and Class Action Waiver Provisions of BKC's "Royal Perks" Program Does Not Preclude Plaintiffs From Satisfying Commonality and Predominance**

Although some members of the proposed class may have used the BKC "Royal Perks Program" that contains an agreement to arbitrate and a class action waiver, that does not preclude the Court from finding commonality and predominance and certifying the class. The United States Supreme Court has held that other important matters that would have to be tried separately would not preclude class certification where the common issues predominate like here. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'") (citing 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123–24 (3d ed. 2005) (footnotes omitted)).

In addition, although some courts have declined to certify a class where it was shown that all, or nearly all, of the proposed class members have agreed to binding arbitration, that is not the case here. BKC has not introduced any evidence to show that all, or nearly all, of the class members agreed to binding arbitration. In addition, even if BKC were able to make such a showing, the Eleventh Circuit has rejected the notion that this type of defense bars certification. *See In re Chkg.*

1

*Acct. Ovrdft. Litig*., 2022 WL 472057, at *3-5 (11th Cir. Feb. 16, 2022) (typicality found even where arbitration defense was arguably dispositive of many class members' claims).[1]

Further, the arbitration agreement introduced by BKC states that the arbitration is to be conducted by the American Association of Arbitrators (the "AAA"). *See* Exhibit A to the Declaration of Thibault Roux [ECF No. 49-6]. The AAA rules provide that low value consumer claims do not have to be resolved through arbitration and can be filed in small claims court. *See* Exhibit 1 to the Declaration of James C. Kelly in Support of Reply (the "*Kelly Decl.*"); *see also* https://adr.org/sites/default/files/Consumer%20Rules.pdf, at page 15. As the adjudication of a class of claims under Rule 23 is a procedural mechanism, parties cannot contract around procedural law. In the interest of judicial economy, class members with small claims should be entitled to submit their claim in this Court as opposed to the filing of numerous small claims in courts throughout the United States. In addition, a trial on this issue will not result in millions of individual inquiries but a single common inquiry as to whether BKC's arbitration agreement precludes class members that used BKC's Royalty Perks program from asserting a claim here.

Most courts have recognized that arbitration clauses create only procedural rights that are distinct from the substantive rights underlying a particular dispute. *See, e.g., Lysik v. Citibank, N.A*., 2017 WL 4164037, at *4 (N.D. Ill. Sept. 20, 2017) ("An arbitration provision is ultimately nothing more than a procedural, forum-shifting term."); *Wong v. CKX, Inc*., 890 F. Supp. 2d 411,

---

[1] *See also Herrera v. LCS Fin. Servs. Corp*., 274 F.R.D. 666, 681 (N.D. Cal. 2011) ("The fact that some members of a putative class may have signed arbitration agreements or released claims against a defendant does not bar class certification."); *Midland Funding, LLC v. Brent*, 2010 WL 4628593, at *4 n.1 (N.D. Ohio Nov. 4, 2010); *Coleman v. Gen. Motors Acceptance Corp*., 220 F.R.D. 64, 90–91 (M.D. Tenn. 2004) (class definition need not "exclude car purchasers that might be subject to arbitration agreements"); *Finnan v. Rothschild & Co*., 726 F. Supp. 460, 465 (S.D.N.Y. 1989)*; Davis v. Four Seasons Hotel Ltd*., 2011 WL 4590393, at *3 (D. Haw. Sept. 30, 2011); *Gregory v. Preferred Fin. Sols*., 2013 WL 6632322, at *8 (M.D. Ga. Dec. 17, 2013); *Ehret v. Uber Techs., Inc*., 148 F. Supp. 3d 884, 902 (N.D. Cal. 2015); *Espinoza v. Galardi S. Enter., Inc*., 2016 WL 127586, at *13 (S.D. Fla. Jan. 11, 2016).

423 (S.D.N.Y. 2012) ("The right to have a dispute heard in an arbitral forum is a procedural right that affects the forum that will decide the substantive rights of the parties"); M*itsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 628 (1985) ("By agreeing to arbitrate ... , a party does not forgo ... substantive rights ... [i]t trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration").

Relatedly, courts have long recognized that procedural defenses related to where a case is litigated, such as venue and personal jurisdiction, are evaluated only on the basis of the class representatives, not the absent class members. *See, e.g., Ambriz v. Coca Cola Co*., 2014 WL 296159, at \*5-6 (N.D. Cal. Jan. 27, 2014) (citing cases).[2]

Similarly, courts have routinely concluded that where a named plaintiff satisfies the procedural requirements to filing suit, such as by exhausting pre-suit administrative procedures, that plaintiff may represent a class of all similarly injured class members even if unnamed class members did not satisfy the procedural prerequisites. *See, e.g., Albemarle Paper Co. v. Moody*, 422 U.S. 405, 414 n.8 (1975) (named plaintiff who exhausted administrative procedures under Title VII may seek relief on behalf of unnamed class members who have not exhausted).[3]

---

[2] *See also Aliano v. Quaker Oats Co*., 2017 WL 56638, at \*4 (N.D. Ill. Jan. 4, 2017); *Chernus v. Logitech, Inc*., 2018 WL 1981481, at \*3 (D.N.J. Apr. 27, 2018); *Calagaz v. Calhoon*, 309 F.2d 248, 253-54 (5th Cir. 1962); *Appleton Elec. Co. v. Adv.-United Expressways*, 494 F.2d 126, 140 (7th Cir. 1974); 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1757 (3d ed.) ("general rule is that only the residence of the named parties is relevant for determining whether venue is proper" and "intervening and absent class members need not independently satisfy the applicable venue provision"); 2 Alba Conte, et al., Newberg on Class Actions § 6:36 (5th ed.) ("class actions will focus on the residences or events of the ... class representatives, not those of all of the class members").

[3] *See also Lewis v. Washington*, 265 F.Supp.2d 939, 942 (N.D. Ill. 2003) (reaching same conclusion with respect to Prison Litigation Reform Act's exhaustion requirement). In reaching the same conclusion in the ERISA context, the Seventh Circuit emphasized the "arbitral-like" nature of the administrative procedures at issue and noted that although these procedures were designed to "minimiz[e] the number of frivolous lawsuits, promot[e] non-adversarial dispute resolution, and decreas[e] the cost and time necessary for claim settlement," requiring every absent class member to satisfy these requirements "would merely produce an avalanche of duplicative proceedings and accidental forfeitures, and so is not required." *In re Household Intl. Tax Reduction Plan*, 441 F.3d 500, 501 (7th Cir. 2006).

## II.      Plaintiffs Satisfy the Commonality or Typicality Requirements

BKC's argument here, and throughout its opposition, is that there are hundreds of different photographs of the menu items throughout the United States and Plaintiffs cannot show which photographs were relied upon by them or the millions of class members. However, BKC has not provided any evidence to show that there were hundreds of different photographs of the Whopper®, Whopper® Jr., Double Whopper®, Whopper® Melt, or Big King™ (the "Menu Items").

BKC also refuses to produce any documents or information such that Plaintiffs can show what photographs were in place on the menu ordering boards at the various Burger King locations throughout the United States. Surely, BKC has internal communication and policies such that it can be determined what photographs were in place on the menu boards at its store locations, but it refuses to produce this information. Plaintiffs have requested a hearing in an effort to compel the production of among other things, "information sufficient to show where and when the advertisements at issue were approved and distributed to Burger King locations for placement, and when the advertisements were placed on Burger King's website."

When Plaintiffs filed a motion requesting that the Court extend the time for Plaintiffs to file their motion for class certification, BKC objected to Plaintiffs' request because "[Plaintiffs']…complaint asserts an incorrect belief that BKC used larger beef patties in its advertising photographs than it actually uses on its Whopper® and other popular hamburgers" and that "Burger King, however, requires its advertising agency to source all the patties and buns it intends to use in photographs from the same suppliers that Burger King® restaurants use when preparing sandwiches for guests." *See* Defendant Burger King Corporation's Opposition To

Plaintiffs' Motion To Extend Deadlines [ECF No. 37]. BKC also makes this very same argument here in opposing Plaintiff's motion to certify the class. However, the evidence cited in Plaintiffs' First Amended Class Action Complaint (the "Complaint") visually shows that the beef patties in the advertisements for the Menu Items are materially larger than the beef patties that customers receive. Complaint at ¶ 10 [ECF No. 18]. Further, this is a merit-based argument which is not appropriate here but in a motion for summary judgment. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

BKC should not be able to argue that the lack of the information that it refuses to produce should be reason why the class should not be certified, and the Court should not consider BKC's unsupported claim that there are hundreds of different photographs for the Menu Items.

Even if the Court were to consider BKC's argument, Plaintiff has shown sufficient evidence at this stage to indicate that the alleged overstated photographs contained in Plaintiffs' Complaint were part of uniform marketing campaign across all of BKC's restaurant locations throughout the United States. For example, Plaintiffs has cited recent evidence from various food reviewers, including an expert food reviewer, who were disappointed with BKC's Menu Items when compared to the advertisements. Complaint at ¶¶ 13-19. Plaintiffs have also cited evidence from various customers that have recently complained about BKC's advertising for the Menu Items. Complaint at ¶ 21.

Plaintiffs have cited a manager from a BKC store that admitted that the advertisements for the Whopper were materially overstated. *See* https://youtu.be/HFMQ3uXEpIw?t=112 and Plaintiffs' Opposition to BKC's Motion to Dismiss ("*Plaintiffs' Opp.*") [ECF No. 24] at 13. Nearly every Plaintiff has stated that they viewed BKC's store menu ordering board before ordering their Menu Item. *See* Exhibit A to the Declaration of Jeffrey Jacobson and responses to Interrogatory

No. 4 [ECF No. 49]. Each of the Plaintiffs have stated in the Complaint that they "expected the burger that…[they]…purchased to be similar in size to the picture of the burger in Burger King's advertisements and on Burger King's store menu. However, the size of the burger…was much smaller than advertised…." Complaint at ¶¶ 32-51. Plaintiffs have also alleged that the picture of the Whopper on BKC's website is the same as the pictures on the store ordering boards. Complaint at ¶ 4. Plaintiffs have cited an employee that worked for BKC that shows a picture of him preparing the Whopper, and which shows a materially smaller beef patty than advertised. *See* https://www.youtube.com/shorts/4zVLikXQVQs and *Plaintiffs' Opp*. at 13. Plaintiffs have cited an article from Insider.com that shows that the Whopper that customers receive is materially smaller than the Whopper contained in BKC's advertisement. Complaint at ¶ 5.

In addition, attached to the *Kelly Decl*. are numerous screenshots showing the same exact photographs of the Menu Items on BKC's website on the websites for Uber Eats, Postmates, Grubhub, Seamless, and DoorDash, and several Burger King store menu ordering boards. *See* Exhibits 2-11. to the *Kelly Decl..* Based on the evidence, a jury can find that BKC's advertisements were uniform across all of BKC's store menu ordering boards.

BKC claims that Plaintiffs' Complaint alleges that BKC's food photos misled consumers with regard to only the "beef patty" and not the amount of ingredients. *See* Burger King Corporation's Memorandum Of Law In Opposition To Plaintiffs' Motion For Class Certification (the "BKC Opp.") [ECF No. 48], at 9 n.4. However, that is not accurate. Plaintiffs have alleged in their Complaint that "Plaintiffs bring this action against defendant Burger King Corporation…on behalf of themselves and all other similarly situated individuals who purchased a Burger King menu item based on false and misleading advertising concerning the size and/or the amount of ingredients contained in said menu item." Complaint at ¶ 1. Plaintiffs also alleged that

"Burger King advertises its burgers as large burgers compared to competitors and containing oversized meat patties and ingredients that overflow over the bun to make it appear that the burgers are approximately 35% larger in size, and contain more than double the meat, than the actual burger" and "[a]lthough the size of the Whopper and the beef patty increased materially in Burger King's advertisements [in September 2017], the amount of beef or ingredients contained in the actual Whopper that customers receive did not increase." Complaint at ¶¶ 3, 9.[4]

### III.   Common Questions of Fact Predominate

BKC's argument here again relies on its unsupported claim that there are hundreds of different photographs of the Menu Items throughout the United States and Plaintiffs cannot show which photographs were relied upon by them or the millions of class members. BKC also argues that "[a]s applied to Plaintiffs' claims, FDUTPA's causation and damages requirements mean all putative class members must prove individually that they bought hamburgers from Burger King because they saw a photo of the burger before they ordered it and were reasonably misled by the picture into ordering the burger or paying more for it than they would have otherwise." BKC Opp. at 11.

As discussed above, Plaintiffs have demonstrated that a jury can find that BKC's photographs of the Menu Items are uniform. Moreover, the Eleventh Circuit has made clear that causation under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") is based on an objective standard requiring no individualized proof. *Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1282-83 (11th Cir. 2011) ("[R]ecovery under the FDUTPA does not hinge on whether a particular plaintiff actually relied on [defendant's] claims…rather, whether that allegedly

---

[4] Plaintiffs have estimated that Burger King began to implement the advertisements at issue in September 2017, based on the insertion of the new and allegedly overstated photograph of the Whopper on BKC's website around September 2017, which was determined using The Internet Archive located at https://archive.org/.

deceptive conduct would deceive an objective reasonable consumer [is a] common issue[] for all the putative class members, amenable to classwide proof"); *Cox v. Porsche Fin. Servs. Inc.*, 330 F.R.D. 322, 334 (S.D. Fla. 2019) ("For causation, a plaintiff 'need not show actual reliance on the representation or omission at issue,' because 'the mental state of each class member is irrelevant.'") (quoting *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016)). Accordingly, the mental state of each class member is irrelevant.

In addition, the proposed class definition is not overbroad because most, if not all, of the proposed class members likely viewed the uniform photo of the Menu Item prior to making their purchase. Here, like most fast-food restaurants, whether the purchase was made in store, in the drive-thru, on BKC's website or mobile application or through a delivery service such as Uber Eats, Seamless, or Doorsdash, a uniform photograph of the Menu Item is prominently displayed to the consumer. *See Carriuolo*, 823 F. 3d at 986 (affirming district court's certification of a FDUTPA class because every class member purchased or leased the same model representing the same alleged misleading information and finding "it does not matter that there may have been differences among the class members' subjective reliance").

Although some class members and some plaintiffs are repeat guests who regularly purchase menu items from Burger King, a customer can still be damaged by the purchase of a Menu Item. For example, the expert food reviewer, John Jurasek, cited in Plaintiffs' Complaint, regularly purchases menu items from Burger King and various other fast-food restaurants as shown by the videos on his YouTube channel and was still disappointed and surprised by the size of the Menu Items when compared to BKC's advertisements. Complaint at ¶¶ 13-15. If a person highly experienced in reviewing fast-food can be deceived, so can an objective reasonable consumer.

Plaintiffs are not arguing that they did not enjoy the taste of the Menu Items at issue, it is only that

BKC materially misleads consumers concerning the current size of the Menu Items at issue.

### IV.    Plaintiffs Can Apply FDUTPA to the Claims of a Nationwide Class

FDUTPA is not limited to Florida residents. *See Akzo Nobel Coatings, Inc. v. Auto Paint*

*& Supply of Lakeland, Inc.*, 2011 WL 5597364 (M.D. Fla. Nov. 17, 2011) (quoting M*illennium*

*Commc'ns & Fulfillment, Inc. v. Office of the Attorney Gen.*, 761 So. 2d 1256, 1261-62 (Fla. Dist.

Ct. App. 2000)) ("Conspicuously absent [from the statute] . . . is any language which purports to

confine the provisions of FDUTPA or limit [it] to commercial transactions involving only Florida

residents."). BKC's concern that certification would require application of other states' consumer

protection laws is misplaced because FDUPTA can govern them all.

### V.    The Court Should Certify a Multi-State Breach of Contract and Unjust Enrichment Class

Defendants' contention that this class action necessitates the review of numerous state's

laws and regulations and is unmanageable is misplaced. This class action only arguably implicates

differing state laws as to Defendant's affirmative defenses. Purported differences in affirmative

defenses are not an appropriate basis to deny certification. *See Tyson Foods*. In addition, even in

the unlikely event that Defendants' individual state law defenses were applicable and could be

raised, the Court's review would be limited to at most thirteen states and would be a review of a

few narrow issues. As such, this Court should certify this action as a whole and then wait to rule

on such individual state law issues as an affirmative defense, should they even arise, on a

subsequent motion to decertify.[5] At that point, the Court will have the benefit of a full discovery

record with testimony and evidence on how such alleged state law issues would affect the class

---

[5] This Court also has discretion to amend the class definition at any point, including after trial. *See* Fed. R. Civ. P. 23(c)(1)(C).

members who made purchases outside of Florida. As the Supreme Court articulated in *Tyson Foods*, any individual affirmative defense unique to a class member may be tried separately without denying class certification. *See Tyson Foods, Inc.*, 136 S.Ct. at 1045 (2016).

## VI.   Plaintiffs' Claims Do Not Fail Rule 23(b)(3)'s Superiority Test

Defendant does not dispute that class member data is available from BKC and third-party food delivery services and for this reason alone, the Court should find that the class is administratively ascertainable.

Defendant's citation to *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 687 (S.D. Fla. 2014), is misplaced. In *Randolph*, there were at least nine different Crisco oils on the market, only four of which were the subject of that case. *Id.* at 687. Beyond that, even among those four oils, the allegedly deceptive label being challenged "was not placed on all four oils uniformly throughout the class period." *Id*. The court concluded that "the likelihood that an individual would recall not only which specific kind of oil, but also, when that oil was purchased, complicates identification of the putative class." *Id*. Here, the misleading advertisements and photographs were uniform for each of the Menu Items and there is no indication that a consumer would not recall the specific BKC menu item that was purchased or the approximate time frame.[6]

### CONCLUSION

For the reasons stated above and in Plaintiffs' opening brief, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Class Certification.

Date: January 4, 2023

Respectfully submitted,

*/s/ Anthony J. Russo*

---

[6] As noted in the concurring opinion in *Karhu v. Vital Pharmaceuticals, Inc.*, 621 F. App'x 945, 948 (11th Cir. 2015), the Eleventh Circuit has easily approved the certification of a class of small value claims "despite the 'likely difficulties' of identifying those consumers." (internal citation omitted).

Anthony J. Russo, Jr., P.A.
d/b/a The Russo Firm
301 West Atlantic Avenue, Suite 0-2
Delray Beach, FL 33444
T: 844-847-8300
E: anthony@therussofirm.com

Mark Anthony Panzavecchia
Panzavecchia & Associates, PLLC
1000 Franklin Ave., Suite 204
Garden City, NY 11530
T: 516-965-2854
E: mark@panzavecchialaw.com

James C. Kelly (admitted *pro hac vice*)
The Law Office of James C. Kelly
244 5th Avenue, Suite K-278
New York, New York 10001
T: 212-920-5042
E: jkelly@jckellylaw.com

*Co-counsel for Plaintiffs*