**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| Walter Coleman, Marco DiLeonardo, Matthew Fox, Madelyn Salzman, Richard Moore, William Malfese, Andrew Lingoes, Chris Sours, Victor Castillo, Dana Dillon, Michael Mrofchak, John Passarella, Jared Drucker, Jesus Mendez, Angela Runner, Carl Anello, Sha Badgett, Sybil Peachlum, and Summer Adamski, on behalf of themselves and all others similarly situated, | **Case No.: 1:22-cv-20925-RKA** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs,

vs.

Burger King Corporation,

Defendant.

---

**SECOND AMENDED CLASS ACTION COMPLAINT**

Plaintiffs Walter Coleman, Marco DiLeonardo, Matthew Fox, Madelyn Salzman, Richard Moore, William Malfese, Andrew Lingoes, Chris Sours, Victor Castillo, Dana Dillon, Michael Mrofchak, John Passarella, Jared Drucker, Jesus Mendez, Angela Runner, Carl Anello, Sha Badgett, Sybil Peachlum, and Summer Adamski (referred herein as "Plaintiffs"), by and through their undersigned counsel, upon personal knowledge as to themselves and upon information and belief as to all other matters, allege as follows:

1.      Plaintiffs bring this action against defendant Burger King Corporation (referred to herein as "Burger King" or "Defendant"), on behalf of themselves and all other similarly situated

1

individuals who purchased a Burger King menu item based on false and misleading advertising concerning the size and/or the amount of ingredients contained in said menu item.

<u>**FACTUAL ALLEGATIONS**</u>

2.      This is a class action against Burger King for overstating the size of certain menu items.

3.      Burger King advertises its burgers as large burgers compared to competitors and containing oversized meat patties and ingredients that overflow over the bun to make it appear that the burgers are approximately 35% larger in size, and contain more than double the meat, than the actual burger.

4.      For example, Burger King currently represents that Burger King's Whopper looks as follows on its website and store menu ordering boards:



*See* https://www.bk.com/menu/picker-picker_5520.

5.     However, Burger King's Whopper burger actually looks as follows:



*See* https://www.insider.com/best-and-worst-burgers-at-burger-king-ranked#double-cheeseburger-199-4.

6.     Burger King began to materially overstate the size of its burgers in its advertisements in September 2017.

7.     Prior to Burger King's introduction of overstated burger photos, Burger King more fairly advertised the size of the Whopper on its website and store menus as follows:



8.      A side-by-side comparison of Burger King's former Whopper advertisement to the current Whopper advertisement shows that the burger increased in size by approximately 35% and the amount of beef increased by more than 100%.

**FORMER ADVERTISEMENT**                **CURRENT ADVERTISEMENT**




9.      Although the size of the Whopper and the beef patty increased materially in Burger King's advertisements, the amount of beef or ingredients contained in the actual Whopper that customers receive did not increase.

10.     A side-by-side comparison of the Whopper that customers actually receive and Burger King's current Whopper advertisement is as follows:

**ACTUAL WHOPPER**                              **CURRENT ADVERTISEMENT**

 

11.     Burger King materially overstates the size of nearly every menu item in its current advertisements, including the Impossible Whopper, Big King, Single Quarter Pound King, Bacon King, Double Whopper, Triple Whopper With Cheese, Whopper Jr., Bacon Double Cheeseburger, Double Cheeseburger, Bacon Cheeseburger, Cheeseburger, Hamburger, Whopper Melt, Bacon Whopper Melt, Spicy Whopper Melt, Breakfast Bacon King, Fully Loaded Croisann'Wich, Double Sausage, and the Egg, & Cheese Croissan'Wich (each of these items are referred to at times herein as an "Overstated Menu Item").

12.     For example, the current advertisement for Burger King's Big King burger and the Big King burger actually received by customers is as follows:

**ACTUAL BIG KING**                              **CURRENT ADVERTISEMENT**

  

13.     Expert fast-food critic, John Jurasek, an American YouTube personality, food critic and radio host, that has been featured by several media outlets, including CNN Money, New York Magazine, and Forbes, has recently criticized Burger King for overstating the size of its burgers.

14.     Specifically, Mr. Jurasek stated in a review of Burger King's Big King burger, that "the picture [in Burger King's advertisements] makes you think that this thing is like, you know, two pounds or something, that it's going to be this massive, massive, sandwich…[but]…it's not that big. For six bucks, you know, the size is a little disappointing…." *See* https://www.youtube.com/watch?v=HqMWcMei1bg&t=248s.

15.     Mr. Jurasek also stated, in a review of Burger King's Whopper Melt sandwich, that "I feel like this is kind of a recurring trend….I always feel like the picture [in Burger King's

advertisements] always makes it seem way bigger than what it really is.  I look at this and, I don't know, it's just the picture makes it seem bigger…." *See* https://youtu.be/-1Rnk8BC4oo?t=167.

16.     Another food reviewer, with a channel named SomethingNew, on YouTube, compared the Big King to Burger King's advertisement and stated "this Big King is like the big jester, this ain't the Big King Burger King…."  *See* https://youtu.be/IpHGmoWJs7s?t=146.

17.     A food reviewer, with a channel named Let Jay Try It, on Youtube, stated "I'm still disappointed on how small it [the Big King] is….To me, it's not worth the price."  *See* https://youtu.be/uxqnIYTOmZk?t=265.

18.     RDR Food Reviews, another food reviewer on YouTube, stated, in a review of Burger King's Whopper Melt, "it's kind of another one of them deals where when you see the promotion, you're just like, oh my god, that looks sexy good, but when you get it, you get fairly, kind of disappointed."  *See* https://youtu.be/DuqwuP9NFkE?t=317.

19.     Another food reviewer on YouTube, RobbieP2 Vlogs, in a review of the Big King burger, stated "come on BK, in reality, this is just, nothing but, a plain little double cheeseburger dressed with a few toppings….thought you were the King but right now you are nothing but a prince, heck, you're probably not even court jester, with this tiny thing."  *See* https://youtu.be/a0MDmGsQc6U?t=117.

20.     A recent article published on March 14, 2022, by Eat This, Not That!, titled "Burger King's Newest Sandwiches Are Making Customers Feel Cheated", cited numerous complaints by Burger King customers who felt cheated by the size of Burger King's Whopper Melts.  *See* https://www.eatthis.com/news-burger-kings-newest-sandwiches-are-making-customers-feel-cheated/.

21. Several consumers posted complaints on Twitter. Some examples include the following:



Do not order the Whopper Melt. Somehow @burgerking managed to trick customers into ordering a smaller "Whopper" for $5 on literal pieces of bread.

So disappointing. The bread wasn't even toasted and it's tiny AF. Their pictures advertising it are highly misleading.

3:13 AM · Mar 14, 2022 · Twitter for Android

3 Likes



Never been so disappointed upon receiving and unwrapping my whopper melt. So those are my pics but @BurgerKing WHAT IS THIS ?!?!?



1:00 PM · Mar 12, 2022 · Twitter for iPhone

5 Likes


**Colin J. McMahon**
@cj_mcmahon

Replying to @skaterjo3 and @BurgerKing

So disappointing.


**Colin J. McMahon** @cj_mcmahon · Mar 14
Am I a joke to you, @BurgerKing?

Spicy Whopper Melt
593 Cal

1:04 AM · Mar 15, 2022 · Twitter for iPhone


**Space Monkey**
@beezeedesigner

Hey @BurgerKing. I order a "Big" King, and get this?
Now I'm reading articles about how your new Whopper
Melts are tiny too. Wtf is going on? I'll come back when
you stop scamming us. I used to be a 2 time a weeker!



5:37 PM · Mar 17, 2022 · Twitter Web App

9



22.     This is not the first time that Burger King has materially overstated the size of its burgers in advertisements.

23.     Approximately 12 years ago, Burger King was ordered to stop advertising overstated burgers by the Advertising Standards Authority ("ASA"), the United Kingdom's regulator of advertising.

24.     "The Advertising Standards Authority said it bought three burgers and found their thickness and the overall height was 'considerably less' than in the ad….The Advertising

Standards Authority (ASA) said: 'We also examined the size of the burgers in the hands of an average-sized man and considered that they did not fill the hands to the same extent as the burger featured in the advert'….'We concluded that the visuals in the advert were likely to mislead viewers as to the size and composition of the product.'"  *See* https://www.bbc.com/news/uk-10699456.

25.     Burger King's advertisements for its burger and menu items are unfair and financially damaging consumers as they are receiving food that is much lower in value than what was promised.

26.     Burger King's actions are especially concerning now that inflation, food, and meat prices are very high and many consumers, especially lower income consumers, are struggling financially.

27.     Burger King's promise to consumers of a large portion of food with their purchase are also causing consumers to come to, or order from, Burger King and make purchases that they would not have otherwise made.

28.     Burger King is also unfairly competing with burger chains that more fairly advertise the size of their burger and menu items.

29.     Burger King promises large portions of food to steer consumers to Burger King for their meals and away from competitors that more fairly advertise the size of their burgers and menu items, unfairly diverting millions of dollars in sales that would have gone to competitors.

30.     For example, the following consumer posted on Twitter that he was disappointed with the size of the Big King and should have went to Wendys.



**Leo McIllaney**
@LMcillaney                                        ...

@BurgerKing so this is the BIG king? Looks very small,
the McDouble I had from @McDonalds yesterday was
bigger. Should have went to @Wendys



2:46 AM · Mar 6, 2022 · Twitter for iPhone

**1** Retweet   **1** Like

31.     Plaintiffs, on behalf of themselves and all others similarly-situated, seek to end

Burger King's unfair and materially misleading advertising and request the following: 1) monetary

damages fully compensating all individuals who were deceived by Defendant as a result of

purchasing Defendant's Overstated Menu Items; 2) injunctive relief requiring Defendant to

provide corrected advertising and/or to discontinue the Overstated Menu Items; and 3) such other

relief as the Court deems necessary and appropriate.

## THE PARTIES

32.     Plaintiff Walter Coleman is a resident of the state of Florida.  During the Class Period (defined below), Mr. Coleman purchased a Whopper and a Big King at a Burger King store located in the state of Florida.  Mr. Coleman expected the burgers that he purchased to be similar in size to the pictures of the burgers in Burger King's advertisements and on Burger King's store menu ordering board.  However, the size of the burgers that Mr. Coleman received were much smaller than advertised and he was financially damaged as a result.  If Mr. Coleman knew that said burgers were much smaller than advertised, he would not have purchased the burgers.

33.     Plaintiff Marco DiLeonardo is a resident of the state of New York.  During the Class Period (defined below), Mr. DiLeonardo purchased a Whopper, a Big King, and a Whopper Melt at a Burger King store located in the state of New York.  Mr. DeLeonardo expected the burgers that he purchased to be similar in size to the pictures of the burgers in Burger King's advertisements and on Burger King's store menu ordering board.  However, the size of the burgers that Mr. DiLeonardo received were much smaller than advertised and he was financially damaged as a result.  If Mr. DiLeonardo knew that said burgers were much smaller than advertised, he would not have purchased the burgers.

34.     Plaintiff Matthew Fox is a resident of the state of New York.  During the Class Period (defined below), Mr. Fox purchased a Whopper and a Big King at a Burger King store located in the state of New York.  Mr. Fox expected the burgers that he purchased to be similar in size to the pictures of the burgers in Burger King's advertisements and on Burger King's store menu ordering board.  However, the size of the burgers that Mr. Fox received was much smaller than advertised and he was financially damaged as a result.  If Mr. Fox knew that said burgers were much smaller than advertised, he would not have purchased the burgers.

13

35.      Plaintiff Madelyn Salzman is a resident of the state of New York and a part-year resident of Florida.  During the Class Period (defined below), Ms. Salzman purchased a Big King at a Burger King store located in the state of Florida. Ms. Salzman expected the burger that she purchased to be similar in size to the pictures of the burger in Burger King's advertisements and on Burger King's store menu ordering board.  However, the size of the burger that Ms. Salzman received was much smaller than advertised and she was financially damaged as a result.

36.      Plaintiff Richard Moore is a resident of the state of Florida.  During the Class Period (defined below), Mr. Moore purchased a Double Whopper & Whopper Melt at a Burger King store located in the state of Florida.  Mr. Moore expected the burgers that he purchased to be similar in size to the pictures of the burgers in Burger King's advertisements and on Burger King's store menu ordering board.  However, the size of the burgers that Mr. Moore received was much smaller than advertised and he was financially damaged as a result.  If Mr. Moore knew that said burgers were much smaller than advertised, he would not have purchased the burgers.

37.      Plaintiff William Malfese is a resident of the state of Illinois.  During the Class Period (defined below), Mr. Malfese purchased a Whopper at a Burger King store located in the state of Illinois.  Mr. Malfese expected the burger that he purchased to be similar in size to the pictures of the burger in Burger King's advertisements and on Burger King's store menu ordering board.   However, the size of the burger that Mr. Malfese received was much smaller than advertised and he was financially damaged as a result.  If Mr. Malfese knew that said burger was much smaller than advertised, he would not have purchased the burger.

38.      Plaintiff Andrew Lingoes is a resident of the state of Massachusetts.  During the Class Period (defined below), Mr. Lingoes purchased a Whopper Melt at a Burger King store located in the state of Massachusetts.  Mr. Lingoes expected the burger that he purchased to be

similar in size to the pictures of the burger in Burger King's advertisements and on Burger King's store menu ordering board.  However, the size of the burger that Mr. Lingoes received was much smaller than advertised and he was financially damaged as a result.  If Mr. Lingoes knew that said burger was much smaller than advertised, he would not have purchased the burger.

39.    Plaintiff Chris Sours is a resident of the state of Michigan.  During the Class Period (defined below), Mr. Sours purchased a Whopper at a Burger King store located in the state of Michigan.  Mr. Sours expected the burger that he purchased to be similar in size to the pictures of the burger in Burger King's advertisements and on Burger King's store menu ordering board.  However, the size of the burger that Mr. Sours received was much smaller than advertised and he was financially damaged as a result.  If Mr. Sours knew that said burger was much smaller than advertised, he would not have purchased the burger.

40.    Plaintiff Victor Castillo is a resident of the state of California.  During the Class Period (defined below), Mr. Castillo purchased a Whopper, a Whopper Jr., and a Big King at a Burger King store located in the state of California.  Mr. Castillo expected the burgers that he purchased to be similar in size to the pictures of the burgers in Burger King's advertisements and on Burger King's store menu ordering board.  However, the size of the burgers that Mr. Castillo received were much smaller than advertised and he was financially damaged as a result.  If Mr. Castillo knew that said burgers were much smaller than advertised, he would not have purchased the burgers.

41.    Plaintiff Dana Dillon is a resident of the state of Connecticut.  During the Class Period (defined below), Ms. Dillon purchased a Whopper at a Burger King store located in the state of Connecticut.  Ms. Dillon expected the burgers that she purchased to be similar in size to the pictures of the burger in Burger King's advertisements and on Burger King's store menu

ordering board.  However, the size of the burger that Ms. Dillon received was much smaller than advertised and she was financially damaged as a result.  If Ms. Dillon knew that said burger was much smaller than advertised, she would not have purchased the burger.

42.     Plaintiff Michael Mrofchak is a resident of the state of Ohio.  During the Class Period (defined below), Mr. Mrofchak purchased a Whopper and a Whopper Jr. at a Burger King store located in the state of Ohio.  Mr. Mrofchak expected the burgers that he purchased to be similar in size to the pictures of the burgers in Burger King's advertisements and on Burger King's store menu ordering board.  However, the size of the burgers that Mr. Mrofchak received were much smaller than advertised and he was financially damaged as a result.  If Mr. Mrofchak knew that said burgers were much smaller than advertised, he would not have purchased the burgers.

43.     Plaintiff John Passarella is a resident of the state of New Jersey.  During the Class Period (defined below), Mr. Passarella purchased a Whopper at a Burger King store located in the state of New Jersey.  Mr. Passarella expected the burger that he purchased to be similar in size to the pictures of the burger in Burger King's advertisements and on Burger King's store menu ordering board.  However, the size of the burger that Mr. Passarella received was much smaller than advertised and he was financially damaged as a result.  If Mr. Passarella knew that said burger was much smaller than advertised, he would not have purchased the burger.

44.     Plaintiff Jared Drucker is a resident of the state of Florida.  During the Class Period (defined below), Mr. Drucker purchased a Whopper at a Burger King store located in the state of Florida.  Mr. Drucker expected the burger that he purchased to be similar in size to the pictures of the burger in Burger King's advertisements and on Burger King's store menu ordering board. However, the size of the burger that Mr. Drucker received was much smaller than advertised and

he was financially damaged as a result.  If Mr. Drucker knew that said burger was much smaller than advertised, he would not have purchased the burger.

45.     Plaintiff Jesus Mendez is a resident of the state of California.  During the Class Period (defined below), Mr. Mendez purchased a Whopper at a Burger King store located in the state of California.  Mr. Mendez expected the burger that he purchased to be similar in size to the pictures of the burger in Burger King's advertisements and on Burger King's store menu ordering board.  However, the size of the burger that Mr. Mendez received was much smaller than advertised and he was financially damaged as a result.  If Mr. Mendez knew that said burger was much smaller than advertised, he would not have purchased the burger.

46.     Plaintiff Angela Runner is a resident of the state of Kentucky.  During the Class Period (defined below), Ms. Runner purchased a Whopper at a Burger King store located in the state of Kentucky.  Ms. Runner expected the burger that she purchased to be similar in size to the pictures of the burger in Burger King's advertisements and on Burger King's store menu ordering board.  However, the size of the burger that Ms. Runner received was much smaller than advertised and she was financially damaged as a result.  If Ms. Runner knew that said burger was much smaller than advertised, she would not have purchased the burger.

47.     Plaintiff Carl Anello is a resident of the state of Florida.  During the Class Period (defined below), Mr. Anello purchased a Whopper and a Whopper Jr. at a Burger King store located in the state of Florida.  Mr. Anello expected the burgers that he purchased to be similar in size to the pictures of the burgers in Burger King's advertisements and on Burger King's store menu ordering board.  However, the size of the burgers that Mr. Anello received were much smaller than advertised and he was financially damaged as a result.  If Mr. Anello knew that said burgers were much smaller than advertised, he would not have purchased the burgers.

17

48.     Plaintiff Sha Badgett is a resident of the state of Mississippi.  During the Class Period (defined below), Mr. Badgett purchased several Whopper Melts at a Burger King store located in the state of Mississippi.  Mr. Badgett expected the burgers that he purchased to be similar in size to the pictures of the burgers in Burger King's advertisements and on Burger King's store menu ordering board.  However, the size of the burgers that Mr. Badgett received were much smaller than advertised and he was financially damaged as a result.  If Mr. Badgett knew that said burgers were much smaller than advertised, he would not have purchased the burgers.

49.     Plaintiff Sybil Peachlum is a resident of the state of Pennsylvania.  During the Class Period (defined below), Ms. Peachlum purchased a Whopper at a Burger King store located in the state of Pennsylvania.  Ms. Peachlum expected the burger that she purchased to be similar in size to the picture of the burger in Burger King's advertisements and on Burger King's store menu ordering board.  However, the size of the burger that Ms. Peachlum received was much smaller than advertised and she was financially damaged as a result.  If Ms. Peachlum knew that said burger was much smaller than advertised, she would not have purchased the burger.

50.     Plaintiff Summer Adamski is a resident of the state of Arizona.  During the Class Period (defined below), Ms. Adamski purchased a Whopper at a Burger King store located in the state of Arizona.  Ms. Adamski expected the burger that she purchased to be similar in size to the picture of the burger in Burger King's advertisements and on Burger King's store menu ordering board.  However, the size of the burger that Ms. Adamski received was much smaller than advertised and she was financially damaged as a result.  If Ms. Adamski knew that said burger was much smaller than advertised, she would not have purchased the burger.

51.     Defendant Burger King is a Florida corporation with its headquarters and principal place of business located in Miami, Florida.

## JURISDICTION AND VENUE

52.     This Court has original diversity jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA").  Plaintiffs are citizens of many different states, and Defendant is a citizen of the State of Florida and is headquartered with its principal place of business in the state of Florida.  The matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and this is a class action in which the number of members of the proposed class is not less than 100.

53.     In addition, this Court has diversity jurisdiction over Plaintiffs' state law claims pursuant to 28 U. S. C. § 1332(a).  The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and certain members of the proposed class are citizens of states different from the state in which Defendant is a citizen.

54.     Venue is proper pursuant to 28 U.S.C. § 1391.  A substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district. Further, Defendant resides in this judicial district for purposes of § 1391.  Also, Defendant has used the laws within, and has done substantial business in, this judicial district in that it has promoted, marketed, distributed, and sold the products at issue in this judicial district.  Finally, there is personal jurisdiction over Defendant in this judicial district.

## CLASS ACTION ALLEGATIONS

55.     Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) and (b)(3) on behalf of the following Nationwide Class for breach of contract and unjust enrichment:

> All persons or entities in the United States who purchased an Overstated Menu Item between April 1, 2018, and the date of the final disposition of this action.

56.     Plaintiffs allege statewide class action claims on behalf of sub-classes in the following states: Florida, New York, Illinois, New Jersey, California, Connecticut, Massachusetts, Michigan, Kentucky, Mississippi, Ohio, Pennsylvania, and Arizona. Each of the State Classes is initially defined as:

> All persons or entities who purchased an Overstated Menu Item in the state of _____ (*e.g.*, Florida), between April 1, 2018, and the date of the final disposition of this action.

57.     The proposed Nationwide Class and States Classes and their members are sometimes referred to herein as the "Class" or "Classes".

58.     Plaintiffs reserve the right to amend the definition of the Class if discovery and further investigation reveals that the Class should be expanded or otherwise modified.

59.     Plaintiffs reserve the right to establish sub-classes as appropriate.

60.     This action is brought and properly may be maintained as a class action under the provisions of Federal Rules of Civil Procedure 23(a)(l)-(4) and 23(b)(2) and (b)(3), and satisfies the requirements thereof.

61.     There is a well-defined community of interest among members of the Class, and the disposition of the claims of these members of the Class in a single action will provide substantial benefits to all parties and to the Court.

62.     The members of the Class are so numerous that joinder of all members of the Class is impracticable. At this time, Plaintiffs believe that the Class includes thousands of members.  Therefore, the Class is sufficiently numerous that joinder of all members of the Class in a single action is impracticable under Federal Rule of Civil Procedure Rule 23(a)(l), and the resolution of their claims through the procedure of a class action will be of benefit to the parties and the Court.

63.     Plaintiffs' claims are typical of the claims of the members of the Class whom they seek to represent because Plaintiffs and each member of the Class has been subjected to the same deceptive and improper practices by Defendant and have been damaged in the same manner.

64.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiffs have no interests that are adverse to those of the members of the Class that they seek to represent.  Plaintiffs are committed to the vigorous prosecution of this action and, to that end, Plaintiffs have retained counsel that is competent and experienced in handling complex class action litigation on behalf of consumers.

65.     A class action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this Complaint under Federal Rule of Civil Procedure 23(b)(3) because:

    a.   The expense and burden of individual litigation would not be economically feasible for members of the Class to seek to redress their claims other than through the procedure of a class action.

    b.   If separate actions were brought by individual members of the Class, the resulting multiplicity of lawsuits would cause members to seek to redress their claims other than through the procedure of a class action; and

    c.   Absent a class action, Defendant likely would retain the benefits of their wrongdoing, and there would be a failure of justice.

66.     Common questions of law and fact exist as to the members of the Class, as required by Federal Rule of Civil Procedure 23(a)(2), and predominate over any questions that affect individual members of the Class within the meaning of Federal Rule of Civil Procedure 23(b)(3).

67.     The common questions of fact include, but are not limited to, the following:

a.   Whether the nationwide practice by Defendant of selling falsely advertised menu items violates the applicable consumer protection statutes;

b.   Whether Defendant engaged in unlawful, unfair, misleading, or deceptive business acts or practices;

c.   Whether Defendant engaged in consumer fraud, deceptive trade practices, or other unlawful acts;

d.   Whether Defendant made any negligent misrepresentations;

e.   Whether Defendant was unjustly enriched; and

f.   Whether Plaintiffs and members of the Class are entitled to an award of reasonable attorneys' fees, pre-judgment interest, and costs of this suit.

68.     In the alternative, this action is certifiable under the provisions of Federal Rule of Civil Procedure 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole and necessitating that any such relief be extended to members of the Class on a mandatory, class-wide basis.

69.     Plaintiffs are not aware of any difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

## COUNT 1
### Violation of Florida Deceptive And Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.*

70.     Plaintiffs Walter Coleman, Richard Moore, Jared Drucker, Carl Anello, Madelyn Salzman (the "Florida Plaintiffs") bring this claim on behalf of themselves, and the members of the proposed Florida Sub-Class.

71.     The Florida Plaintiffs and the members of the Florida Sub-Class are "consumers" within the meaning of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat.§ 501.203(7).

72.     Defendant is engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

73.     FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce...." Fla. Stat. § 501.204(1). Defendant participated in unfair and deceptive trade practices that violated the FDUTP A as described herein.

74.     Defendant's Overstated Menu Items are goods within the meaning of FDUTPA.

75.     Defendant's unfair and deceptive practices are likely to mislead— and have misled—reasonable consumers, such as the Florida Plaintiffs and members of the Florida Sub-Class, and therefore, violate § 500.04.

76.     Defendant has violated FDUTPA by engaging in the unfair and deceptive practices described above, which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

77.     Specifically, Defendant marketed and advertised the Overstated Menu Items in store and online in a deceptive, false and misleading manner by using photographs of the Overstated Menu Items that materially inflate the size of the Overstated Menu Items and/or the amount of meat contained therein.

78.     Defendant, directly or through its agents and employees, made false representations, concealments, and nondisclosures to the Florida Plaintiffs and members of the Florida Sub-Class.

79.     The Florida Plaintiffs and numerous other customers purchased an Overstated Menu Item based on Defendant's false and misleading representations.

80.     The Florida Plaintiffs and the members of the Florida Sub-Class have been aggrieved by Defendant's unfair and deceptive practices in violation of FDUTPA, in that they purchased the Overstated Menu Items with the reasonable expectation that the menu items would be similar in size to what Defendant advertised on menu ordering boards.

81.     Reasonable consumers rely on Defendant to honestly market and label menu items in a way that does not deceive reasonable consumers.

82.     Defendant has deceived reasonable consumers, like the Florida Plaintiffs and the members of the Florida Sub-Class, into believing the Overstated Menu Items were something they were not.

83.     Defendant's violations present a continuing risk to the Florida Plaintiffs and the members of the Florida Sub-Class as well as to the general public. Defendant's unlawful acts and practice complained of herein affect the public interest.

84.     The Florida Plaintiffs and the members of the Florida Sub-Class suffered damage and are entitled to injunctive relief.

85.     Pursuant to § 501.211(2) and § 501.2105, the Florida Plaintiff and the members of the Florida Sub-Class make claims for damages, attorney's fees and costs. The damages suffered by the Florida Plaintiffs and the members of the Florida Sub-Class were directly and proximately caused by the deceptive, misleading, and unfair practices of Defendant. Additionally, pursuant to Section 501.211(1), the Florida Plaintiffs and the members of the Florida Sub-Class seek injunctive relief for, *inter alia*, the Court to enjoin Defendant's above-described wrongful acts and practices, and for restitution and disgorgement.

**COUNT 2**
**Violation of New York Deceptive Acts and Practices Act,**
**N.Y. Gen. Bus. Law § 349**

86.     Plaintiffs Marco DiLeonardo and Matthew Fox (the "New York Plaintiffs") bring this claim on behalf of themselves, and the members of the proposed New York Sub-Class.

87.     The New York Plaintiffs and the members of the New York Sub-Class are "persons" within the meaning of New York General Business Law ("New York GBL"), N.Y. Gen. Bus. Law § 349(h).

88.     Defendant is a "corporation" within the meaning of N.Y. Gen. Bus. Law § 349.

89.     The New York GBL makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349. Defendant's conduct directed toward consumers, as described above and below, constitutes "deceptive acts or practices" within the meaning of the New York GBL.

90.     Specifically, Defendant marketed and advertised the Overstated Menu Items in store and online in a deceptive, false and misleading manner by using photographs of the Overstated Menu Items that materially inflate the size of the Overstated Menu Items and/or the amount of meat contained therein.

91.     Defendant, directly or through its agents and employees, made false representations, concealments, and nondisclosures to the New York Plaintiffs and members of the New York Sub-Class.

92.     The New York Plaintiffs and numerous other customers purchased an Overstated Menu Item based on Defendant's false and misleading representations.

93.     The New York Plaintiffs and the members of the New York Sub-Class have been aggrieved by Defendant's unfair and deceptive practices in violation of New York GBL, in that

they purchased the Overstated Menu Items with the reasonable expectation that the menu items would be similar in size to what Defendant advertised on its menu ordering boards.

94.     Reasonable consumers rely on Defendant to honestly market and label menu items in a way that does not deceive reasonable consumers.

95.     Defendant has deceived reasonable consumers, like the New York Plaintiffs and the members of the New York Sub-Class, into believing the Overstated Menu Items were something they were not.

96.     Defendant's violations present a continuing risk to the New York Plaintiffs and the members of the New York Sub-Class as well as to the general public. Defendant's unlawful acts and practice complained of herein affect the public interest.

97.     As a direct and proximate result of Defendant's violations of the New York GBL, the New York Plaintiffs and the members of the New York Sub-Class have suffered injury-in-fact and/or actual damage.

98.     Because Defendant's willful and knowing conduct caused injury, the New York Plaintiffs and the members of the New York Consumer Sub-Class seek recovery of actual damages or $50, whichever is greater, discretionary treble damages up to $1,000, punitive damages, reasonable attorneys' fees and costs, an order enjoining Defendant's deceptive conduct, and any other just and proper relief available under N.Y. Gen. Bus. Law § 349.

**COUNT 3**
**Violations of Cal. Bus. & Prof. Code §§ 17200, et. seq.,**

99.     Plaintiffs Victor Castillo and Jesus Mendez (the "California Plaintiffs") bring this claim on behalf of themselves, and the members of the proposed California Sub-Class.

100.    Cal. Bus. & Prof. Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or

26

misleading advertising...." Defendant engaged in conduct that violated each of this statute's three prongs.

101.    Defendant committed an unlawful business act or practice in violation of § 17200 by the acts and practices set forth in this complaint.

102.    California's Unfair Competition Law, as codified by California Business & Professions Code sections 17200, *et seq*., protects both consumers and competitors by promoting fair competition in commercial markets for goods and services. California's Unfair Competition Law is interpreted broadly and provides a cause of action for any unlawful, unfair, or fraudulent business act or practice. Any unlawful, unfair, or fraudulent business practice that causes injury to consumers falls within the scope of California's Unfair Competition Law.

103.    Defendant's acts and practices, as described herein, constitute unlawful or unfair business practices against the California Plaintiffs and the members of the California Sub-Class in violation of California Business and Professions Code section 17200, *et seq*.

104.    Specifically, Defendant marketed and advertised the Overstated Menu Items in store and online in a deceptive, false and misleading manner by using photographs of the Overstated Menu Items that materially inflate the size of the Overstated Menu Items and/or the amount of meat contained therein.

105.    Defendant, directly or through its agents and employees, made false representations, concealments, and nondisclosures to the California Plaintiffs and the members of the California Sub-Class.

106.    The California Plaintiffs and numerous other customers purchased an Overstated Menu Item based on Defendant's false and misleading representations.

107.     The California Plaintiffs and the members of the California Sub-Class have been aggrieved by Defendant's unfair and deceptive practices in violation of § 17200, in that they purchased the Overstated Menu Items with the reasonable expectation that the menu items would be similar in size to what Defendant advertised on its menu ordering boards.

108.     Reasonable consumers rely on Defendant to honestly market and label menu items in a way that does not deceive reasonable consumers.

109.     Defendant has deceived reasonable consumers, like the California Plaintiffs and the members of the California Sub-Class, into believing the Overstated Menu Items were something they were not.

110.     Defendant's violations present a continuing risk to the California Plaintiffs and the members of the California Sub-Class as well as to the general public. Defendant's unlawful acts and practice complained of herein affect the public interest.

111.     Pursuant to California Business and Professions Code section 17203, the California Plaintiffs and the members of the California Sub-Class are entitled to restitution of all the money paid to Defendant for retaining goods that were due and owing (with interest thereon) and to disgorgement of all Defendant's profits arising out of its unlawful conduct (with interest thereon).

112.     Pursuant to California Code of Civil Procedure section 1021.5, the California Plaintiffs and the members of the California Sub-Class are entitled to recover their reasonable attorney's fees in connection with Defendant's unfair competition claims, the substantial benefit doctrine, and/or the common fund doctrine.

**COUNT 4**
**Violation of the Illinois Consumer Fraud & Deceptive Business Practices Act, 815 Ill.
Comp. Stat. Ann § 505/1 *et seq*.**

113.    Plaintiff William Malfese ("Malfese") brings this claim on behalf of himself, and the members of the proposed Illinois Sub-Class.

114.    Defendants are "persons" as that term is defined in 815 ILCS 505/l(c).

115.    Plaintiff Malfese and the Illinois Consumer Sub-Class are "consumers" as that term is defined in 815 ILCS 505/l(e).

116.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact…in the conduct of trade or commerce...whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

117.    Defendants participated in misleading, false, or deceptive acts that violated the Illinois CFA.

118.    Specifically, Defendant marketed and advertised the Overstated Menu Items in store and online in a deceptive, false and misleading manner by using photographs of the Overstated Menu Items that materially inflate the size of the Overstated Menu Items and/or the amount of meat contained therein.

119.    Defendant, directly or through its agents and employees, made false representations, concealments, and nondisclosures to Plaintiffs and members of the Illinois Sub-Class.

120.    Plaintiff Malfese and numerous other customers purchased an Overstated Menu Item based on Defendant's false and misleading representations.

121.    Plaintiff Malfese and the members of the Illinois Sub-Class have been aggrieved by Defendant's unfair and deceptive practices in violation of the Illinois CFA, in that they purchased the Overstated Menu Items with the reasonable expectation that the menu items would be similar in size to what Defendant advertised on its menu ordering boards.

122.    Reasonable consumers rely on Defendant to honestly market and label menu items in a way that does not deceive reasonable consumers.

123.    Defendant has deceived reasonable consumers, like Plaintiff Malfese and the members of the Illinois Sub-Class, into believing the Overstated Menu Items were something they were not.

124.    Defendant's violations present a continuing risk to Plaintiff Malfese and the members of the Illinois Sub-Class as well as to the general public. Defendant's unlawful acts and practice complained of herein affect the public interest.

125.    As a direct and proximate result of Defendant's violations of the Illinois CFA, Plaintiff Malfese and the members of the Illinois Sub-Class have suffered injury-in-fact and/or actual damage.

126.    Pursuant to 815 ILCS 505/l0a(a), Plaintiff Malfese and the members of the Illinois Sub-Class seek monetary relief against Defendant in the amount of actual damages, as well as punitive damages because Defendant acted with fraud and/or malice and/or was grossly negligent.

127.    Plaintiff Malfese and the members of the Illinois Consumer Sub-Class also seek an order enjoining Defendant's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under 815 ILCS 505/1, *et seq.*.

30

<u>**COUNT 5**</u>
**Violation of the Arizona Consumer Fraud Act,**
**Ariz. Rev. Stat.§§ 44-1521, *et seq.***

128.    Plaintiff Summer Adamski ("Adamski") brings this claim on behalf of herself, and the members of the proposed Arizona Sub-Class.

129.    Plaintiff Adamski, the Arizona Consumer Sub-Class members, and Defendant are "persons" within the meaning of the Arizona Consumer Fraud Act ("Arizona CFA"), Ariz. Rev. Stat.§ 44-1521(6).

130.    The Overstated Menu Items are "merchandise" within the meaning of Ariz. Rev. Stat. § 44-1521(5).

131.    The Arizona CFA provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, ... misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale ... of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." Ariz. Rev. Stat. § 44-1522(A).

132.    Defendants participated in misleading, false, or deceptive acts that violated the Arizona CFA.

133.    Specifically, Defendant marketed and advertised the Overstated Menu Items in store and online in a deceptive, false and misleading manner by using photographs of the Overstated Menu Items that materially inflate the size of the Overstated Menu Items and/or the amount of meat contained therein.

31

134.    Defendant, directly or through its agents and employees, made false representations, concealments, and nondisclosures to Plaintiff Adamski and members of the Arizona Sub-Class.

135.    Plaintiff Adamski and numerous other customers purchased an Overstated Menu Item based on Defendant's false and misleading representations.

136.    Plaintiff Adamski and the members of the Arizona Sub-Class have been aggrieved by Defendant's unfair and deceptive practices in violation of the Arizona CFA, in that they purchased the Overstated Menu Items with the reasonable expectation that the menu items would be similar in size to what Defendant advertised on its menu ordering boards.

137.    Reasonable consumers rely on Defendant to honestly market and label menu items in a way that does not deceive reasonable consumers.

138.    Defendant has deceived reasonable consumers, like Plaintiff Adamksi and the members of the Arizona Sub-Class, into believing the Overstated Menu Items were something they were not.

139.    Defendant's violations present a continuing risk to Plaintiff Adamksi and the members of the Arizona Sub-Class as well as to the general public. Defendant's unlawful acts and practice complained of herein affect the public interest.

140.    As a direct and proximate result of Defendant's violations of the Arizona CFA, Plaintiff Adamski and the members of the Arizona Sub-Class have suffered injury-in-fact and/or actual damage.

141.    Plaintiff Adamski and the members of the Arizona Sub-Class seek monetary relief against Defendant in an amount to be determined at trial.

142.     Plaintiffs and the members of the Arizona Sub-Class also seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

## COUNT 6
### Violation of the Connecticut Unlawful Trade Practices Act,
### Conn. Gen. Stat.§§ 42-ll0A, *et seq.*

143.     Plaintiff Dana Dillon ("Dillon") brings this claim on behalf of herself, and the members of the proposed Connecticut Sub-Class.

144.     The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat.§ 42-110b(a).

145.     Plaintiff Dillon, the Connecticut Sub-Class, and Defendant are "persons" within the meaning of Conn. Gen. Stat. § 42-110a(3). Defendant is in "trade" or "commerce" within the meaning of Conn. Gen. Stat.§ 42-110a(4).

146.     Defendant participated in deceptive trade practices that violated the Connecticut UTPA.

147.     Specifically, Defendant marketed and advertised the Overstated Menu Items in store and online in a deceptive, false and misleading manner by using photographs of the Overstated Menu Items that materially inflate the size of the Overstated Menu Items and/or the amount of meat contained therein.

148.     Defendant, directly or through its agents and employees, made false representations, concealments, and nondisclosures to Plaintiff Dillon and members of the Connecticut Sub-Class.

149.     Plaintiff Dillon and numerous other customers purchased an Overstated Menu Item based on Defendant's false and misleading representations.

150.     Plaintiff Dillon and the members of the Connecticut Sub-Class have been aggrieved by Defendant's unfair and deceptive practices in violation of the Connecticut UTPA, in that they purchased the Overstated Menu Items with the reasonable expectation that the menu items would be similar in size to what Defendant advertised on its menu ordering boards.

151.     Reasonable consumers rely on Defendant to honestly market and label menu items in a way that does not deceive reasonable consumers.

152.     Defendant has deceived reasonable consumers, like Plaintiff Dillon and the members of the Connecticut Sub-Class, into believing the Overstated Menu Items were something they were not.

153.     Defendant's violations present a continuing risk to Plaintiff Dillon and the members of the Connecticut Sub-Class as well as to the general public. Defendant's unlawful acts and practice complained of herein affect the public interest.

154.     As a direct and proximate result of Defendant's violations of the Connecticut UTPA, Plaintiff Dillon and the members of the Connecticut Sub-Class have suffered injury-in-fact and/or actual damages.

155.     Plaintiff Dillon and the members of the Connecticut Sub-Class are entitled to recover their actual damages, punitive damages, and attorneys' fees pursuant to Conn. Gen. Stat. § 42-110g.

## **COUNT 7**
### **Deceptive Acts or Practices Prohibited by Massachusetts Law,**
### **Mass. Gen. Laws Ann. ch. 93A, §§ 1, *et seq.***

156.     Plaintiff Andrew Lingoes ("Lingoes") brings this claim on behalf of himself, and the members of the proposed Massachusetts Sub-Class.

157.     Plaintiff Lingoes, the Massachusetts Sub-Class, and Defendant are "persons" within the meaning of Mass. Gen. Laws ch. 93A, § l(a).

158.     Defendant engaged in "trade" or "commerce" within the meaning of Mass. Gen. Laws 93A, § l(b).

159.     Massachusetts law (the "Massachusetts Act") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2.

160.     Defendant participated in misleading, false, or deceptive acts that violated the Massachusetts Act.

161.     Specifically, Defendant marketed and advertised the Overstated Menu Items in store and online in a deceptive, false and misleading manner by using photographs of the Overstated Menu Items that materially inflate the size of the Overstated Menu Items and/or the amount of meat contained therein.

162.     Defendant, directly or through its agents and employees, made false representations, concealments, and nondisclosures to Plaintiff Lingoes and members of the Massachusetts Sub-Class.

163.     Plaintiff Lingoes and numerous other customers purchased an Overstated Menu Item based on Defendant's false and misleading representations.

164.     Plaintiff Lingoes and the members of the Massachusetts Sub-Class have been aggrieved by Defendant's unfair and deceptive practices in violation of the Massachusetts Act, in

that they purchased the Overstated Menu Items with the reasonable expectation that the menu items would be similar in size to what Defendant advertised on its menu ordering boards.

165.    Reasonable consumers rely on Defendant to honestly market and label menu items in a way that does not deceive reasonable consumers.

166.    Defendant has deceived reasonable consumers, like Plaintiff Lingoes and the members of the Massachusetts Sub-Class, into believing the Overstated Menu Items were something they were not.

167.    Defendant's violations present a continuing risk to Plaintiff Lingoes and the members of the Massachusetts Sub-Class as well as to the general public. Defendant's unlawful acts and practice complained of herein affect the public interest.

168.    As a direct and proximate result of Defendant's violations of the Massachusetts Act, Plaintiff Lingoes and the members of the Massachusetts Sub-Class have suffered injury-in-fact and/or actual damage.

169.    Pursuant to Mass. Gen. Laws ch. 93A, § 9, Plaintiff Lingoes and the members of the Massachusetts Sub-Class seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $25 for Plaintiff Lingoes and each Massachusetts Sub-Class member. Because Defendant's conduct was committed willfully and knowingly, Plaintiff Lingoes is entitled to recover, for him and each Massachusetts Sub-Class member, up to three times actual damages, but no less than two times actual damages.

170.    Plaintiff Lingoes and the members of the Massachusetts Sub-Class also seek an order enjoining Defendant's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Massachusetts Act.

## COUNT 8
### Violation of the Michigan Consumer Protection Act,
### Mich. Comp. Laws § 445.903, et seq.

171.  Plaintiff Chris Sours ("Sours") brings this claim on behalf of himself, and the members of the proposed Michigan Sub-Class.

172.  Plaintiff Sours and the Michigan Sub-Class are "person[s]" within the meaning of the Mich. Comp. Laws § 445.902(1)(d).

173.  At all relevant times hereto, Defendant was a "person" engaged in "trade or commerce'" within the meaning of the Mich. Comp. Laws § 445.902(1)(d) and (g).

174.  The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce...." Mich. Comp. Laws § 445.903(1).

175.  Defendant engaged in unfair, unconscionable, or deceptive methods, acts or practices prohibited by the Michigan CPA.

176.  Specifically, Defendant marketed and advertised the Overstated Menu Items in store and online in a deceptive, false and misleading manner by using photographs of the Overstated Menu Items that materially inflate the size of the Overstated Menu Items and/or the amount of meat contained therein.

177.  Defendant, directly or through its agents and employees, made false representations, concealments, and nondisclosures to Plaintiff Sours and members of the Michigan Sub-Class.

178.  Plaintiff Sours and numerous other customers purchased an Overstated Menu Item based on Defendant's false and misleading representations.

179.    Plaintiff Sours and the members of the Michigan Sub-Class have been aggrieved by Defendant's unfair and deceptive practices in violation of the Michigan CPA, in that they purchased the Overstated Menu Items with the reasonable expectation that the menu items would be similar in size to what Defendant advertised on its menu ordering boards.

180.    Reasonable consumers rely on Defendant to honestly market and label menu items in a way that does not deceive reasonable consumers.

181.    Defendant has deceived reasonable consumers, like Plaintiff Sours and the members of the Michigan Sub-Class, into believing the Overstated Menu Items were something they were not.

182.    Defendant's violations present a continuing risk to Plaintiff Sours and the members of the Michigan Sub-Class as well as to the general public. Defendant's unlawful acts and practice complained of herein affect the public interest.

183.    As a direct and proximate result of Defendant's violations of the Michigan CPA, Plaintiff Sours and the members of the Michigan Sub-Class have suffered injury-in-fact and/or actual damage.

184.    Plaintiff Sours and the members of the Michigan Sub-Class seek injunctive relief to enjoin Defendant from continuing its unfair and deceptive acts; monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for Plaintiff Sours and each Michigan Sub-Class member; reasonable attorneys' fees; and any other just and proper relief available under Mich. Comp. Laws § 445.911.

**COUNT 9**
**Violation of the New Jersey Consumer Fraud Act,**
**N.J. Stat. Ann. §§ 56:8-1,** *et seq.*

185.    Plaintiff John Passarella ("Passarella") brings this claim on behalf of himself, and the members of the proposed New Jersey Sub-Class.

186.    Plaintiff Passarella, the New Jersey Sub-Class, and Defendant are "persons" within the meaning of N.J. Stat. Ann.§ 56:8-l(d).

187.    Defendant engaged in "sales" of "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-l(c), (d).

188.    The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby..." N.J. Stat. Ann. § 56:8-2.

189.    Defendant engaged in unconscionable or deceptive acts or practices that violated the New Jersey CFA.

190.    Specifically, Defendant marketed and advertised the Overstated Menu Items in store and online in a deceptive, false and misleading manner by using photographs of the Overstated Menu Items that materially inflate the size of the Overstated Menu Items and/or the amount of meat contained therein.

191.    Defendant, directly or through its agents and employees, made false representations, concealments, and nondisclosures to Plaintiff Passarella and members of the New Jersey Sub-Class.

192.     Plaintiff Passarella and numerous other customers purchased an Overstated Menu Item based on Defendant's false and misleading representations.

193.     Plaintiff Passarella and the members of the New Jersey Sub-Class have been aggrieved by Defendant's unfair and deceptive practices in violation of the New Jersey CFA, in that they purchased the Overstated Menu Items with the reasonable expectation that the menu items would be similar in size to what Defendant advertised on its menu ordering boards.

194.     Reasonable consumers rely on Defendant to honestly market and label menu items in a way that does not deceive reasonable consumers.

195.     Defendant has deceived reasonable consumers, like Plaintiff Passarella and the members of the New Jersey Sub-Class, into believing the Overstated Menu Items were something they were not.

196.     Defendant's violations present a continuing risk to Plaintiff Passarella and the members of the New Jersey Sub-Class as well as to the general public. Defendant's unlawful acts and practice complained of herein affect the public interest.

197.     As a direct and proximate result of Defendant's violations of the New Jersey CFA, Plaintiff Passarella and the members of the New Jersey Sub-Class have suffered injury-in-fact and/or actual damage.

198.     Plaintiff Passarella and the members of the New Jersey Sub-Class are entitled to recover legal and/or equitable relief including an order enjoining Defendant's unlawful conduct, treble damages, costs and reasonable attorneys' fees pursuant to N.J. Stat. Ann. § 56:8-19, and any other just and appropriate relief.

## COUNT 10
### Violation Of The Kentucky Consumer
### Protection Act KRS 367.110 *et seq.*

199.    Plaintiff Angela Runner ("Runner") brings this claim on behalf of herself, and the members of the proposed Kentucky Sub-Class.

200.    Under the Kentucky Consumer Protection Act, KRS 367.110, *et seq.*, (hereinafter referred to as "KCPA"), Defendant's practices as described above constitute "trade or commerce" within the meaning of KRS 367.170.

201.    KCPA prohibits unfair, false, misleading, unconscionable or deceptive acts.

202.    Defendant's conduct violated the KCPA.

203.    Specifically, Defendant marketed and advertised the Overstated Menu Items in store and online in a deceptive, false and misleading manner by using photographs of the Overstated Menu Items that materially inflate the size of the Overstated Menu Items and/or the amount of meat contained therein.

204.    Defendant, directly or through its agents and employees, made false representations, concealments, and nondisclosures to Plaintiff Runner and members of the Kentucky Sub-Class.

205.    Plaintiff Runner and numerous other customers purchased an Overstated Menu Item based on Defendant's false and misleading representations.

206.    Plaintiff Runner and the members of the Kentucky Sub-Class have been aggrieved by Defendant's unfair and deceptive practices in violation of the KCPA, in that they purchased the Overstated Menu Items with the reasonable expectation that the menu items would be similar in size to what Defendant advertised on its menu ordering boards.

207.    Reasonable consumers rely on Defendant to honestly market and label menu items in a way that does not deceive reasonable consumers.

208.    Defendant has deceived reasonable consumers, like Plaintiff Runner and the members of the Kentucky Sub-Class, into believing the Overstated Menu Items were something they were not.

209.    Defendant's violations present a continuing risk to Plaintiff Runner and the members of the Kentucky Sub-Class as well as to the general public. Defendant's unlawful acts and practice complained of herein affect the public interest.

210.    As a direct and proximate result of Defendant's violations of the KCPA, Plaintiff Runner and the members of the Kentucky Sub-Class have suffered injury-in-fact and/or actual damage.

211.    Plaintiff Runner and the members of the Kentucky Sub-Class are entitled to recover legal and/or equitable relief including an order enjoining Defendant's unlawful conduct, damages, costs, reasonable attorneys' fees, and any other just and appropriate relief.

**COUNT 11**
**Violation of Unfair Trade Practices & Consumer Protection Law**
**73 Pennsylvania Statute §§201-1, *et seq.***

212.    Plaintiff Sybil Peachlum ("Peachlum") brings this claim on behalf of herself, and the members of the proposed Pennsylvania Sub-Class.

213.    This cause of action is brought pursuant to Pennsylvania's Unfair Trade Practices & Consumer Protection Law ("UTPCPL"), Title 73 of Pennsylvania Statute §§201-1, *et seq*.

214.    Defendant's sale of the Overstated Menu Items constitutes "trade" or "commerce" within the meaning of 73 P.S. §201-2(3).

215.    The UTPCPL defines "unfair methods of competition" and "unfair or deceptive acts or practices" to mean advertising goods or services with intent not to sell them as advertised (§201-2(4)(ix)) and engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding (§201-2(4)(xxi)).

42

216.     Defendant violated the UTPCPL. Specifically, Defendant marketed and advertised the Overstated Menu Items in store and online in a deceptive, false and misleading manner by using photographs of the Overstated Menu Items that materially inflate the size of the Overstated Menu Items and/or the amount of meat contained therein.

217.     Defendant, directly or through its agents and employees, made false representations, concealments, and nondisclosures to Plaintiff Peachlum and members of the Pennsylvania Sub-Class.

218.     Plaintiff Peachlum and numerous other customers purchased an Overstated Menu Item based on Defendant's false and misleading representations.

219.     Plaintiff Peachlum and the members of the Pennsylvania Sub-Class have been aggrieved by Defendant's unfair and deceptive practices in violation of the UTPCPL, in that they purchased the Overstated Menu Items with the reasonable expectation that the menu items would be similar in size to what Defendant advertised on its menu ordering boards.

220.     Reasonable consumers rely on Defendant to honestly market and label menu items in a way that does not deceive reasonable consumers.

221.     Defendant has deceived reasonable consumers, like Plaintiff Peachlum and the members of the Pennsylvania Sub-Class, into believing the Overstated Menu Items were something they were not.

222.     Defendant's violations present a continuing risk to Plaintiff Peachlum and the members of the Pennsylvania Sub-Class as well as to the general public. Defendant's unlawful acts and practice complained of herein affect the public interest.

223.     As a direct and proximate result of Defendant's violations of the UTPCPL, Plaintiff Peachlum and the members of the Pennsylvania Sub-Class have suffered injury-in-fact and/or actual damage.

224.     Plaintiff Peachlum and the members of the Pennsylvania Sub-Class are entitled to recover legal and/or equitable relief including an order enjoining Defendant's unlawful conduct, damages, costs, reasonable attorneys' fees, and any other just and appropriate relief.

### COUNT 12
**Breach of Contract**
**On Behalf of the Nationwide Class, or, alternatively,**
**on behalf of the State Sub-Classes**

225.     Plaintiffs incorporate by reference the allegations in every paragraph of this complaint.

226.     Defendant, through its advertising in store and online, offered Overstated Menu Items based on the materially false and misleading advertisements described above.

227.     Plaintiffs and numerous other customers purchased said Overstated Menu Item based on Defendant's representations.

228.     Defendant breached its sales contracts with Plaintiffs and similarly situated customers who purchased an Overstated Menu Item.

229.     Defendant failed to disclose that the Overstated Menu Items were smaller than advertised.

230.     As a result of Defendant's breach of contract, Plaintiffs and similar purchasers of an Overstated Menu Item suffered damages, the exact amount to be determined at trial.

<u>**COUNT 13**</u>
**Negligent Misrepresentation**
**On Behalf of The Florida Sub-Class**

231.    Plaintiffs incorporate by reference the allegations in every paragraph of this complaint.

232.    Defendant, directly or through its agents and employees, made false representations, concealments, and nondisclosures to Plaintiffs and members of the Class.

233.    Defendant, through its advertising in store and online, offered Overstated Menu Items based on the materially false and misleading advertisements described above.

234.    Defendant made and intended the misrepresentations to induce the reliance of Plaintiffs and members of the Class to purchase an Overstated Menu Item.

235.    Plaintiffs and numerous other customers purchased an Overstated Menu Item based on Defendant's representations.

236.    Defendant failed to disclose that the Overstated Menu Items were smaller than advertised.

237.    In making the representations of fact to Plaintiffs and members of the Class described herein, Defendant has failed to fulfill its duty to disclose the material facts set forth above.  The direct and proximate cause of this failure to disclose was Defendant's negligence and carelessness.

238.    Defendant, in making the misrepresentations and omissions, and in doing the acts alleged above, knew or reasonably should have known that the representations were not true.

239.    Plaintiffs and members of the Class reasonably relied upon these false representations and nondisclosures by Defendant when purchasing an Overstated Menu Item, which reliance was justified and reasonably foreseeable.

240.     As a result of Defendant's wrongful conduct, Plaintiffs and members of the Class have suffered damages, the exact amount to be determined at trial.

**COUNT 14**
**Unjust Enrichment**
**On Behalf of the Nationwide Class, or, alternatively,**
**on behalf of the State Sub-Classes**

241.     Plaintiffs incorporate by reference the allegations in every paragraph of this complaint.

242.     By its wrongful acts and omissions, Defendant has been unjustly enriched at the expense of Plaintiffs and members of the Class, and thus Plaintiffs and members of the Class were unjustly deprived of time and value of money provided to Defendant.

243.     It would be inequitable and unconscionable for Defendant to retain the profit, benefit, and other compensation they obtained from the deceptive, misleading, unfair and unlawful conduct alleged herein.

244.     Plaintiffs and members of the Class seek restitution from Defendant, and seek an order of this Court disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct.

**RELIEF REQUESTED**

245.     Accordingly, Plaintiffs, on behalf of themselves and the members of the Class, seek judgment as follows:

1.     Certifying the Class as requested herein, certifying Plaintiffs as the representatives of the Class, and appointing Plaintiffs' co-counsel as co-counsel for the Class;

2.     Ordering that Defendant is financially responsible for notifying all members of the Class of the alleged misrepresentations and omissions set forth herein;

3.      Awarding Plaintiffs and the members of the Class compensatory damages in an amount according to proof at trial;

4.      Awarding restitution and disgorgement of Defendant's revenues to Plaintiffs and members of the Class;

5.      Awarding declaratory and injunctive relief, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of their conduct and pay them restitution and disgorgement of all monies acquired by Defendant by means of any act or practice declared by this Court to be wrongful or unlawful;

6.      Awarding to Plaintiffs and the Class punitive damages;

7.      Ordering Defendant to stop selling Overstated Menu Items or to correct the deceptive behavior;

8.      Awarding interest on the monies wrongfully obtained from the date of collection through the date of entry of judgment in this action;

9.      Awarding attorneys' fees, expenses, and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action; and

10.     Directing such other and further relief as the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs and the Class demand a trial by jury as to all matters so triable.

Dated: September 14, 2023

<u>/s/ Anthony J. Russo</u>
Anthony J. Russo, Jr., P.A.
d/b/a The Russo Firm

301 West Atlantic Avenue, Suite 0-2
Delray Beach, FL 33444
T: 844-847-8300
E: anthony@therussofirm.com

Mark Anthony Panzavecchia
Panzavecchia & Associates, PLLC
1000 Franklin Ave., Suite 204
Garden City, NY 11530
T: 516-965-2854
E: mark@panzavecchialaw.com

James C. Kelly (*admitted pro hac vice*)
The Law Office of James C. Kelly
244 5th Avenue, Suite K-278
New York, New York 10001
T: 212-920-5042
E: jkelly@jckellylaw.com

*Co-counsel for plaintiffs
and the proposed classes*