**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:22-cv-20925-RKA

WALTER COLEMAN, *et al.,* on behalf of
themselves and all others similarly situated,

      Plaintiffs,

v.

BURGER KING CORPORATION,

      Defendant.

---

**DEFENDANT BURGER KING CORPORATION'S
MOTION FOR SANCTIONS FOR PLAINTIFFS' VIOLATIONS
OF FEDERAL RULE OF CIVIL PROCEDURE 11(B)**

Jeffrey S. Jacobson (*pro hac vice*)
Faegre Drinker Biddle & Reath LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 248-3191
Jeffrey.Jacobson@faegredrinker.com

Michael D. Joblove
Venable LLP
100 SE 2nd Street, Suite 4400
Miami, Florida 33131
(305) 349-2300
mdjoblove@venable.com

*Attorneys for Defendant
Burger King Corporation*

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.........................................................5

LEGAL STANDARD...........................................................................................................9

ARGUMENT .......................................................................................................................10

    A.   The SAC Includes Allegations that are Objectively Frivolous....................................11

        a.   Any Allegation that Burger King Uses Larger Patties in its Menu Boards Has No Reasonable Factual Basis.....................................................................11

        b.   The Allegations that Plaintiffs Relied on Earlier Pre-2017 Advertisements for the Whopper Sandwich Have No Basis .............................15

        c.   The Allegations that All Plaintiffs Relied on In Store Menu Ordering Boards Have No Reasonable Factual Basis .......................................................16

        d.   Plaintiffs' Counsel Knew or Should Have Known that these Allegations are Frivolous .................................................................................................16

    B.   Plaintiffs' Counsel Was Afforded Sufficient Notice of this Motion ..........................19

CONCLUSION.....................................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                            **Page(s)**

*Avirgan v. Hull*,
   932 F.2d 1572 (11th Cir.1991) ........................................................14

*Babadjanian v. Deutsche Bank Nat'l Tr. Co.*,
   No. CV 10-2580, 2011 WL 13214300 (C.D. Cal. Mar. 29, 2011) ...........................9

*Baker v. Alderman*,
   158 F.3d 516 (11th Cir. 1998) ........................................................10

*Bovinett v. HomeAdvisor, Inc.*,
   No. 1:17-cv-6229, 2020 WL 1330407 (N.D. Ill. Mar. 23, 2020) ....................13, 14

*Bressler v. Liebman*,
   No. 96 Civ. 9310, 1997 WL 466553 (S.D.N.Y. Aug. 14, 1997) ...........................13

*Burns v. Windsor Ins. Co.*,
   31 F.3d 1092 (11th Cir. 1994) ........................................................9

*Cameau v. Nat'l Recovery Agency, Inc.*,
   No. 15-CV-2861, 2018 WL 4853050 (E.D.N.Y. Sept. 28, 2018) ........................13

*Campbell v. High Tech Rail and Fence, LLC*,
   No. 3:18-cv-4, 2020 WL 13526696 (N.D. Ga. Nov. 17, 2020) ...................10, 16, 17

*Chimienti v. Wendy's Int'l, LLC*,
   No. 22-CV-2880, 2023 WL 6385346 (E.D.N.Y. Sept. 30, 2023) .................. *passim*

*Coleman v. Burger King Corp.*,
   2023 WL 5507730 (S.D. Fla. Aug. 23, 2023)................................... *passim*

*In re Cummings*,
   381 B.R. 810 (S.D. Fla. 2007) ........................................................9

*Dixon v. Epiq Corp. Restructuring, LLC*,
   No. 20-81363-CIV, 2022 WL 2290523 (S.D. Fla. June 24, 2022)...........................5

*Estrada v. FTS USA, LLC*,
   810 F. App'x 743 (11th Cir. 2020) ........................................................9

*Galin v. Hamada*,
   283 F.Supp.3d 189 (S.D.N.Y. 2017), *aff'd*, 753 F. App'x 3 (2d. Cir. 2018)...........13

*Goldman v. Barrett*,
   15 Civ. 9223, 2018 WL 11214828 (S.D.N.Y. Sept. 4, 2018)...................................9

*Gulisano v. Burlington, Inc.*,
    34 F.4th 935 (11th Cir. 2022) ...................................................................................10, 11

*Homecare CRM, LLC v. Adam Grp., Inc. of Middle Tenn.*,
    952 F. Supp. 2d 1373 (N.D. Ga. 2013) ...........................................................................17

*Jackson v. Chronic*,
    No. 2:11-cv-58, 2013 WL 12091693 (N.D. Ga. Jan. 24, 2013) ......................................10, 19

*Lowery v. Ala. Power Co.*,
    483 F.3d 1184 (11th Cir. 2007) ......................................................................................10

*M-I Drilling Fluids UK Ltd. v. Dynamic Air Inc.*,
    No. 14-4847, 2017 WL 1193992 (D. Minn. Mar. 30, 2017) ...........................................9

*Meadow Ltd. P'ship v. Heritage Sav. & Loan Assoc.*,
    118 F.R.D. 432 (E.D. Va. 1987), *aff'd sub nom. Fahrenz v. Meadow Farm*
    *P'ship*, 850 F.2d 207 (4th Cir. 1988) ...................................................................12–13, 14, 15

*Michel v. NYP Holdings, Inc.*,
    816 F.3d 686 (11th Cir. 2016) ..........................................................................................5

*Mike Ousley Prods., Inc. v. Cabot*,
    130 F.R.D. 155 (S.D. Ga. 1990), *aff'd sub nom. Mike Ousley Prods., Inc. v.*
    *WJBF-TV*, 952 F.2d 380 (11th Cir. 1992) ......................................................................10

*Peer v. Lewis*,
    606 F.3d 1306 (11th Cir. 2010) ....................................................................................12, 15

*Rhinehart v. CBE Group, Inc.*,
    714 F.Supp.2d 1183 (M.D. Fla. 2010) ........................................................................12, 13, 14

*Yang v. Bullock Fin. Grp., Inc.*,
    No. 1:09-CV-528-TCB-RGV, 2010 WL 11507723 (N.D. Ga. July 30, 2010) .......................9

**Statutes, Rules & Regulations**

Fed. R. Civ. P. 8 ...............................................................................................................10

Fed. R. Civ. P. 11 ....................................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6)..............................................................................................11, 18

Fed. R. Civ. P. 23 .............................................................................................................4

## INTRODUCTION

The food items photographed for display on the menu boards of Burger King® restaurants are painstakingly constructed by trained professionals, with each item selected for visual appeal and placed just so, perfectly lit, and photographed using expensive equipment. Of course, the same sandwiches assembled speedily in a quick-service restaurant, wrapped, and transported, will not look the same. When this Court decided defendant Burger King Company LLC's ("BKC's")[1] motion to dismiss Plaintiffs' First Amended Complaint ("FAC"), the Court did not suggest there is anything wrong with "styling" a sandwich for photographic purposes. But the Court held that *if* a menu board photo reflects an "offer to sell you a certain amount of food at a specified price," *if* a patron reasonably relied on that menu board photo in deciding to order the item, and *if* the restaurant "provide[s] you with less food [than offered] for the same price," that could provide a basis for a cause of action, at least for the purposes of a pleading-stage motion. *Coleman v. Burger King Corp.*, 2023 WL 5507730, at *8 (S.D. Fla. Aug. 23, 2023). The Court's opinion summarized Plaintiffs' allegations in this case as being that BKC used a *larger* beef patty in the menu board photo of the iconic Burger King® Whopper® sandwich, and on that basis, the Court partially denied BKC's motion to dismiss. The Court also ordered Plaintiffs to file a Second Amended Complaint ("SAC," Dkt. No. 69), which they did on September 14, 2023.

Plaintiffs' counsel's problem, and the reason BKC had no choice but to file this Rule 11 motion, is their knowledge when they filed the SAC that every part of the premise that caused this Court to partially deny BKC's motion to dismiss is not true. What they alleged to be a "store menu ordering board" photo of the Whopper (SAC ¶ 4) was instead an image from the Burger King *website*. If someone proposed to order a Whopper from the website, they could not do so without seeing a written description of the sandwich as "a ¼ pound of savory flame-grilled beef." No one could have seen that Whopper image in context with the written description and been misled into thinking they would receive more than a quarter pound of beef when they ordered a Whopper. The

---

[1] Following a recent reorganization, the entity formerly known as Burger King Corporation is now Burger King Company LLC

Court can be certain that Plaintiffs' counsel were aware when they filed the SAC of how the image appears in context on the Burger King website because Plaintiffs' counsel themselves included the full image, with the written description, in an earlier declaration in the case. *See* Declaration of James Kelly dated Jan. 4, 2023, Ex. 2 (Dkt. No 52-3, page 4) ("Kelly Decl.") (attaching "true and correct copies of screenshots of the relevant pages from Burger King's website BK.com").[2] As counsel's declaration admitted, this is the image one sees when visiting the link cited at SAC ¶ 4.



Plaintiffs' counsel knew the Court's dismissal decision repeated the FAC's allegation that this image was from in-store menu boards (which it was not), and stood alone, unaccompanied by any written description of the Whopper (which it did not). They also knew how material these allegations were because, shortly after they filed the SAC, the court in *Chimienti v. Wendy's Int'l, LLC*, No. 22-CV-2880, 2023 WL 6385346 (E.D.N.Y. Sept. 30, 2023), dismissed Plaintiffs' counsel's claims against two of BKC's competitors after construing those claims in a way that matched how Plaintiffs *should* have alleged them here. Yet Plaintiffs' counsel did not amend their allegations in the SAC to correct their misstatements of fact.

---

[2] As reflected in Mr. Kelly's declaration and exhibit, BK.com has a page that contains only the image of a Whopper, with no written description. *See* Kelly Decl. Ex. 2, page 2. Website visitors, however, cannot order a Whopper from that page. They must click on the image of a Whopper, which links to the page containing the written description.

Much more importantly, Plaintiffs' counsel knew when they filed the SAC that the beef patties in the website photos they challenge—and in *every* BKC photo of a sandwich—are the same quarter-pound or two-ounce beef patties that Burger King restaurants serve to guests in the same sandwiches, which the photographers obtained from the same suppliers the restaurants use. BKC produced to Plaintiffs' counsel in discovery its corporate policy requiring its photography vendors to source the same hamburgers, buns, and (where possible) other ingredients that Burger King restaurants use from restaurant suppliers, and to use *only* those true-to-life ingredients in photos. BKC also produced a sworn declaration from the CEO of its photography vendor attesting that the vendor followed this policy universally, backed up with receipts of purchases from Burger King restaurant suppliers. Plaintiffs' counsel thus no longer can allege in good faith (if they ever could have) that BKC attempted to mislead guests by using larger beef patties in any photos: This simply never happened. They knew the Court had interpreted their allegations as being that BKC used larger beef patties in photos. They knew that after they had "conce[ded]" in *Chimienti*, 2023 WL 6385346, at *4, that "both the advertisements and the products served in stores contained the same amount of meat," the *Chimienti* court considered that admission "fatal." Yet, obviously in a bid to avoid the same fate here, they did not amend their factual allegations at all in the SAC.

Finally, Plaintiffs' counsel did not amend their allegations about their clients' experiences with Burger King restaurants to conform to their clients' interrogatory responses, attached to the Declaration of Jeffrey Jacobson dated Dec. 27, 2022, Ex. A (Dkt. No 49-2, page 1) ("Dec. 2022 Jacobson Decl.") The SAC includes what Plaintiffs' call a "former advertisement" for the Whopper, allegedly used prior to September 2017, and suggests that this prior photo played a role in Plaintiffs' decisions to purchase a Whopper (*i.e.*, that the more recent photo left the impression that BKC had increased the size of the patty "by more than 100%"). SAC ¶ 8. The Court cited this allegation multiple times in its decision. *See Coleman*, 2023 WL 5507730, at *1, *8. But Plaintiffs' interrogatory responses demonstrated that none of them remembered seeing the "former advertisement" or patronizing a Burger King when it allegedly was used. *See* Dec. 2022 Jacobson Decl., Ex. A at Responses to Interrogatory No. 4.

Several of the Plaintiffs admitted being *repeat* Burger King guests who ordered the same items multiple times, negating any possible claim that they relied on menu board photos alone to decide to place an order. Dec. 2022 Jacobson Decl., Ex. A at 4-5, 25-26, 103-104. Most of the Plaintiffs never set foot inside a Burger King restaurant, but ordered only at drive-through lines. *See, e.g.*, *id.* at 12, 26, 33, 40, 47, 68, 82, 89, 96, 104, 111, and 125. One admitted ordering only from DoorDash, which provided the same written description of a "¼ pound beef patty" that appears on Burger King's website. *Id.* at 19. The Court's decision on BKC's motion to dismiss determined that the alleged details of Plaintiffs' purchases are relevant to their ability to state a valid claim, but Plaintiffs' counsel chose not to provide accurate information in the SAC.

This evidence arguably left Plaintiffs' counsel with no good-faith basis to continue this lawsuit *at all*, but their duty of candor to the Court certainly forbade them from continuing the lawsuit's claims *unchanged*. BKC repeatedly urged Plaintiffs' counsel, before and after they filed the SAC, to make necessary changes to their allegations, but Plaintiffs' counsel ignored those entreaties and made a conscious choice to plead verbatim the same, demonstrably false claims from the FAC.

BKC thus asks the Court, as a Rule 11 sanction, to strike these false allegations, and/or to take judicial notice of the relevant portions of the discovery record, when ruling on BKC's motion to dismiss the SAC (and to award BKC its attorneys' fees for having to file this motion). Ample in-Circuit precedent supports this request for relief. Shorn of the false claim that BKC used larger beef patties in photos than it served to guests, this lawsuit becomes what BKC submits—and the *Chimienti* court found—is just a baseless and unprecedented complaint that it is somehow unlawful for a restaurant to display a beautiful photograph of menu items, containing *the exact ingredients* restaurant guests will receive, if what guests receive in restaurants looks different from the picture. There are many reasons why this case can never proceed as a class action, which BKC explained in its opposition to Plaintiffs' pending motion for class certification. The Court, however, need not reach Plaintiffs' failure to satisfy Rule 23 if it finds, as it should, that the SAC must be dismissed for failure to state a claim.

## FACTUAL AND PROCEDURAL BACKGROUND

Only Plaintiffs' counsel know whether it was ever actually their intent to allege that BKC used larger beef patties in photos than it serves to guests. The FAC was susceptible to two different interpretations. One paragraph of the FAC (repeated verbatim in the SAC) said only that because the single photo of the Whopper pasted into their complaint was stylized to have the "meat patties and ingredients . . . overflow the bun," this "***makes it appear*** that the burgers are approximately 35% larger in size, and contain more than double the meat, than the actual burger." FAC ¶ 3; SAC ¶ 3. That appears to be a complaint only about photography techniques. A later paragraph alleges that "the size of the Whopper and the beef patty increased materially" when comparing the alleged 2017-era photo to a current photo (FAC ¶ 9; SAC ¶ 9) but this also may just have reflected an intention to focus on the *appearance* of the patties in two different photographic stylizations.

Plaintiffs' counsel's letter to BKC dated September 6, 2023 (*see* Declaration of Jeffrey Jacobson dated Sept. 28, 2023, Ex. B) ("Sept. 2023 Jacobson Decl.") seems to confirm that Plaintiffs' current complaint is only about photographic stylization. Plaintiffs' counsel did not assert any basis for an allegation that BKC used a larger beef patty in any photo than the patties served to guests. Instead, the letter accused BKC of "not disclosing the techniques that were used to make the beef patty *appear materially larger in the final photograph*" (emphasis added).

BKC submits that food *stylization* in photos (*e.g.*, hiring professionals to create images of menu items that are as attractive as possible) is not unlawful. When ruling on BKC's motion to dismiss, however, the Court had a responsibility not only to accept the FAC's allegations as true, but to "construe them in the light most favorable to the plaintiff[s]." *Dixon v. Epiq Corp. Restructuring, LLC*, No. 20-81363-CIV, 2022 WL 2290523, at *4 (S.D. Fla. June 24, 2022) (Altman, J.), *quoting Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016). The most favorable way to interpret the SAC, from the perspective of avoiding pleading-stage dismissal, was as a claim that BKC used a larger beef patty in its photos than it served to guests, and thus "offer[ed] to sell" more than it delivered. *Coleman*, 2023 WL 5507730, at *8. The Court's legal holdings as to the potential viability of Plaintiffs' claims all flowed from that factual interpretation.

5

On December 28, 2022, in connection with BKC's opposition to Plaintiffs' Motion for Class Certification, BKC submitted the Declaration of Matthew R. Wilson, founder and CEO of 500 Degrees LLC ("500 Degrees"), which created the photos Plaintiffs pasted into their three complaints. (*See* Dkt. No. 49-1.) Mr. Wilson testified that his agency used in the photos the exact same beef patties that Burger King restaurants serve to guests, obtained from a supplier to those restaurants, and that BKC's corporate policies required this. He attested that BKC provided 500 Degrees with "'build sheets,' explaining how to build a sandwich," and that these build sheets "are <u>identical</u> to the instructions [BKC] provides to the Burger King restaurants for associate and management training and daily product creation specifications, including weights and measures, protein/toppings/condiment application, and bun style." (Dkt. No. 49-1 ¶ 11 (emphasis in original)). He said that BKC's "standing instructions to 500 Degrees are to source at least all proteins and buns from the same suppliers used by Burger King restaurants," meaning that "if 500 Degrees is building and photographing a Whopper® sandwich for an upcoming promotion, it obtains from the [Burger King] supply company and uses in its product photographs exactly the same patties and buns that a Burger King restaurant uses to build the Whopper®." *Id.* ¶ 12. And he attached a sample receipt showing 500 Degrees' purchase of these goods from a Burger King supplier.

"Every time 500 Degrees has photographed a Whopper®, Whopper® Jr., Double Whopper®, Whopper® Melt, or Big King™," Mr. Wilson said his firm "obtained from a Burger King restaurant supplier and used the same patties in its photographs that Burger King restaurants use." (Dkt. No. 49-1 ¶ 13). BKC's instructions "call[ed] for [all] ingredients to be pushed to the front of each sandwich for photographic purposes so that viewers of the photographs are informed of all of the ingredients that go into the sandwiches," and 500 Degrees followed those instructions. *Id.* ¶ 16. He did not dispute selecting "the best 'looking' example . . . based on visual appeal," but he affirmed that "the quarter-pound weight of all the patties we receive and photograph (or two-ounce weight in the case of the Whopper® Jr. and the Whopper® Melt, which uses two Whopper® Jr. patties), is exactly the same as in Burger King restaurants." *Id.* ¶ 13. He attested, without

qualification, that 500 Degrees never "include[d] any ingredients in a photograph that Burger King restaurant guests would not receive, nor do we include a greater quantity of ingredients." *Id.* ¶ 16.

BKC also had produced to Plaintiffs' counsel numerous different images of the Whopper (and other items) that Burger King franchise restaurants had the option to display on menu boards. A number of those menu board images produced in discovery already are in the filed record of this case. *See* Declaration of Jeffrey S. Jacobson dated Jan. 11, 2023 (Dkt. No. 54-1 ¶ 3 & Ex. A (attesting that the images of the Whopper that appear on the next page, "along with many others, were produced to Plaintiffs' counsel," and reflect some of the images that guests might have seen in different Burger King restaurants on the store menu boards or other displays.)) These guest-facing displays did not use the same photo that Plaintiffs' counsel included in their complaints.

 

 

Plaintiffs' counsel alleged in FAC ¶ 4, and repeated in SAC ¶ 4, that Burger King currently represents that [the] Whopper looks as follows on its website *and store menu ordering boards.*"

(emphasis added). But they did not allege any basis for believing that the image appearing in three paragraphs of the FAC and SAC (¶¶ 4, 8, 10) appeared in the same form in any restaurant, or that any guest could order a Whopper from the BK.com website without seeing an affirmative statement that a Whopper is a sandwich with a "¼ pound" beef patty. Plaintiffs' counsel had a duty, when they filed the SAC, to make this clear, especially because the Court found the supposed "menu board" allegation of a stand-alone photo material to its decision on the motion to dismiss, and because the *Chimienti* court, 2023 WL 6385346, at *6, focused on the absence of allegations "about how Defendants' products appear on an in-store menu." But they nevertheless repeated the "website *and store menu ordering boards*" wording verbatim in the SAC, and they continued to omit the written description of the Whopper that website visitors see.

Plaintiffs' counsel had produced discovery from their clients, too, including interrogatory responses and some receipts and other documents. Two Plaintiffs (Victor Castillo, and Sybil Peachlum) admitted being *repeat* Burger King guests, who ordered the same menu items multiple times; others were somewhat vague about their experiences in their interrogatory responses. Of the 19 plaintiffs, only three (Matthew Fox, Jesus Mendez, and Madelyn Salzman) claim to have set foot inside Burger King restaurants, and only Mr. Fox and Mr. Mendez purchased a Whopper inside a restaurant. One Plaintiff said she ordered Burger King food for delivery from DoorDash, a third-party provider. Plaintiffs' counsel knew, and attested in a prior declaration in this case, that the DoorDash website and application say below the photo of a Whopper that it includes a "¼ pound" beef patty, as the BK.com website does. *See* Kelly Decl. ¶ 7 & Ex. 5. None of the Plaintiffs said they ever saw the "former advertisement" of the Whopper pasted into the FAC and SAC (at ¶¶ 7-8) alleged to have been used prior to "September 2017" or said they even patronized any Burger King restaurant prior to 2021. Given the Court's decision on BKC's motion to dismiss, which cited these specific allegations from the FAC about Plaintiffs' alleged purchases inside Burger King restaurants, and their supposed reliance on particular past and present images of the Whopper, Plaintiffs' counsel knew these allegations were material, and they also knew the allegations were inaccurate, or at least misleading.

The SAC, which the Court ordered Plaintiffs to file, offered Plaintiffs' counsel a chance to conform their claims to the facts adduced in discovery. Rule 11 obligated them not to allege facts they knew they could not support. Plaintiffs' counsel violated their obligations.

## LEGAL STANDARD

"Every lawyer is an officer of the court[,] [a]nd, in addition to his duty of diligently researching his client's case, he always has a duty of candor to the tribunal." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Rule 11(b)(2) "reinforces counsel's duty of candor to the Court by subjecting litigants to potential sanctions for making representations to the court for an improper purpose." *In re Cummings*, 381 B.R. 810, 837 (S.D. Fla. 2007). Among other things, this means "a lawyer should not knowingly misstate, distort, or improperly exaggerate any fact or opinion and should not improperly permit the lawyer's silence or inaction to mislead anyone." *Id.* (internal quotation marks and citations omitted). "Rule 11's primary objective is to give a litigant pause to stop, think, and investigate more carefully before filing papers, thereby streamlining the administration and procedure of the federal courts." *Yang v. Bullock Fin. Grp., Inc.*, No. 1:09-CV-528-TCB-RGV, 2010 WL 11507723, at *17 (N.D. Ga. July 30, 2010), *report and recommendation adopted*, No. 1:09-CV-528-TCB, 2010 WL 11527128 (N.D. Ga. Aug. 23, 2010) (internal quotation marks and citation omitted). The duty of candor applies to every filing, including amended complaints. *See, e.g.*, *Estrada v. FTS USA, LLC*, 810 F. App'x 743, 745 (11th Cir. 2020) (upholding sanctions because allegations in amended complaint "as worded objectively lacked evidentiary support"); *Goldman v. Barrett*, 15 Civ. 9223, 2018 WL 11214828, at *11 (S.D.N.Y. Sept. 4, 2018) (imposing sanctions for including unsupported allegations in amended complaint); *M-I Drilling Fluids UK Ltd. v. Dynamic Air Inc.*, No. 14-4847, 2017 WL 1193992, at *8-9 (D. Minn. Mar. 30, 2017) (imposing sanctions for failure to investigate properly before filing an amended complaint); *Babadjanian v. Deutsche Bank Nat'l Tr. Co.*, No. CV 10-2580, 2011 WL 13214300, at *16-*18 (C.D. Cal. Mar. 29, 2011) (imposing sanctions for repeating in an amended complaint allegations that discovery showed lacked a valid basis).

Because "Rule 11 applies to all papers filed in the litigation," "[e]ach filing must reflect the results of reasonable inquiry." *Mike Ousley Prods., Inc. v. Cabot*, 130 F.R.D. 155, 157 (S.D. Ga. 1990), *aff'd sub nom. Mike Ousley Prods., Inc. v. WJBF-TV*, 952 F.2d 380 (11th Cir. 1992). Put another way, even if a complaint passes muster under Rule 8 for pleading sufficient factual material, a complaint must still comply with "Rule 11's command—under pain of sanctions—that the allegations and other factual contentions have, [or are likely to have following discovery,] evidentiary support." *Jackson v. Chronic*, No. 2:11-cv-58, 2013 WL 12091693, at *7 (N.D. Ga. Jan. 24, 2013) (alteration in original), *quoting Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1216 (11th Cir. 2007). "Rule 11 sanctions are warranted when a party files a pleading that has no reasonable factual basis . . . " *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998).

The "objective standard for testing conduct under Rule 11 is reasonableness under the circumstances and what was reasonable to believe at the time the pleading was submitted." *Baker*, 158 F. 3d at 524 (internal quotation marks and citation omitted). "Courts in the Eleventh Circuit consider (1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *Campbell v. High Tech Rail and Fence, LLC*, No. 3:18-cv-4, 2020 WL 13526696, at *7 (N.D. Ga. Nov. 17, 2020). "A factual claim is frivolous when it has no reasonable factual basis." *Gulisano v. Burlington, Inc.*, 34 F.4th 935, 942 (11th Cir. 2022). Rule 11(c) provides that a court may sanction "any attorney, law firm, or party that violated the rule or is responsible for the violation."

## ARGUMENT

All Plaintiffs' counsel had to do to avoid this motion was conform the SAC to the facts adduced in discovery. They knew from discovery that BKC's corporate policy required its photography agency to use the same hamburger patties and buns Burger King restaurants use, and that the agency followed that policy. They knew from discovery—and acknowledged in other filings in this case—that the image their earlier complaints portrayed as being one Burger King restaurants displayed was just a *website* image that none of their clients claim to have seen or relied on (because none of them ordered from the BK.com website). They knew from discovery,

including their own clients' interrogatory responses, that what each plaintiff saw and relied on when making a purchase varied, most of their clients never saw the inside of a Burger King restaurant at all, and *none* of their clients saw the alleged "former" photo of a Whopper that Plaintiffs' counsel put at the center of each of their three complaints. They also knew from *Chimienti* that truthful and complete allegations might doom their lawsuit. Plaintiffs' counsel's conscious decision not to amend their factual allegations to reflect the fruits of 14 months of discovery "exhibits 'a deliberate indifference to obvious facts,'" *Gulisano*, 34 F. 4th at 942, and thus warrants Rule 11 sanctions. The sanction particularly warranted here, in addition to BKC's fees for having to file this motion, is for the Court to strike and not consider the demonstrably false allegations in the SAC when ruling on BKC's Rule 12(b)(6) motion to dismiss.

**A.**     **The SAC Includes Allegations that are Objectively Frivolous**

**a.**     **Any Allegation that Burger King Uses Larger Patties in its Menu Boards Has No Reasonable Factual Basis**

Plaintiffs' SAC, using the same wording as the FAC, alleges what they call "[a] side-by-side comparison of Burger King's former Whopper advertisements to the current Whopper [photo]," and they claim this "shows that the burger increased in size [from one photo to the other] by approximately 35% and the amount of beef increased by more than 100%." SAC ¶ 8; *see also id.* ¶ 9 ("the size of the Whopper and the beef patty increased materially" from the alleged former photo to the current one). The Court's August 23, 2023, Order discussed these specific paragraphs, which are unchanged in the SAC. *See Coleman*, 2023 WL 5507730, at *8 (citing FAC ¶¶ 8-9). Plaintiffs also repeated verbatim in the SAC their prior allegations that the images pasted into the complaint were "on Burger King's store menu ordering board." SAC ¶ 32. The Court's Order cited that allegation, too. *See Coleman*, 2023 WL 5507730, at *8; *see also id.* at *7 (referring to the images as being from "an alleged Burger King menu-ordering board").

The Court interpreted Plaintiffs' claims in the FAC, copied without changes into the SAC, to be that the actual size of the burger patties in the menu pictures differed from the size of the burger patties used in Burger King's restaurants. *See id.* at *8 ("Plaintiffs allege, for instance, that . . . 'the amount of beef [in one Whopper image vs. an earlier one] increased by more than 100%,'

*without* any concomitant increase in the actual size of the burgers.") But now, following discovery, Plaintiffs have no reasonable factual basis to make that specific allegation. As Mr. Wilson's Declaration stated, when his firm constructed Burger King sandwiches for photography, they followed "build sheets" that "are <u>identical</u> to the instructions [BKC] provides to the Burger King restaurants for associate and management training and daily product creation specifications." (Dkt. No. 49-1 ¶ 11 (emphasis in original)). He attested that "[e]very time 500 Degrees has photographed a Whopper®, Whopper® Jr., Double Whopper®, Whopper® Melt, or Big King™, it has obtained from a Burger King restaurant supplier and used the same patties in its photographs that Burger King restaurants use." *Id.* ¶ 13. It uses "the best 'looking' example . . . based on visual appeal," but the actual weight of all the patties photographed for the in-store menus "is exactly the same as in Burger King restaurants." *Id.*

Neither in reply to BKC's opposition to class certification, nor in any subsequent filing or correspondence, have Plaintiffs' counsel contended that Mr. Wilson lied. No document Burger King produced in written discovery, which included the raw images captured by Mr. Wilson's firm, contradict him. Unquestionably, the menu item images that Burger King presents in restaurants and in out-of-store advertising are carefully crafted to look beautiful, but that is not consumer fraud or a breach of contract. The uncontested discovery record precludes Plaintiffs from arguing that BKC used larger beef patties in its photos than it serves to guests. Plaintiffs' counsel's re-filing of allegations that they no longer have a good faith basis to make is grounds for Rule 11 sanctions. *See Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010) (concluding that litigants are subject to "potential sanctions for insisting upon a position after it is no longer tenable").

This is not the first time attorneys have continued to press claims after discovery debunked them, and abundant authority exists for sanctioning attorneys who do so. *See, e.g.*, *Rhinehart v. CBE Group, Inc.*, 714 F.Supp.2d 1183, 1186 (M.D. Fla. 2010) (granting Rule 11 motion because "[p]laintiff's counsel failed to dismiss *any* of the claims when it became clear during discovery that they had no factual basis whatsoever, forcing Defendant to file a summary judgment motion"); *Meadow Ltd. P'ship v. Heritage Sav. & Loan Assoc.*, 118 F.R.D. 432, 434 (E.D. Va. 1987), *aff'd*

12

*sub nom. Fahrenz v. Meadow Farm P'ship*, 850 F.2d 207 (4th Cir. 1988) ("The duty under Rule 11 to inquire into the facts is a continuing duty and counsel cannot ignore the realities of life once facts come to their attention which indicate that their earlier reliance was misplaced."); *Bovinett v. HomeAdvisor, Inc.*, No. 1:17-cv-6229, 2020 WL 1330407 at *4, *6 (N.D. Ill. Mar. 23, 2020) (finding that after defendants "offered clear evidence, . . . including verified discovery responses and a sworn declaration," a plaintiff "violated Rule 11 by certifying, filing, and advocating an Amended Complaint with no legal or factual basis…to support several key allegations"); *Cameau v. Nat'l Recovery Agency, Inc.*, No. 15-CV-2861, 2018 WL 4853050, at *3 (E.D.N.Y. Sept. 28, 2018) (granting Rule 11 motion because Plaintiff "should have known based on [discovery] that key factual allegations in the Complaint had no support"); *Galin v. Hamada*, 283 F.Supp.3d 189, 202 (S.D.N.Y. 2017), *aff'd*, 753 F. App'x 3 (2d. Cir. 2018) (a "court may impose sanctions on a party for refusing to withdraw an allegation or claim even after it was shown to be inaccurate" and granting defendant's Rule 11 motion due to plaintiff's "failure to drop his lawsuit upon the conclusion of discovery") (internal quotation marks and citation omitted); *Bressler v. Liebman*, No. 96 Civ. 9310, 1997 WL 466553, at *8 (S.D.N.Y. Aug. 14, 1997) (imposing Rule 11 sanctions where plaintiff's counsel "continued to press the claims contained [in the amended complaint] in conferences after information provided by opposing counsel and analysis by the court indicated the questionable merit of those claims").

The facts in this case are similar to those of *Rhinehart*, where a plaintiff in a debt collection practices case alleged that the defendant constantly called her at four different numbers and failed to send her a required debt validation letter. *See* 714 F. Supp. 2d at 1183. Discovery demonstrated, however, that "the Complaint's claims were utterly unsupported," *id.* at 1185, as the plaintiffs' own discovery showed she could not verify that any of the four numbers were hers, she did not know whether she had ever received calls from the defendant, and her husband actually received the debt validation letter. *See id.* at 1185. Notwithstanding these factual dead-ends, "[p]laintiff's counsel failed to dismiss *any* of the claims when it became clear during discovery that they had no factual basis, forcing Defendant to file a summary judgment motion." *Id.* at 1186. In awarding

sanctions, the Court found that "[p]laintiff and her attorney multiplied the proceedings in this case unreasonably and vexatiously and exhibited a deliberate indifference to obvious facts." *Id.*

Plaintiffs here, like the plaintiffs in *Rhinehart*, received discovery that should have caused them to drop the case entirely or at least substantially change their alleged theory. They know "discoverable evidence will not bear out the claim" that Burger King used a larger patty in advertisements than the same quarter-pound Whopper® patty served countless millions of times in Burger King restaurants. Rather than yielding to reality, however, the SAC pretends the Wilson declaration and all its supporting evidence does not exist. This is "deliberate indifference to obvious facts," violating Plaintiffs' counsel's "duty to discontinue their quest" before filing the SAC. *Id.*, *quoting Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir.1991).

*Bovinett*, too, involved a plaintiff who continued to assert a position that was debunked by a sworn declaration offered in discovery. *See* 2020 WL 1330407, at *4. The *Bovinett* plaintiff "alleg[ed] a myriad of claims that stem[med] from the alleged improper use of Plaintiff's image in the background of video commercials." *Id*. Notwithstanding "numerous requests from counsel to produce facts establishing jurisdiction or to voluntarily dismiss [the defendant], [plaintiff's counsel] refused and pushed the case onward." *Id*. at *5. After the plaintiff filed an amended complaint, the defendant "offered clear evidence that jurisdiction did not exist, including verified discovery responses and a sworn declaration." *Id*. at *4. Unfazed, plaintiff "continued to assert personal jurisdiction and argued, without presenting any evidence, that [defendant] was lying." *Id*. So plaintiffs have done here, when faced with the unrebutted declaration of Mr. Wilson, which clearly establishes that no larger patty was used for the Whopper® advertisements. This is sanctionable.

*Meadow Ltd. Partnership*, 118 F.R.D. at 434, also explains a lawyer's ongoing duty of candor. There, allegations that were ostensibly reasonable based on plaintiffs' counsel's investigation at the time the lawsuit commenced were later demonstrated to be not "well grounded in fact" once some discovery had occurred. *Id.* at 434. Despite plaintiffs' counsel's "knowledge that their earlier evaluations were flawed, [they] persisted in maintaining the action." *Id*. After the

14

court granted summary judgment to the defendant, the court awarded monetary sanctions, explaining that "counsel cannot ignore the realities of life once facts come to their attention which indicate that their earlier reliance was misplaced." *Id*. So too here: Plaintiffs' counsel had the opportunity to reassess the FAC's allegations once they received unrebutted evidence. Rather than revising their SAC, Plaintiffs' counsel instead chose to "ignore the realities of life." *Id*.

What is particularly egregious about Plaintiffs' SAC, as pleaded, is that Plaintiffs' counsel may have only needed to make minor changes to avoid this motion. Nothing but futility—illustrated by the decision in *Chimienti*—stops Plaintiffs from attempting to base a claim on the stylization of a photo, such as they appear to do in SAC ¶ 3 (alleging that the burger patties "appear" bigger in images). If they never intended to allege that the photo at issue used a larger beef patty than the one served to guests, they are misleading the Court by failing to clarify their position. If, instead, they *did* intend their claim to be that BKC used more beef in photos, as the Court construed their claims to be, they had a duty to advise the Court that discovery had made such a claim untenable. *See Peer*, 606 F.3d at 1311 (11th Cir. 2010) ("[I]f evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention.").

> **b.    The Allegations that Plaintiffs Relied on Earlier Pre-2017 Advertisements for the Whopper Sandwich Have No Basis**

Plaintiffs' allegations that BKC used a larger beef patty in one current photo of the Whopper, relative to an alleged 2017 photo of the Whopper (*see* SAC ¶¶ 6, 8), applies only to the Whopper (and not to any other menu items, as to which the SAC pleads no similar comparison). Plaintiffs' counsel apparently wish a reader of the SAC to infer that they saw both the earlier photo and the current one, recalled the earlier photo some years later, concluded that BKC had increased the size of the beef patty in the Whopper, and decided to buy one based on that belief. That claim was fanciful (at best) when Plaintiffs' counsel first alleged it, and discovery made it frivolous. Not only did Mr. Wilson's declaration confirm that his agency used the same quarter-pound patty in the photo that guests receive in Burger King restaurants, but Plaintiffs' own interrogatory responses showed that none of them remembered ever seeing the earlier Whopper photo, and none

of them claimed to have patronized a Burger King prior to 2021. *See* Dec. 2022, Jacobson Decl., Ex. A at Response to Interrogatory No. 4. By Plaintiffs' own admissions, the pre-2018 photo is irrelevant to their claims and should have been omitted from the SAC. *See Campbell,* 2020 WL 13526696, at *10 (imposing sanctions where "[p]laintiffs filed a fourth amended complaint that included allegations directly contradicted by their own depositions.").

### c.   The Allegations that All Plaintiffs Relied on In Store Menu Ordering Boards Have No Reasonable Factual Basis

The Court's Order on BKC's prior motion to dismiss distinguished between photos in out-of-store advertisements, which cannot constitute contractual "offers," and photos on in-store menu boards, which the Court held might suffice as offers, depending on context and other factors that might emerge in discovery. *See Coleman*, 2023 WL 5507730, at *7-8. In reaching this holding, the Court both construed the photo Plaintiffs pasted into the FAC as having been taken from an "in-store 'menu ordering board,'" *id.* at *7, and advised Plaintiffs' counsel that it mattered where a particular photo allegedly appeared (or did not appear). Plaintiffs knew when they filed the SAC that the Whopper® and Big King™ images pasted into the SAC were taken only from Burger King's website, and BKC had provided Plaintiffs with a large number of actual menu board photos in discovery. Nevertheless, Plaintiffs left the allegations in the SAC unchanged from those in the FAC, declining to acknowledge that the photo in the SAC is not what they told the Court it was. Compounding the problem, Plaintiffs' counsel did not acknowledge in the SAC the facts learned even through their own clients' discovery about their own purchases. Plaintiffs' counsel's duty of candor required them to disclose the repeat purchases by some of their clients, the DoorDash purchase by one of them, and the fact that nearly all of their clients placed orders in ways *other than* inside a Burger King restaurant after having seen in-store menu boards.

### d.   Plaintiffs' Counsel Knew or Should Have Known that these Allegations are Frivolous

BKC did everything possible to avoid having to file this motion. BKC advised the Court and Plaintiffs' counsel during a status conference on August 31 that BKC would seek sanctions if Plaintiffs' counsel did not conform the SAC to the discovery record. BKC reiterated this message

to Plaintiffs' counsel in oral discussions in the courthouse after that hearing, and again in a letter transmitted on September 1, 2023, nearly two weeks before Plaintiffs' counsel filed the SAC. *See* Sept. 2023 Jacobson Decl. Ex. A. BKC tried again to avoid this motion by reaching out with another message, explaining its position, and seeking a discussion with Plaintiffs' counsel about the need for amendments to the SAC. *See id.* at Ex. C. BKC was blunt with Plaintiffs' counsel that they faced a choice between acknowledging the true facts of this case or continuing to mislead the Court. Plaintiffs' counsel chose the riskier path of filing the SAC with no substantive changes and leaving it unchanged even after being served with this motion. That is sanctionable conduct. *See Campbell*, 2020 WL 13526696 at *7 (awarding sanctions where the claims were "objectively frivolous" and "the person who signed the pleadings should have been aware that they were frivolous.") Because the SAC is based on allegations that counsel knew objectively lack evidentiary support, the Court should impose sanctions.

Per Rule 11(c)(1), if the Court determines that Plaintiffs' Counsel have violated Rule 11(b), the Court "may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). The appropriate sanction for Plaintiffs' Counsel's unwillingness to alter or drop the allegation that BKC used a larger patty in its pictures than it serves to its customers is to disregard those allegations. *See Homecare CRM, LLC v. Adam Grp., Inc. of Middle Tenn.*, 952 F. Supp. 2d 1373, 1385-86 (N.D. Ga. 2013) (striking plaintiff's "claim for misappropriation of trade secrets and its supporting factual allegations" because plaintiff "ignored evidence in its possession that directly contradicts the factual allegations made in support of its trade-secrets claim."). In *Homecare*, plaintiff asserted a trade secrets claim even though plaintiff concluded internally that it did not have any intellectual property concerns with defendant's product. The defendant, who was aware of this conclusion, filed a Rule 11 motion. The court reviewed the evidence in plaintiff's possession prior to the filing of the complaint and concluded that plaintiff's counsel's inclusion of the trade secrets claim, in light of the evidence he had in his possession, amounted to "deliberate indifference to obvious facts." *Id.* at 1384. The court then struck the allegations with prejudice. *See id.* at 1386.

BKC here is not requesting that the Court dismiss Plaintiffs' entire SAC *as a sanction*. Although the Court should award BKC its attorneys' fees and costs in filing this Rule 11 motion, the primary relief Burger King seeks is the striking or taking judicial notice of elements of undisputed elements of the discovery record with respect to the following allegations from the SAC for purposes of BKC's Rule 12(b)(6) motion, which BKC submits should cause the Court to dismiss the SAC for failure to state a claim upon which relief may be granted:

- ¶ 4: The Court should strike Plaintiffs' claim that the photo depicted in that paragraph is how the "Whopper looks . . . on . . . store menu ordering boards."

- ¶ 4: The Court should strike Plaintiffs' depiction of the website photo of the Whopper without its accompanying written description of the sandwich. The court should consider, as part of the record on a motion to dismiss, the full website image that Plaintiffs' counsel included in the Kelly Declaration (Dkt. No. 52-3, page 4). Indeed, as BKC explains in its motion to dismiss, controlling case law requires the Court to consider the photo's full context.

- ¶¶ 7-8: The Court should strike references to the so-called "former advertisement" of the Whopper, for which Plaintiffs' counsel provided no citation in the SAC, and which none of the Plaintiffs' interrogatory responses said they saw or relied upon.

- ¶ 8: The Court should strike Plaintiffs' allegation that "[a] side-by-side comparison of Burger King's former Whopper advertisements to the current Whopper advertisements shows that the burger increased in size by approximately 35% and the amount of beef increased by more than 100%."

- ¶ 9: The Court should strike Plaintiffs' allegation that "the size of the Whopper and the beef patty increased materially in Burger King's advertisements."

- ¶¶ 32-50: The Court should consider Plaintiffs' verified interrogatory responses to be part of the pleadings when ruling on Burger King's motion to dismiss, not solely the inaccurate and misleading information pleaded, which contradicts Plaintiffs' interrogatory responses.

**B.      Plaintiffs' Counsel Was Afforded Sufficient Notice of this Motion**

Rule 11(c)(2), which is often referred to as a "Safe Harbor" provision, prohibits a party from filing a Rule 11 motion with the Court unless the filing party has given the offending party 21 days to amend or withdraw its pleading. Fed. R. Civ. P. 11(c)(2); *see also Jackson,* 2013 WL 12091693, at *5 (explaining that Rule 11(c)(2) "is designed to give the offending party the opportunity within 21 days after service of the motion for sanctions to withdraw the offending pleading and thereby escape sanctions."). Burger King sent the instant Motion for Sanctions to Plaintiffs' counsel on September 28, 2023. *See* Sept. 2023 Jacobson Decl. They refused to amend or withdraw their SAC in response to Burger King's Motion during the 21-day safe harbor period outlined in Rule 11(c)(2). Burger King submits this Motion materially unchanged from the one that was presented to Plaintiffs' Counsel.  Plaintiffs' Counsel has, therefore, been afforded sufficient notice of this Motion and Burger King has complied with all relevant Rule 11 requirements.

**CONCLUSION**

For the reasons stated above, pursuant to Rule 11, Burger King seeks dismissal of the SAC and seeks attorneys' fees it has incurred in defending against the SAC and litigating this sanctions motion.

Dated: October 19, 2023

By: /s/ *Jeffrey S. Jacobson*
        Jeffrey S. Jacobson (*pro hac vice*)
        FAEGRE DRINKER BIDDLE & REATH LLP
        1177 Avenue of the Americas
        New York, NY 10036
        Tel: (212) 248-3191
        NY State Bar No. 2925097
        jeffrey.jacobson@faegredrinker.com

By: /s/ *Michael D. Joblove*
    Michael D. Joblove
    VENABLE LLP
    100 SE 2nd Street, Suite 4400
    Miami, Florida 33131
    Tel: (305) 349-2300
    mdjoblove@venable.com

    *Attorneys for Defendant Burger King*
    *Company LLC*

## CERTIFICATION OF SERVICE

I hereby certify that on September 28, 2023, I caused a materially unchanged version of DEFENDANT BURGER KING CORPORATION'S MOTION FOR SANCTIONS FOR PLAINTIFFS' VIOLATIONS OF FEDERAL RULE OF CIVIL PROCEDURE 11(B) to be served on Plaintiffs' counsel via electronic mail.


Dated: October 19, 2023

By: /s/ *Jeffrey S. Jacobson*
    Jeffrey S. Jacobson (*pro hac vice*)
    FAEGRE DRINKER BIDDLE & REATH LLP
    1177 Avenue of the Americas
    New York, NY 10036
    Tel: (212) 248-3191
    NY State Bar No. 2925097
    jeffrey.jacobson@faegredrinker.com

    *Attorney for Defendant Burger King*
    *Corporation*