# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:22-cv-20925-RKA

WALTER COLEMAN, *et al.*, on behalf of
themselves and all others similarly situated,

     Plaintiffs,

v.

BURGER KING CORPORATION,

     Defendant.

---

## DEFENDANT BURGER KING COMPANY LLC'S
## RENEWED MOTION FOR SANCTIONS FOR PLAINTIFFS' VIOLATIONS
## OF FEDERAL RULE OF CIVIL PROCEDURE 11(B)

Jeffrey S. Jacobson (pro hac vice)
Faegre Drinker Biddle & Reath LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 248-3191
Jeffrey.Jacobson@faegredrinker.com

Michael D. Joblove
Venable LLP
801 Brickell Avenue, Suite 1500
Miami, Florida 33131
(305) 349-2300
mdjoblove@venable.com

*Attorneys for Defendant*
*Burger King Company LLC*

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................................... 7

LEGAL STANDARD ................................................................................................................. 11

ARGUMENT .............................................................................................................................. 13

    A.    The SAC Includes Allegations that Are Objectively Frivolous .......................... 14

        a.    Any Allegation that Burger King Uses Larger Patties in its Menu
            Boards Has No Reasonable Factual Basis ................................................. 14

        b.    The Allegations that Plaintiffs Relied on Earlier Pre-2017
            Advertisements for the Whopper Sandwich Have No Basis .................... 18

        c.    The Allegations that All Plaintiffs Relied on In-Store Menu
            Ordering Boards Have No Reasonable Factual Basis .............................. 19

        d.    Plaintiffs' Counsel Knew or Should Have Known that these
            Allegations are Frivolous ......................................................................... 19

    B.    Plaintiffs' Counsel Was Afforded Sufficient Notice of this Motion ................... 22

CONCLUSION ........................................................................................................................... 22

## TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Avirgan v. Hull,*
    932 F.2d 1572 (11th Cir. 1991) ........................................................................... 17

*Babadjanian v. Deutsche Bank Nat'l Tr. Co.,*
    No. CV 10-2580, 2011 WL 13214300 (C.D. Cal. Mar. 29, 2011) ........................................ 12

*Baker v. Alderman,*
    158 F.3d 516 (11th Cir. 1998) ........................................................................... 12

*Bovinett v. HomeAdvisor, Inc.,*
    No. 1:17-cv-6229, 2020 WL 1330407 (N.D. Ill. Mar. 23, 2020) ................................... 15, 17

*Bressler v. Liebman,*
    No. 96 Civ. 9310 (LAP), 1997 WL 466553 (S.D.N.Y. Aug. 14, 1997) ............................... 16

*Burns v. Windsor Ins. Co.,*
    31 F.3d 1092 (11th Cir. 1994) ........................................................................... 11

*Cameau v. Nat'l Recovery Agency, Inc.,*
    No. 15-CV-2861, 2018 WL 4853050 (E.D.N.Y. Sept. 28, 2018) ..................................... 16

*Campbell v. High Tech Rail & Fence, LLC,*
    No. 3:18-CV-4-TCB, 2020 WL 13526696, at *10 (N.D. Ga. Nov. 17, 2020) ..................... 19, 20

*Chimienti v. Wendy's Int'l, LLC,*
    698 F. Supp. 3d 549 (E.D.N.Y. 2023) ............................................................ *passim*

*Coleman v. Burger King Corp.,*
    No. 22-CV-20925, 2023 WL 5507730 (S.D. Fla. Aug. 25, 2023) ........................... 10, 14, 19

*Coleman v. Burger King Corp.,*
    No. 22-CV-20925, 2025 WL 1294605 (S.D. Fla. May 5, 2025) ............................... 1, 7, 14

*In re Cummings,*
    381 B.R. 810 (S.D. Fla. 2007) ........................................................................... 11

*Estrada v. FTS USA, LLC,*
    810 F. App'x 743 (11th Cir. 2020) ..................................................................... 12

*Galin v. Hamada,*
    283 F. Supp. 3d 189 (S.D.N.Y. 2017), *aff'd*, 753 F. App'x 3 (2d Cir. 2018) ........................ 16

*Goldman v. Barrett,*
    No. 15 Civ. 9223 (PGG), 2018 WL 11214828 (S.D.N.Y. Sept. 4, 2018) ............................ 12

*Gulisano v. Burlington, Inc.*,
    34 F.4th 935 (11th Cir. 2022) ...........................................................................................13

*Homecare CRM, LLC v. Adam Grp., Inc. of Middle Tenn.*,
    952 F. Supp. 2d 1373 (N.D. Ga. 2013)..............................................................................20

*Jackson v. Chronic*,
    No. 2:11-cv-58, 2013 WL 12091693 (N.D. Ga. Jan. 24, 2013) ....................................12, 22

*Lowery v. Ala. Power Co.*,
    483 F.3d 1184 (11th Cir. 2007)..........................................................................................12

*M-I Drilling Fluids UK Ltd. v. Dynamic Air Inc.*,
    No. CV 14-4847 (JRT/HB), 2017 WL 1193992 (D. Minn. Mar. 30, 2017) .......................12

*Meadow Ltd. P'ship v. Heritage Sav. & Loan Assoc.*,
    118 F.R.D. 432 (E.D. Va. 1987) ..................................................................................15, 17

*Mike Ousley Prods., Inc. v. Cabot*,
    130 F.R.D. 155 (S.D. Ga. 1990), *aff'd sub nom. Mike Ousley Prods., Inc. v.*
    *WJBF-TV*, 952 F.2d 380 (11th Cir. 1992) ..........................................................................12

*MSPA Claims 1, LLC v. Liberty Mut. Fire Ins. Co.*,
    No. 17-22539-CV, 2025 WL 643208 (S.D. Fla. Feb. 25, 2025) ....................................11, 13

*Peer v. Lewis*,
    606 F.3d 1306 (11th Cir. 2010)....................................................................................15, 18

*Rhinehart v. CBE Group, Inc.*,
    714 F. Supp. 2d 1183 (M.D. Fla. 2010) ..................................................................15, 16, 17

*Yang v. Bullock Fin. Grp., Inc.*,
    No. 1:09-CV-528-TCB-RGV, 2010 WL 11507723 (N.D. Ga. July 30, 2010) .....................12

## INTRODUCTION

Plaintiffs and their attorneys have forced this Court to spend countless hours assuming the truth of factual allegations they *knew* to be false at the time they included those allegations in their Second Amended Complaint ("SAC," Dkt. No. 69). Plaintiffs' counsel filed the SAC after a court dismissed their claims in *Chimienti v. Wendy's International, LLC*, 698 F. Supp. 3d 549 (E.D.N.Y. 2023)—a similar case these same attorneys brought against two primary competitors of Defendant Burger King Company LLC ("BKC"). Plaintiffs' counsel hoped to convince this Court to reach a different result than *Chimienti* with respect to the SAC, but at the time they filed the SAC, Plaintiffs' own discovery responses and incontrovertible evidence BKC had produced to them belied each factual claim they argued distinguished this case from *Chimienti*. Fed. R. Civ. P. 11 should have prevented Plaintiffs' counsel from including these demonstrably false claims. If, as a Rule 11 sanction, the Court requires Plaintiffs' counsel to confirm their pleading to the discovery record and their own admissions in the case, Plaintiffs should have no further basis to litigate.

**No Plaintiff saw the 2017 photograph of a Whopper® at the heart of the SAC.** When this Court denied BKC's motion to dismiss the SAC, it distinguished *Chimienti* because Plaintiffs here alleged a comparison between two photos they alleged BKC used to advertise the iconic Whopper® sandwich before and after 2017. *See Coleman v. Burger King Corp.*, No. 22-CV-20925, 2025 WL 1294605, at *7 (S.D. Fla. May 5, 2025) ("*Coleman II*"). But Plaintiffs' counsel *knew*—because Plaintiffs already had attested in their interrogatory responses—that none of the Plaintiffs ever saw the alleged earlier advertising photo or even patronized a Burger King® restaurant prior to 2021. *See* Declaration of Jeffrey Jacobson dated Dec. 27, 2022 ("Dec. 2022 Jacobson Decl.), Ex. A (Dkt. No. 49-2 at p. 1). Plaintiffs' counsel thus had no good faith basis even to include the 2017 photo in the SAC, much less allege that it played a role at all in their clients' decisions in 2021 and 2022 to purchase a Whopper® or any other sandwich from a Burger King® restaurant.

**Plaintiffs' counsel misled the Court about the post-2017 photo of the Whopper®.** Plaintiffs' counsel alleged that the post-2017 image of a Whopper® shown in SAC ¶ 4 appeared

"on [BKC's] website and store menu ordering boards." *Coleman II*, 2025 WL 1294605, at *8 n.10. Plaintiffs' counsel knew this to be false, too. What they alleged to be a "store menu ordering board" photo (SAC ¶ 4) was instead an image of the Whopper® from the Burger King® *website*—not a menu board. And, on the website, the photo is accompanied by a written description of the Whopper® as "a ¼ pound of savory flame-grilled beef." In other words, no one could have decided to purchase a Whopper® from the Burger King® website based on the photo alone. The Court can be certain that Plaintiffs' counsel knew how the image appears in context on the Burger King® website because they included the full image, with the written description, in an earlier declaration in the case. *See* Declaration of James Kelly dated Jan. 4, 2023, Ex. 2 (Dkt. No. 52-3 at p. 4) ("Kelly Decl.") (attaching "true and correct copies of screenshots of the relevant pages from Burger King's website BK.com").[1] As counsel's declaration admitted, this is the image one actually saw when visiting the Burger King® website link cited at SAC ¶ 4.



Plaintiffs' interrogatory responses—which, again, they provided before Plaintiffs' counsel filed the SAC—showed that none of the Plaintiffs purchased a Whopper® from the Burger King®

---

[1] As reflected in Mr. Kelly's declaration and exhibit, BK.com has a page that contains only the image of a Whopper®, with no written description. *See* Kelly Decl. Ex. 2 at p. 2. Website visitors, however, cannot order a Whopper® from that page. They must click on the image of a Whopper®, which links to the page containing the written description. *See, e.g.,* https://www.bk.com/menu/picker/picker_5520 (last visited June 24, 2025).

website. One plaintiff admitted ordering only from the third-party DoorDash service, which provided the same written description of a "¼ pound beef patty" that appears on the Burger King® website. *See* Dec. 2022 Jacobson Decl. Ex. A at 19. Several Plaintiffs were *repeat* Burger King® guests who ordered the same items multiple times, negating any possible claim that they relied on menu board photos alone to decide to place an order. They already knew when they ordered a Whopper® exactly what they would be getting. *See id.* at 4-5, 25-26, 103-104. Further, most of the Plaintiffs never set foot inside a Burger King® restaurant; they ordered only at drive-through lines outside the restaurant. *See, e.g., id.* at 12, 26, 33, 40, 47, 68, 82, 89, 96, 104, 111, and 125.

The only evidence Plaintiffs have provided of what a Burger King® drive-through menu board looks like does not show the image depicted in SAC ¶ 4. *See* Dkt. Nos. 52-2-52-12 (excerpted below). These drive-through menu boards show a variety of presentations, from a distance, including different angles and arrangements of the menu items and photographs of menu items from overhead at natural scale. One of the boards includes a cut-off disclaimer at the bottom that begins "Picture Menus & Nutritional Information," meaning that the messaging to customers may be further modified by disclaimers depending on the restaurant.









**Plaintiffs' counsel knew the photo they challenged depicted the same-size hamburger patty that Burger King® restaurants serve to guests.** Importantly, too, Plaintiffs' counsel knew when they filed the SAC that the beef patties in the website photos they challenge—and in *every* BKC photo of a sandwich—are the same patties that Burger King® restaurants serve to guests. BKC produced to Plaintiffs' counsel its corporate policy requiring its photography vendors to source the same hamburgers, buns, and (where possible) other ingredients from Burger King® restaurant suppliers, and to use *only* those true-to-life ingredients in photos. BKC also produced a sworn declaration from the CEO of its photography vendor attesting to having followed this policy universally, backed up with receipts of purchases from restaurant suppliers. In addition, BKC produced a series of photos the vendor took as it was assembling the Whopper® sandwich used for the image challenged in the SAC. Those photos appear on the next page. The Court can see, just as Plaintiffs saw before they filed the SAC, how the photography vendor carefully placed a quarter-pound Whopper® patty on the bun, with the patty slightly protruding over the edge of the bun. *See* Dkt. No. 49-1 (excerpted images on the next page). The Court can readily compare these images of the sandwich under construction to the final image placed on the Burger King® website (SAC ¶ 4), with the same uneven edge of the patty protruding forwards over the bun:



Burger_King_02_whopper_100_beef_overhead_standing_sign_26984.jpg



Burger_King_02_whopper_100_beef_overhead_standing_sign_26995.jpg



Burger_King_02_whopper_100_beef_overhead_standing_sign_square_27036...



Burger_King_02_whopper_100_beef_overhead_standing_sign_square_27038...

When Plaintiffs filed the SAC, therefore, they could not have alleged in good faith that BKC attempted to mislead guests by using larger beef patties in any photos than the patties Burger King® restaurants serve every day to their guests. This simply never happened. Plaintiffs' counsel had "conce[ded]" in *Chimienti*, 2023 WL 6385346, at *4, that "both the advertisements and the products served in stores contained the same amount of meat," and the court considered that admission "fatal." *Id.* In a bid to avoid the same fate here, they repeated in the SAC their allegations about use of purportedly oversized patties, even though the discovery record left them with no valid basis to do so or to distinguish their claims in this case from those dismissed in *Chimienti*.

The evidence Plaintiffs' counsel received from BKC and from their own clients arguably left them with no good faith basis to continue this lawsuit *at all*, but their duty of candor to the Court certainly forbade them from continuing the lawsuit's claims *unchanged*. BKC repeatedly

urged Plaintiffs' counsel, before and after they filed the SAC, to make necessary changes to their allegations, but Plaintiffs' counsel ignored those entreaties. They made a conscious choice to repeat the same, demonstrably false claims verbatim from their First Amended Complaint ("FAC," Dkt. No. 18). BKC thus asks the Court, as a Rule 11 sanction, to strike these false allegations, or to require Plaintiffs to file a Third Amended Complaint that omits or corrects them. Ample in-Circuit precedent supports this request for relief. Shorn of the false claim that BKC used larger beef patties in photos than it served to guests, this lawsuit becomes what BKC submits—and the *Chimienti* court found—is just a baseless and unprecedented complaint that it is somehow unlawful for a restaurant to display a beautiful photograph of menu items, containing *the exact ingredients* restaurant guests will receive, if what guests receive in restaurants looks different from the photo.

## FACTUAL AND PROCEDURAL BACKGROUND

As the Court confirmed in *Coleman II*, stylization in photos (e.g., hiring professionals to create images of menu items that are as attractive as possible) is not unlawful. *See Coleman II*, 2025 WL 1264605, at *6 ("It's true (of course) that the exaggeration of an item's quantity (and, for that matter, quality) with idealized imagery is an extremely common technique in the world of food advertising. To the extent BKC argues that reasonable consumers *usually* aren't fooled by these types of advertisements, we agree.") (citing *Chimienti*). Instead, the Court declined to apply the reasoning of *Chimienti* to this case because: (1) Plaintiffs here claimed (without any support, besides a bare allegation regarding the one photo identified in SAC ¶ 4) that BKC's photos overstate the size of the burgers more than in that case and (2) based on that allegation, Plaintiffs plausibly alleged that a reasonable consumer could have been deceived into believing that BKC had increased the size of its burgers since 2017 (although their interrogatory responses reveal that none of Plaintiffs relied on any pre-2017 photographs, *see* Dkt. Nos. 49-3, 49-4).

On December 28, 2022, in connection with BKC's opposition to Plaintiffs' Motion for Class Certification, BKC submitted the Declaration of Matthew R. Wilson, founder and CEO of BKC's photography vendor 500 Degrees LLC ("500 Degrees"), which created the photos Plaintiffs pasted into their three complaints. (*See* Dkt. No. 49-1.) Mr. Wilson testified that his agency used

in the photos the exact same beef patties that Burger King® restaurants serve to guests, obtained from a supplier to those restaurants, and that BKC's corporate policies required this. He attested that BKC provided "'build sheets,' explaining how to build a sandwich," and that these "are identical to the instructions [BKC] provides to the Burger King restaurants for associate and management training and daily product creation specifications, including weights and measures, protein/toppings/condiment application, and bun style." Dkt. No. 49-1 ¶ 11 (emphasis in original). He said BKC's "standing instructions to 500 Degrees are to source at least all proteins and buns from the same suppliers used by Burger King restaurants," meaning that "if 500 Degrees is building and photographing a Whopper® sandwich for an upcoming promotion, it obtains from the [Burger King] supply company and uses in its product photographs exactly the same patties and buns that a Burger King restaurant uses to build the Whopper®." *Id.* ¶ 12. And he attached one of many receipts showing 500 Degrees' purchase of these goods from a Burger King supplier.

"Every time 500 Degrees has photographed a Whopper®, Whopper® Jr., Double Whopper®, Whopper® Melt, or Big King™," Mr. Wilson said his firm "obtained from a Burger King restaurant supplier and used the same patties in its photographs that Burger King restaurants use." (Dkt. No. 49-1 ¶ 13). BKC's instructions "call[ed] for [all] ingredients to be pushed to the front of each sandwich for photographic purposes so that viewers of the photographs are informed of all of the ingredients that go into the sandwiches," and 500 Degrees followed those instructions. *Id.* ¶ 16. He did not dispute selecting "the best 'looking' example . . . based on visual appeal," but he affirmed that "the quarter-pound weight of all the patties we receive and photograph (or two-ounce weight in the case of the Whopper® Jr. and the Whopper® Melt, which uses two Whopper® Jr. patties), is exactly the same as in Burger King restaurants." *Id.* ¶ 13. He attested, without qualification, that 500 Degrees never "include[d] any ingredients in a photograph that Burger King restaurant guests would not receive, nor do we include a greater quantity of ingredients." *Id.* ¶ 16.

BKC also produced to Plaintiffs' counsel numerous different images of the Whopper® (and other items) that Burger King franchise restaurants had the option to display on menu boards. A number of those menu board images produced in discovery already are in the filed record of this

case. *See* Declaration of Jeffrey S. Jacobson dated Jan. 11, 2023 (Dkt. No. 54-1 ¶ 3 & Ex. A (attesting that the images of the Whopper that appear on the next page, "along with many others, were produced to Plaintiffs' counsel," and reflect some of the images that guests might have seen in different Burger King restaurants on the store menu boards or other displays.)) These guest-facing displays depicting the Whopper® did not use the same photo from the Burger King® website that Plaintiffs' counsel included in their complaints and falsely claimed was used on all in-restaurant menu boards. This evidence thus belied the false claim in the SAC that BKC always displayed the same photo of the Whopper® depicted in the SAC.






Plaintiffs' counsel alleged in their First Amended Complaint ("FAC, Dkt. No. 18) ¶ 4, and repeated in SAC ¶ 4, that Burger King currently represents that [the] Whopper looks as follows on its website *and store menu ordering boards*." (emphasis added). But they did not allege any basis for believing that the *website* image pasted into three paragraphs of the FAC and SAC (¶¶ 4, 8, 10)

appeared in the same form in any restaurant, or drive-through line, or that any guest could have ordered a Whopper® from the BK.com website (which no Plaintiff did) or from a third-party delivery service (which one Plaintiff did) without seeing a statement that a Whopper® is a sandwich with a "¼ pound" beef patty. Plaintiffs' counsel had a duty, when they filed the SAC, to make this clear. The Court had advised the parties explicitly that the supposed "menu board" allegation of a stand-alone photo was highly material to the Court's decision on the motion to dismiss the FAC. *See Coleman v. Burger King Corp.*, No. 22-CV-20925, 2023 WL 5507730, at *7-8 (S.D. Fla. Aug. 25, 2023) ("*Coleman I*"). The *Chimienti* court, moreover, focused on the absence of allegations "about how Defendants' products appear on an in-store menu." 2023 WL 6385346, at *6. But, despite knowing how material these false claims were, Plaintiffs' counsel nevertheless repeated the "website *and store menu ordering boards*" wording from the FAC verbatim in the SAC. They also continued to omit the written description of the Whopper® that website and DoorDash visitors see, disclosing that the Whopper® uses a quarter-pound of beef.

Plaintiffs' counsel had produced discovery from their clients, too, including interrogatory responses and some receipts and other documents, which rendered the SAC's allegations invalid. Two Plaintiffs (Victor Castillo and Sybil Peachlum) admitted being *repeat* Burger King guests, who ordered the same menu items multiple times, while others were somewhat vague about their experiences in their interrogatory responses. Of the 19 plaintiffs, only three (Matthew Fox, Jesus Mendez, and Madelyn Salzman) claimed to have been inside Burger King® restaurants, and only Mr. Fox and Mr. Mendez purchased a Whopper® inside a restaurant. One Plaintiff said she ordered Burger King® food for delivery from third-party provider DoorDash. Plaintiffs' counsel knew, and attested in a prior declaration in this case, that the DoorDash website and application include the same written description of the Whopper® as on the BK.com website (i.e., that the sandwich uses a "¼ pound" beef patty). *See* Kelly Decl. ¶ 7 & Ex. 5. None of the Plaintiffs said they ever saw the "former advertisement" of the Whopper® pasted into the FAC and SAC (at ¶¶ 7-8) alleged to have been used prior to "September 2017." None said they even patronized any Burger King

restaurant prior to 2021, making it impossible for them to have seen or relied on the alleged pre-2018 photo of the Whopper®.

Again, Plaintiffs' counsel knew these now demonstrably false allegations were highly material. The Court premised its denial of BKC's motion to dismiss Plaintiffs' FAC *entirely* on these specific allegations. Even assuming Plaintiffs' counsel had a good faith basis to include these allegations in the FAC—which is doubtful—the discovery record left them without any possible basis to include the same allegations in the SAC.

The SAC, which the Court granted Plaintiffs leave to file, offered Plaintiffs' counsel a chance to conform their claims to the facts adduced in discovery. Rule 11 obligated them not to allege facts they knew they could not support. Plaintiffs' counsel violated their obligations. This Court should sanction them for that violation and, at a minimum, require them to conform their pleading to the facts as they know them.

## LEGAL STANDARD

"Every lawyer is an officer of the court[,] [a]nd, in addition to his duty of diligently researching his client's case, he always has a duty of candor to the tribunal." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). "[E]ven in a case where a party successfully argued against entry of an early dismissal on the face of the pleadings, as here, that party has a continuing obligation throughout the case to assure that a legal and factual basis for a claim or defense remains, even to the point of trial." *MSPA Claims 1, LLC v. Liberty Mut. Fire Ins. Co.*, No. 17-22539-CV, 2025 WL 643208, at *4 (S.D. Fla. Feb. 25, 2025).

Rule 11(b)(2) "reinforces counsel's duty of candor to the Court by subjecting litigants to potential sanctions for making representations to the court for an improper purpose." *In re Cummings*, 381 B.R. 810, 837 (S.D. Fla. 2007). Among other things, this means "a lawyer should not knowingly misstate, distort, or improperly exaggerate any fact or opinion and should not improperly permit the lawyer's silence or inaction to mislead anyone." *Id.* (internal quotation marks and citations omitted). "Rule 11's primary objective is to give a litigant pause to stop, think, and investigate more carefully before filing papers, thereby streamlining the administration and

procedure of the federal courts." *Yang v. Bullock Fin. Grp., Inc.*, No. 1:09-CV-528-TCB-RGV, 2010 WL 11507723, at *17 (N.D. Ga. July 30, 2010), *report and recommendation adopted*, No. 1:09-CV-528-TCB, 2010 WL 11527128 (N.D. Ga. Aug. 23, 2010) (internal quotation marks and citation omitted). The duty of candor applies to every filing, including amended complaints. *See, e.g.*, *Estrada v. FTS USA, LLC*, 810 F. App'x 743, 745 (11th Cir. 2020) (upholding sanctions because allegations in amended complaint "as worded objectively lacked evidentiary support"); *Goldman v. Barrett*, No. 15 Civ. 9223 (PGG), 2018 WL 11214828, at *11 (S.D.N.Y. Sept. 4, 2018) (imposing sanctions for including unsupported allegations in amended complaint); *M-I Drilling Fluids UK Ltd. v. Dynamic Air Inc.*, No. CV 14-4847 (JRT/HB), 2017 WL 1193992, at *8-9 (D. Minn. Mar. 30, 2017) (imposing sanctions for failure to investigate properly before filing an amended complaint); *Babadjianian v. Deutsche Bank Nat'l Tr. Co.*, No. CV 10-2580, 2011 WL 13214300, at *16-*18 (C.D. Cal. Mar. 29, 2011) (imposing sanctions for repeating in an amended complaint allegations that discovery showed lacked a valid basis).

Because "Rule 11 applies to all papers filed in the litigation," "[e]ach filing must reflect the results of reasonable inquiry." *Mike Ousley Prods., Inc. v. Cabot*, 130 F.R.D. 155, 157 (S.D. Ga. 1990), *aff'd sub nom. Mike Ousley Prods., Inc. v. WJBF-TV*, 952 F.2d 380 (11th Cir. 1992). Put another way, even if a complaint passes muster under Rule 8 for pleading sufficient factual material, a complaint must still comply with "Rule 11's command—under pain of sanctions—that the allegations and other factual contentions have, [or are likely to have following discovery,] evidentiary support." *Jackson v. Chronic*, No. 2:11-cv-58, 2013 WL 12091693, at *7 (N.D. Ga. Jan. 24, 2013) (alteration in original), *quoting Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1216 (11th Cir. 2007). "Rule 11 sanctions are warranted when a party files a pleading that has no reasonable factual basis . . . " *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998).

The "objective standard for testing conduct under Rule 11 is reasonableness under the circumstances and what was reasonable to believe at the time the pleading was submitted." *Baker*, 158 F.3d at 524 (internal quotation marks and citation omitted). "[A]n attorney's obligations with respect to the contents of pleadings or motions are not measured solely at the time when the

pleading or motion is initially filed with the court, but also at the time when the attorney, having learned the claims lack merit, reaffirms them to the court." *Gulisano v. Burlington, Inc.*, 34 F.4th 935, 942 (11th Cir. 2022). "Courts in the Eleventh Circuit consider (1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *MSPA Claims 1*, 2025 WL 643208, at *2. "A factual claim is frivolous when it has no reasonable factual basis." *Gulisano*, 34 F.4th at 942. Rule 11(c) provides that a court may sanction "any attorney, law firm, or party that violated the rule or is responsible for the violation."

## ARGUMENT

All Plaintiffs' counsel had to do to avoid this motion was conform the SAC to the discovery they had produced and received prior the SAC's filing. At the time Plaintiffs' counsel filed the SAC, they knew from discovery that BKC's corporate policy required BKC's photography agency to use the same hamburger patties and buns Burger King® restaurants use, and that the agency followed that policy. They knew—and acknowledged in other filings in this case—that the image their earlier complaints portrayed as being one Burger King® restaurants displayed on menu boards was, instead, just a *website* image that none of their clients claim to have seen or relied on (because none of them ordered from the BK.com website). Plaintiffs' counsel also knew from their own clients' interrogatory responses that (1) *none* of their clients saw the alleged pre-2018 photo of a Whopper® that Plaintiffs' counsel put at the center of each of their three complaints; (2) what each plaintiff saw and relied on when making a purchase varied; and (3) most of their clients never saw the inside of a Burger King® restaurant at all. They also knew from *Chimienti* that truthful and complete allegations might doom their lawsuit. Plaintiffs' counsel's conscious decision not to amend their allegations to reflect 14 months of discovery "exhibits 'a deliberate indifference to obvious facts,'" *Gulisano*, 34 F.4th at 942, and thus warrants Rule 11 sanctions. *See MSPA Claims 1*, 2025 WL 643208, at *5 (failure to withdraw a false claim following receipt of safe harbor notice "constitutes sanctionable conduct"). The sanction particularly warranted here is for the Court to strike the demonstrably false allegations in the SAC, without which the SAC cannot stand.

A.      **The SAC Includes Allegations that Are Objectively Frivolous**

a.      ***Any Allegation that Burger King Uses Larger Patties in its Menu Boards Has No Reasonable Factual Basis***

Plaintiffs' SAC, using the same wording as the FAC, alleges what they call "[a] side-by-side comparison of Burger King's former Whopper advertisements to the current Whopper [photo]," and they claim this "shows that the burger increased in size [from one photo to the other] by approximately 35% and the amount of beef increased by more than 100%." SAC ¶ 8; *see also id.* ¶ 9 ("the size of the Whopper and the beef patty increased materially" from the alleged former photo to the current one). Both of this Court's Orders denying BKC's motions to dismiss the First Amended Complaint and the SAC relied heavily on this specific, demonstrably false claim. *See Coleman I*, 2023 WL 5507730, at *8 (citing FAC ¶¶ 8-9); *Coleman II*, 2025 WL 1294605, at *6 ("Even more problematically, BKC's advertisements changed in 2017 to materially overstate the size of its burgers in comparison to previous years."). Plaintiffs also repeated verbatim in the SAC their prior allegations that the images pasted into the complaint were "on Burger King's store menu ordering board." SAC ¶ 32. The Court's Order cited that allegation, too. *See Coleman I*, 2023 WL 5507730, at *7-8; *Coleman II*, 2025 WL 1294605, at *7 (both referring to the images as being from Burger King's website *and* store menu ordering boards).

The Court interpreted Plaintiffs' claims in the FAC, copied without changes into the SAC, to be that the actual size of the burger patties in the menu pictures differed from the size of the burger patties used in Burger King's restaurants. *See Coleman I*, 2023 WL 5507730, at *8 ("Plaintiffs allege, for instance, that . . . 'the amount of beef [in one Whopper image vs. an earlier one] increased by more than 100%,' *without* any concomitant increase in the actual size of the burgers."); *Coleman II*, 2025 WL 1294605, at *7 (same). But when Plaintiffs' counsel filed the SAC after 14 months of discovery, they had no reasonable basis to include that specific allegation in the SAC. As Mr. Wilson's Declaration stated, when he and his firm constructed Burger King sandwiches for photography, they followed "build sheets" that "are <u>identical</u> to the instructions [BKC] provides to the Burger King restaurants for associate and management training and daily product creation specifications." Dkt. No. 49-1 ¶ 11 (emphasis in original). He attested that

"[e]very time 500 Degrees has photographed a Whopper®, Whopper® Jr., Double Whopper®, Whopper® Melt, or Big King™, it has obtained from a Burger King restaurant supplier and used the same patties in its photographs that Burger King restaurants use." *Id.* ¶ 13. It uses "the best 'looking' example . . . based on visual appeal," but the actual weight of all the patties photographed for the in-store menus "is exactly the same as in Burger King restaurants." *Id.*

Neither in reply to BKC's opposition to class certification, nor in any subsequent filing or correspondence, have Plaintiffs' counsel contended that Mr. Wilson lied. No document Burger King produced in written discovery, which included the raw images captured by Mr. Wilson's firm, contradict him. Unquestionably, the menu item images that Burger King presents in restaurants and in out-of-store advertising are carefully crafted to look beautiful, but that is not consumer fraud or a breach of contract. The uncontested discovery record should have precluded Plaintiffs from contending in the SAC or arguing to the Court that BKC used larger beef patties in its photos than it serves to guests. Plaintiffs' counsel's re-filing of allegations that they no longer have a good faith basis to make is grounds for Rule 11 sanctions. *See Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010) (concluding that litigants are subject to "potential sanctions for insisting upon a position after it is no longer tenable").

This is not the first time attorneys have continued to press claims after discovery debunked them, and abundant authority exists for sanctioning attorneys who do so. *See, e.g., Rhinehart v. CBE Group, Inc.*, 714 F. Supp. 2d 1183, 1186 (M.D. Fla. 2010) (granting Rule 11 motion because "[p]laintiff's counsel failed to dismiss *any* of the claims when it became clear during discovery that they had no factual basis whatsoever, forcing Defendant to file a summary judgment motion"); *Meadow Ltd. P'ship v. Heritage Sav. & Loan Assoc.*, 118 F.R.D. 432, 434 (E.D. Va. 1987), *aff'd sub nom. Fahrenz v. Meadow Farm P'ship*, 850 F.2d 207 (4th Cir. 1988) ("The duty under Rule 11 to inquire into the facts is a continuing duty and counsel cannot ignore the realities of life once facts come to their attention which indicate that their earlier reliance was misplaced."); *Bovinett v. HomeAdvisor, Inc.*, No. 1:17-cv-6229, 2020 WL 1330407 at *4, *6 (N.D. Ill. Mar. 23, 2020) (finding that after defendants "offered clear evidence, . . . including verified discovery responses

and a sworn declaration," a plaintiff "violated Rule 11 by certifying, filing, and advocating an Amended Complaint with no legal or factual basis…to support several key allegations"); *Cameau v. Nat'l Recovery Agency, Inc*., No. 15-CV-2861, 2018 WL 4853050, at *3 (E.D.N.Y. Sept. 28, 2018) (granting Rule 11 motion because Plaintiff "should have known based on [discovery] that key factual allegations in the Complaint had no support"); *Galin v. Hamada*, 283 F. Supp. 3d 189, 202 (S.D.N.Y. 2017), *aff'd*, 753 F. App'x 3 (2d Cir. 2018) (a "court may impose sanctions on a party for refusing to withdraw an allegation or claim even after it was shown to be inaccurate" and granting defendant's Rule 11 motion due to plaintiff's "failure to drop his lawsuit upon the conclusion of discovery") (internal quotation marks and citation omitted); *Bressler v. Liebman*, No. 96 Civ. 9310 (LAP), 1997 WL 466553, at *8 (S.D.N.Y. Aug. 14, 1997) (imposing Rule 11 sanctions where plaintiff's counsel "continued to press the claims contained [in the amended complaint] in conferences after information provided by opposing counsel and analysis by the court indicated the questionable merit of those claims").

The facts in this case are similar to those of *Rhinehart*, where a plaintiff in a debt collection practices case alleged that the defendant constantly called her at four different numbers and failed to send her a required debt validation letter. *See* 714 F. Supp. 2d at 1183. Discovery demonstrated, however, that "the Complaint's claims were utterly unsupported," *id.* at 1185, as the plaintiff's own discovery showed she could not verify that any of the four numbers were hers, she did not know whether she had ever received calls from the defendant, and her husband received the debt validation letter. *See id.* at 1185-86. Notwithstanding these factual dead-ends, "[p]laintiff's counsel failed to dismiss *any* of the claims when it became clear during discovery that they had no factual basis, forcing Defendant to file a summary judgment motion." *Id.* at 1186. In awarding sanctions, the Court found that "[p]laintiff and her attorney multiplied the proceedings in this case unreasonably and vexatiously and exhibited a deliberate indifference to obvious facts." *Id.*

Plaintiffs here, like the plaintiffs in *Rhinehart*, received discovery that should have caused them to drop the case entirely, or at least substantially change their alleged theory. They know "discoverable evidence will not bear out the claim" that BKC used a larger patty in advertisements

than the same quarter-pound Whopper® patty served countless millions of times in Burger King restaurants. Rather than yielding to reality, however, the SAC pretends the Wilson declaration and all its supporting evidence does not exist. This is "deliberate indifference to obvious facts," violating Plaintiffs' counsel's "duty to discontinue their quest" before filing the SAC. *Id.*, *quoting Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991).

*Bovinett*, too, involved a plaintiff who continued to assert a position that had been debunked by a sworn declaration. *See* 2020 WL 1330407, at *4. The *Bovinett* plaintiff "alleg[ed] a myriad of claims that stem[med] from the alleged improper use of Plaintiff's image in the background of video commercials." *Id.* at *1. Despite "numerous requests from counsel to produce facts establishing jurisdiction or to voluntarily dismiss [the defendant], [plaintiff's counsel] refused and pushed the case onward." *Id.* at *5. After the plaintiff filed an amended complaint, the defendant "offered clear evidence that jurisdiction did not exist, including verified discovery responses and a sworn declaration." *Id.* at *4. Unfazed, plaintiff "continued to assert personal jurisdiction and argued, without presenting any evidence, that [defendant] was lying." *Id.* So Plaintiffs have done here, when faced with the unrebutted declaration of Mr. Wilson, which clearly establishes that no larger patty was used for the Whopper® advertisements. This is sanctionable.

*Meadow Ltd. Partnership*, 118 F.R.D. at 434, also explains a lawyer's ongoing duty of candor. There, allegations that were ostensibly reasonable based on plaintiffs' counsel's investigation at the time the lawsuit commenced were later demonstrated to be not "well grounded in fact" once some discovery had occurred. *Id.* at 434. Despite plaintiffs' counsel's "knowledge that their earlier evaluations were flawed, [they] persisted in maintaining the action." *Id.* After the court granted summary judgment to the defendant, the court awarded monetary sanctions, explaining that "counsel cannot ignore the realities of life once facts come to their attention which indicate that their earlier reliance was misplaced." *Id.* So too here: Plaintiffs' counsel had the opportunity to reassess the FAC's allegations once they received unrebutted evidence. Rather than revising their SAC, Plaintiffs' counsel instead chose to "ignore the realities of life." *Id.*

What is particularly egregious about Plaintiffs' SAC, as pleaded, is that Plaintiffs' counsel may have only needed to make minor changes to avoid this motion. In *Chimienti*, these same attorneys did not allege that BKC's competitors used larger patties in photos than they served to guests; they alleged instead that those "Defendants prepare[d] the meat used in their advertisements in a manner that merely makes it appear larger than the meat [the plaintiff] received." *Chimienti*, 698 F. Supp. 3d at 559. Nothing but futility would have stopped Plaintiffs' counsel from making a similar "stylization" claim here. *See* SAC ¶ 3 (alleging that the key image depicted in SAC ¶ 4 shows "ingredients that overflow the bun to make it appear that the burgers are . . . larger . . . than the actual burger."). If Plaintiffs' counsel never intended to allege that the photo at issue used a larger beef patty than the one served to guests, as SAC ¶ 3 suggests, they misled the Court by failing to clarify their position. If, instead, they *did* intend their claim to be that BKC used more beef in photos, as the Court construed their claims to be, they had a duty to advise the Court that discovery had made such a claim untenable. *See Peer*, 606 F.3d at 1311 (11th Cir. 2010) ("[I]f evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention.").

### b.      The Allegations that Plaintiffs Relied on Earlier Pre-2017 Advertisements for the Whopper Sandwich Have No Basis

Plaintiffs' comparison of an alleged current photo of the Whopper® to one alleged to be from 2017 (*see* SAC ¶¶ 6, 8) applies only to the Whopper®, and not to any other menu items, as to which the SAC pleads no similar comparison. Plaintiffs' counsel apparently wish a reader of the SAC to infer that Plaintiffs saw both the earlier photo and the current one, recalled the earlier photo some years later, concluded that BKC had increased the size of the beef patty in the Whopper, and decided to buy one based on that belief. That claim was fanciful (at best) when Plaintiffs' counsel first alleged it, and discovery made it frivolous. Not only did Mr. Wilson's declaration confirm that his agency used the same quarter-pound patty in the photo that guests receive in Burger King® restaurants, but Plaintiffs' own interrogatory responses showed that none of them remembered seeing the earlier Whopper® photo, and none of them said they patronized a Burger King prior to 2021. *See* Dec. 2022 Jacobson Decl., Ex. A at Response to Interrogatory No.

4. By Plaintiffs' own admissions, the 2017 photo is irrelevant to their claims and should have been omitted from the SAC. *See Campbell*, 2020 WL 13526696, at *10 (imposing sanctions where "[p]laintiffs filed a fourth amended complaint that included allegations directly contradicted by their own depositions.").

### c.    The Allegations that All Plaintiffs Relied on In-Store Menu Ordering Boards Have No Reasonable Factual Basis

The Court's Order in *Coleman I* distinguished between photos in out-of-store advertisements, which cannot constitute contractual "offers," and photos on in-store menu boards, which the Court held might suffice as offers, depending on context and other factors that might emerge in discovery. *See Coleman I*, 2023 WL 5507730, at *7-8. In reaching this holding, the Court both construed the photo Plaintiffs pasted into the FAC as having been taken from an "in-store 'menu ordering board,'" *id.* at *7, and advised Plaintiffs' counsel that it mattered where a particular photo allegedly appeared (or did not appear). But Plaintiffs knew when they filed the SAC that the Whopper® and Big King™ images pasted into the SAC were taken only from the Burger King® website, not menu boards, and BKC had provided Plaintiffs with a large number of actual menu board photos in discovery. Nevertheless, Plaintiffs left the allegations in the SAC unchanged from those in the FAC, declining to acknowledge that the photos in the SAC are not what they represented to the Court. Compounding the problem, Plaintiffs' counsel did not acknowledge in the SAC the facts their own clients provided about their purchases. Plaintiffs' counsel's duty of candor required them to disclose the repeat purchases by some of their clients, the DoorDash purchase by one of them, and the fact that nearly all their clients placed orders in ways *other than* inside a Burger King restaurant after having seen in-store menu boards.

### d.    Plaintiffs' Counsel Knew or Should Have Known that these Allegations are Frivolous

BKC did everything possible to avoid having to file this motion. BKC advised the Court and Plaintiffs' counsel during a status conference on August 31, 2023, that BKC would seek sanctions if Plaintiffs' counsel did not conform the SAC to the discovery record. BKC reiterated this message to Plaintiffs' counsel in oral discussions in the courthouse after that hearing, and

again in a letter transmitted on September 1, 2023, nearly two weeks before Plaintiffs' counsel filed the SAC. *See* Declaration of Jeffrey S. Jacobson dated Sept. 28, 2023 (Dkt. No. 72) Ex. A. BKC tried again to avoid this motion by reaching out with another message, explaining its position, and seeking a discussion with Plaintiffs' counsel about the need for amendments to the SAC. *See id.* at Ex. C. BKC was blunt with Plaintiffs' counsel that they faced a choice between acknowledging the true facts of this case or continuing to mislead the Court. Plaintiffs' counsel chose the riskier path of filing the SAC with no substantive changes and leaving it unchanged even after being served with the previously filed version of this motion—hoping the Court would keep their lawsuit alive long enough to extort a settlement. That is sanctionable conduct. *See Campbell*, 2020 WL 13526696 at *7 (awarding sanctions where the claims were "objectively frivolous" and "the person who signed the pleadings should have been aware that they were frivolous."). Because the SAC is based on allegations that counsel knew lacked evidentiary support, the Court should impose sanctions.

Per Rule 11(c)(1), if the Court determines that Plaintiffs' Counsel have violated Rule 11(b), the Court "may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). The appropriate sanction for Plaintiffs' Counsel's unwillingness to alter or drop the allegation that BKC used a larger patty in its pictures than it serves to its customers is to strike those allegations. *See Homecare CRM, LLC v. Adam Grp., Inc. of Middle Tenn.*, 952 F. Supp. 2d 1373, 1385-86 (N.D. Ga. 2013) (striking plaintiff's "claim for misappropriation of trade secrets and its supporting factual allegations" because plaintiff "ignored evidence in its possession that directly contradicts the factual allegations made in support of its trade-secrets claim."). In *Homecare*, plaintiff asserted a trade-secrets claim even though plaintiff concluded internally that it did not have any intellectual property concerns with defendant's product. The defendant, who was aware of this conclusion, filed a Rule 11 motion. The court reviewed the evidence in plaintiff's possession prior to the filing of the complaint and concluded that plaintiff's counsel's inclusion of the trade secrets claim, in light of

the evidence he had in his possession, amounted to "deliberate indifference to obvious facts." *Id.* at 1384. The court then struck the allegations with prejudice. *See id.* at 1386.

BKC here is not requesting that the Court dismiss Plaintiffs' entire SAC *as a sanction*. Although the Court should award BKC its attorneys' fees and costs in filing this Rule 11 motion, the primary relief Burger King seeks is the striking of allegations that the discovery record belies. Without these allegations, the SAC cannot stand:

- ¶ 4: The Court should strike Plaintiffs' claim that the photo depicted in that paragraph is how the "Whopper looks . . . on . . . store menu ordering boards."

- ¶ 4: The Court should strike Plaintiffs' depiction of the website photo of the Whopper without its accompanying written description of the sandwich. It should require Plaintiffs to allege the full website image that Plaintiffs' counsel included in the Kelly Declaration (Dkt. No. 52-3 at p. 4). Indeed, as BKC explained in its motion to dismiss, controlling case law requires the Court to consider the photo's full context.

- ¶¶ 7-8: The Court should strike references to the so-called "former advertisement" of the Whopper, for which Plaintiffs' counsel provided no citation in the SAC, and which none of the Plaintiffs' interrogatory responses said they saw or relied upon.

- ¶ 8: The Court should strike Plaintiffs' allegation that "[a] side-by-side comparison of Burger King's former Whopper advertisements to the current Whopper advertisements shows that the burger increased in size by approximately 35% and the amount of beef increased by more than 100%."

- ¶ 9: The Court should strike Plaintiffs' allegation that "the size of the Whopper and the beef patty increased materially in Burger King's advertisements."

- ¶¶ 32-50: The Court should consider Plaintiffs' verified interrogatory responses to be part of the pleadings when ruling on Plaintiffs' class certification motion, not solely the inaccurate and misleading information pleaded, which contradicts Plaintiffs' interrogatory responses.

Besides this motion for sanctions, the Court has before it a fully briefed motion for class certification, which BKC has opposed on numerous grounds. Plaintiffs have not remotely satisfied their burden to certify a class under Fed. R. Civ. P. 23, and the Court should deny class certification. But this frivolous case should not even have reached the class certification stage, and it would not have done so had Plaintiffs' counsel met their duty of candor.

**B.      Plaintiffs' Counsel Was Afforded Sufficient Notice of this Motion**

Rule 11(c)(2), which is often referred to as a "Safe Harbor" provision, prohibits a party from filing a Rule 11 motion with the Court unless the filing party has given the offending party 21 days to amend or withdraw its pleading. Fed. R. Civ. P. 11(c)(2); *see also Jackson*, 2013 WL 12091693, at *5 (explaining that Rule 11(c)(2) "is designed to give the offending party the opportunity within 21 days after service of the motion for sanctions to withdraw the offending pleading and thereby escape sanctions."). Burger King sent the instant Motion for Sanctions to Plaintiffs' counsel on September 28, 2023. *See* Dkt. No. 72 ¶ 11. They refused to amend or withdraw their SAC in response to Burger King's Motion during the 21-day safe harbor period outlined in Rule 11(c)(2). When the Court denied BKC's original Rule 11 motion <u>without prejudice</u> on November 16, 2023, the Court expressly authorized BKC to renew its motion without further notice after the Court decided BKC's then-pending motion to dismiss. *See* Dkt. No. 77. Plaintiffs' Counsel has, therefore, been afforded sufficient notice of this Motion and Burger King has complied with all relevant Rule 11 requirements.

## CONCLUSION

For the reasons stated above, pursuant to Rule 11, BKC seeks dismissal of the SAC and seeks attorneys' fees it has incurred in defending against the SAC and litigating this sanctions motion.

Dated: June 26, 2025

By: /s/ *Jeffrey S. Jacobson*
    Jeffrey S. Jacobson (pro hac vice)
    Faegre Drinker Biddle & Reath LLP
    1177 Avenue of the Americas
    New York, New York 10036
    Tel.: (212) 248-3191
    NY State Bar No. 2925097
    jeffrey.jacobson@faegredrinker.com

By: /s/ *Michael D. Joblove*
    Michael D. Joblove
    Venable LLP
    100 SE 2nd Street, Suite 4400
    Miami, Florida 33131
    Tel.: (305) 349-2300
    mdjoblove@venable.com

*Attorneys for Defendant Burger King Company LLC*

## CERTIFICATION OF SERVICE

I hereby certify that on June 26, 2025, I caused a true and correct copy of DEFENDANT BURGER KING COMPANY LLC'S MOTION FOR SANCTIONS FOR PLAINTIFFS' VIOLATIONS OF FEDERAL RULE OF CIVIL PROCEDURE 11(B) to be electronically filed with the Clerk of the District Court using the CM/ECF system, which sends notification of such filing to all counsel of record.

Dated: June 26, 2025

By: */s/ Jeffrey S. Jacobson*
    Jeffrey S. Jacobson (pro hac vice)
    Faegre Drinker Biddle & Reath LLP
    1177 Avenue of the Americas
    New York, New York 10036
    Tel.: (212) 248-3191
    NY State Bar No. 2925097
    jeffrey.jacobson@faegredrinker.com

By: */s/ Michael D. Joblove*
    Michael D. Joblove
    Venable LLP
    801 Brickell Avenue, Suite 1500
    Miami, Florida 33131
    Tel.: (305) 349-2300
    mdjoblove@venable.com

*Attorneys for Defendant Burger King Company LLC*